# Exhibit 1



## ELECTRONIC DISCOVERY SERVICES AGREEMENT

Account Number _____

This agreement ("Agreement") is effective this _____, 2005 (the "Effective Date"), by and between _____("Customer") and_____.("Accessing Company"), Iron Mountain Intellectual Property Management, Inc., with its principal office located at 2100 Norcross Parkway, Suite 150, Norcross, GA 30071 ("Iron Mountain") and Iron Mountain Off-Site Data Protection, a division of Iron Mountain Information Management, Inc. ("OSDP"), each individually referred to herein as a "party" and collectively as "the parties."

A.    Certain software source code owned by Customer (the "Source Code") is subject to litigation.

B.    In order to provide the Plaintiff in such litigation, (the "Accessing Company"), with access to review the Source Code in a secure and controlled fashion, Customer and Accessing Company desire to retain the services of Iron Mountain and OSDP to store the Source Code at a secure facility provided and maintained by OSDP in accordance with the requirements of this Agreement (the "Secure Facility"), and to provide such secure and controlled access to the Source Code at the Secure Facility by certain individual representatives of Accessing Company (defined in Section 3.1 below as "Authorized Personnel").  ·

C.    In order to ensure the control and security of the Source Code, the parties have devised a security protocol to be followed by OSDP in connection with OSDP's control and protection of the Source Code and all access to the Source Code.  Such Security Protocol is attached hereto on Exhibit 5.

**NOW, THEREFORE, Customer, Iron Mountain and OSDP agree, as follows:**

## ARTICLE 1 - DEPOSITS

1.1    Deposit of Source Code.  Upon the execution of this Agreement by the parties, Customer shall deliver the Equipment (as defined in Section 2) with the Source Code installed thereon to OSDP, which OSDP shall store and maintain in the Secure Facility, as set forth in the Security Protocol.

1.2    Identification of Source Code. The Source Code is identified on Exhibit 1 hereof.  The Source Code shall be considered highly confidential by Iron Mountain and OSDP in all respects.

## ARTICLE 2 – EQUIPMENT

Customer is to provide the equipment on which the Source Code will be made available for review by Authorized Personnel at the Secure facility (the "Equipment").

## ARTICLE 3 – USE OF SECURE FACILITY

3.1    <u>Access List of Authorized Personnel.</u>  Exhibit 2 sets forth a list of individual representatives of Accessing Company who are authorized to access the Source Code ("Authorized Personnel"), which list shall be subject to additions or deletions of individuals upon Customer's written notice to Iron Mountain and OSDP.  Customer hereby certifies that the individuals on such list are authorized to review the Source Code.  OSDP will allow access to the Source Code by the Authorized Personnel only in accordance with the Security Protocol.

3.2    <u>Operational Requirements.</u> Customer shall comply with IRON MOUNTAIN's and OSDP's reasonable operational requirements provided to Customer in writing, as modified from time to time by written notice to Customer, regarding: (i) the frequency of Customer's Source Code deposits; (ii) security and access to the Secure Facility (which requirements shall be as set forth in the Security Protocol), and (iii) similar matters.  Customer acknowledges that an extraordinary frequency of Customer's Source Code deposits may require Iron Mountain and/or OSDP to incur additional costs, which Customer agrees to pay provided Iron Mountain and/or OSDP gives written notice to Customer thereof in advance and Customer accepts such additional costs.  Customer acknowledges that any requests for other equipment and/or services (i.e. computers, printers, fax machines, telephone service, internet access, etc.), or an extraordinary number of scheduled requests made by Accessing Company to access the Source Code may require Iron Mountain and/or OSDP to incur additional costs, which may be charged to Customer.

3.3    <u>Security Protocol.</u>  OSDP represents and warrants that it shall fully comply, at all times, with the Security Protocol.

## ARTICLE 4  -  TERM AND TERMINATION

4.1    <u>Term.</u>  The initial term of this Agreement is for a period of (12) months with automatic renewals for additional (6) month terms, unless and until, at any time during the term: (a) written notice of termination is delivered by Customer to Iron Mountain and OSDP not less than thirty days prior to the termination date; or (b) the Agreement is terminated by Iron Mountain and OSDP for nonpayment pursuant to Section 4.2.

4.2    <u>Termination.</u> In the event of the nonpayment of fees owed by Customer to IRON MOUNTAIN, Iron Mountain shall provide written notice of delinquency to Customer.  If the past-due payment is not received in full by Iron Mountain within one month of the date of such notice, then Iron Mountain shall have the right to suspend Authorized Personnel's access to Secured Facility or terminate this Agreement at any time thereafter by sending written notice of termination to Customer.  If Customer provides written notice requesting the return of their Deposit Materials, then Iron Mountain will forward such notice informing the Accessing Company of this action.  Accessing Company must acknowledge and agree to this desired action in writing in order for Iron Mountain to comply with this request.

4.3    <u>Disposition of the Source Code.</u> Upon termination of this Agreement, Iron Mountain and OSDP shall return or otherwise deliver the Source Code to Customer in accordance with any and all reasonable instructions from Customer provided by Customer.  The Customer will be responsible for fully deleting the Source Code from any media on which it is stored by Customer or for providing Iron Mountain and/or OSDP with complete instructions and software necessary for Iron Mountain or OSDP to fully delete such contents.

**ARTICLE 5 - IRON MOUNTAIN'S FEES**

5.1   Fee Schedule.  Iron Mountain is entitled to be paid, in advance, the fees applicable to the services requested by Customer and provided by IRON MOUNTAIN, as identified on fee schedule attached hereto as Exhibit 3.  For any service requested by Customer which is outside of the scope of the services set forth in this Agreement, Iron Mountain will provide a written quote prior to rendering the requested service, and shall render such service only upon Customer's written acceptance of such quote and advance payment.  For any services requested, Iron Mountain shall provide Customer with an invoice.

5.2   Payment Terms.  All initial fees are due on execution of this Agreement. Payment for fees associated with any renewal terms due within thirty (30) days prior to the expiration of the current term, after Customer's receipt of a written, valid, undisputed invoice and in advance of Accessing Company's next visit to the OSDP facility.  If invoiced fees are not paid when they are due, Iron Mountain and OSDP may terminate this Agreement in accordance with Section 4.2.

**ARTICLE 6 - LIABILITIES**

6.1   Right to Rely on Instructions.  Iron Mountain and OSDP may rely upon this Agreement, any instruction, document, or signature provided by Customer.  Iron Mountain and OSDP will not be required to inquire into the truth or evaluate the merit of any statement or representation contained in any notice or document provided by Customer. Iron Mountain and OSDP will not be responsible for failure to act as a result of causes beyond the reasonable control of Iron Mountain and/or OSDP.

6.2   Value of Copy of Source Code.  Customer declares for the purposes of this Agreement that the value of the copy of the Source Code in IRON MOUNTAIN's and OSDP's possession (not including any intangible rights with respect thereto) is limited to the cost of replacing the physical media on which the Source Code is stored, if the Source Code is damaged or destroyed.  This limitation of IRON MOUNTAIN's and OSDP's liability will apply regardless of the form of action, whether in contract or tort, including negligence.

6.3   Loss or Damage to Source Code Stored on Magnetic Media.  IRON MOUNTAIN's liability, if any, for damage to the copy of the Source Code in IRON MOUNTAIN's possession (not including any intangible rights with respect thereto) stored on magnetic media shall be limited to the replacement cost of such media.  Iron Mountain reserves the right to provide replacement of such media rather than reimbursement.  This limitation of IRON MOUNTAIN's liability will apply regardless of the form of action, whether in contract or tort, including negligence.

6.4   Limitation of Liability.  NOTWITHSTANDING ANYTHING ELSE HEREIN, ALL LIABILITY, IF ANY, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, OF ANY PARTY TO THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNT EQUAL TO ONE YEAR OF FEES PAID OR OWED TO IRON MOUNTAIN UNDER THIS AGREEMENT.  IF CLAIM OR LOSS IS MADE IN RELATION TO A SPECIFIC DEPOSIT OR DEPOSITS, SUCH LIABILITY SHALL BE LIMITED TO THE FEES RELATED SPECIFICALLY TO SUCH DEPOSITS.  THIS LIMIT SHALL NOT APPLY TO ANY PARTY FOR: (I) ANY CLAIMS OF INFRINGEMENT OF ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT; (II) LIABILITY FOR DEATH OR BODILY

INJURY; (III) DAMAGE TO TANGIBLE PROPERTY (EXCLUDING THE DEPOSIT ITEMS); (IV) THEFT; OR (V) PROVEN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

6.5    Consequential Damages Waiver.  IN NO EVENT SHALL ANY PARTY TO THIS AGREEMENT BE LIABLE TO ANOTHER PARTY FOR ANY INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, LOST PROFITS OR LOST DATA OR INFORMATION, ANY COSTS OR EXPENSES FOR THE PROCUREMENT OF SUBSTITUTE SERVICES, OR ANY OTHER INDIRECT DAMAGES, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE EVEN IF THE POSSIBILITY THEREOF MAY BE KNOWN IN ADVANCE TO ONE OR MORE PARTIES.

6.6    Indemnification.  Each party shall defend, indemnify and hold harmless the others, their corporate affiliates and their respective officers, directors, employees, and agents and their respective successors and assigns from and against any and all claims, losses, liabilities, damages, and expenses (including, without limitation, reasonable attorneys' fees), arising under this Agreement from the negligent or intentional acts or omissions of the indemnifying party or its subcontractors, or the officers, directors, employees, agents, successors and assigns of any of them.

6.7    Controlling Law.  This Agreement is to be governed and construed in accordance with the laws of the State of New York, without regard to its conflict of law provisions.

**ARTICLE 7 - GENERAL**

7.1    Entire Agreement. This Agreement, which includes the Exhibits attached hereto, embodies the entire understanding among the parties with respect to its subject matter and supersedes all previous communications, representations or understandings, either oral or written. IRON MOUNTAIN's and OSDP's only obligations are as set forth in this Agreement. No amendment or modification of this Agreement shall be valid or binding unless signed by all the parties hereto.

7.2    Notices.  All notices, payments, invoices and other documents and communications shall be given to the parties at the addresses specified in Exhibit 4. It shall be the responsibility of the parties to notify each other as provided in this Section in the event of a change of address. The parties shall have the right to rely on the last known address of the other parties. Unless otherwise provided in this Agreement, all documents and communications may be delivered by First Class mail.

7.3    Successors.  This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties.  However, no party shall have any obligation in performing this Agreement to recognize any successor or assign of any other party unless it receives clear, authoritative and conclusive written documentation of the change from the such other party.

7.4    Subpoenas or Court Orders. In the event Iron Mountain or OSDP receives a subpoena or other order of a court or other judicial tribunal pertaining to this Agreement, Iron Mountain or OSDP shall promptly notify Customer unless prohibited by law, and shall cooperate with Customer in obtaining a protective order and/or in limiting the scope of any disclosure required of Iron Mountain and/or OSDP. It shall be the responsibility of Customer to challenge any such order; provided, however, that Iron Mountain and OSDP do not waive its rights to present its position with respect to any such

order. Iron Mountain and OSDP will not disobey any order of a court or other judicial tribunal pertaining to this Agreement.

7.5    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

Remainder of page left intentionally blank.

AGREED AND ACCEPTED:

**Customer**                                    **Accessing Company**


By: _____          By: _____


Name: _____          Name: _____


Title: _____          Title: _____


Date: _____          Date: _____



IRON MOUNTAIN OFF-SITE DATA          
PROTECTION, A DIVISION OF IRON          IRON MOUNTAIN INTELLECTUAL
MOUNTAIN INFORMATION          PROPERTY MANAGEMENT, INC.
MANAGEMENT, INC.


By: _____          By: _____


Name: _____          Name: _____


Title: _____          Title: _____


Date: _____          Date: _____

**EXHIBIT 1**

**SOURCE CODE TO BE DEPOSITED**

Account Number _____

The Source Code shall consist of the following:

**EXHIBIT 2**

**AUTHORIZED PERSONNEL**

Account Number _____

| Individual Name(s) of Authorized Personnel: | Company/Firm Name: |
|---|---|
| | |
| | |
| | |
| | |
| | |

**EXHIBIT 3**
**Fee Schedule**
**Electronic Discovery Services**

DEPOSIT ACCOUNT NUMBER _____

---

**Electronic Discovery Agreement:**

| | |
|---|---|
| One Time Set-up fees: | $1,050.00 |
| Simi Valley, CA Vaulting: | |
| Twelve Month Storage fees (deposit maintenance and handling): | $4,125.00 |
| One Time Release handling fees: | $ 500.00 |
| Boston, MA Vaulting: | |
| Six Month Storage fees (deposit maintenance and handling): | $4,125.00 |
| One Time Release handling fees: | $ 500.00 |
| **Subtotal:** | **$10,300.00** |

**Secure Electronic Discovery Facility Usage**

| | |
|---|---|
| Discovery Facility  per diem | |
| Monday to Friday - 8:00 AM – 5:00 PM | $ 500.00 |
| Minimum # days paid in advance: | 4 |
| *Client may buy additional blocks of four (4) days payable in advance | |
| **Subtotal:** | **$2,000.00** |

**Total Due With Signing of this agreement:**      **$12,300.00**

## Additional facility in the San Francisco Bay area may be added for an additional $4,125.00 per twelve-month period.

INCLUDED IN THE FACILITY USAGE ARE:

---

- Daytime access to a secured Iron Mountain Off Site Data Protection media vaulting facility in the San Diego and Boston  Metropolitan areas, Monday to Friday - 8:00 AM – 5:00 PM
- Two (2) day advance notice required, unless Iron Mountain is able to accommodate shorter notice
- Identification check against pre-approved list of expert witnesses having access to facility and materials with twelve (12) hour written advance notice
- Dedicated room to examine deposit materials for discovery purposes
- Technical personnel to transport vaulted deposit materials and equipment from vault to clean room, to connect equipment and to disconnect the equipment after each session and return to the secure media vault.
- Pricing is good through Jan.31, 2006.
- Subject to the terms and conditions of our standard Electronic Discovery Services Agreement

EXCLUDED IN THE FACILITY USAGE ARE:

- Physical Supervision ($75/hour)
- Does not include the use of telephone service, internet access, printers, fax machines or other business machines
- Customer to supply laptop computer containing the deposit materials.
- Facility is not accessible or available on weekends, evenings or observed holidays
- Porting materials from one facility to another (if necessary), which will be done at cost according to the requirements by the parties

## EXHIBIT 4

## DESIGNATED CONTACTS

Account Number _____

Notices and/or communications to Customer should be addressed to:

Invoices to Customer should be addressed to:

Company Name:_____

Address:_____

_____

_____

_____

_____

_____

_____

Designated Contact:_____

Contact: _____

Telephone:_____

_____

Facsimile:_____

**P.O.#, if required:**_____

Notices and/or communications to Accessing Company should be addressed to:

Invoices to Accessing Company should be addressed to:

Company Name:_____

Address:_____

_____

_____

_____

_____

_____

_____

Designated Contact:_____

Contact: _____

Telephone:_____

_____

Facsimile:_____

**P.O.#, if required:**_____

Requests from Customer and/or Accessing Company to change the designated contact should be given in writing by the designated contact or an authorized employee of Customer.

Notices and/or communications to Iron Mountain should be addressed to:

Invoice inquiries and fee remittances to Iron Mountain should be addressed to:

Iron Mountain Intellectual Property Management, Inc.
Contract Administration
2100 Norcross Parkway, Suite 150,
Norcross, GA 30071

Iron Mountain Intellectual Property Management, Inc.
PO Box 27131
New York, NY  10087-7131

Telephone:  (770) 239-9200
Facsimile:    (770) 239-9201

## EXHIBIT 5

## SECURITY PROTOCOL

1.    Confidentiality and Security of Secure Facility and Source Code

1.1.    At all times, the Source Code will be locked inside the Secure Facility, made available for review by Authorized Personnel in the Secure Facility, all subject to the procedures set forth in this Security Protocol. Authorized Personnel will be allowed to review the Source Code only in the Secure Facility.

2.    Access By Authorized Personnel

2.1.    OSDP shall require proper identification of Authorized Personnel prior to any access to the Secure Facility or the Source Code at any time. OSDP shall not provide or enable any individual access to the Secure Facility or the Source Code without first verifying that such individual is in fact an Authorized Personnel by following the following procedure:

    (i)    Obtain from the Authorized Personnel, upon each entry, a photo identification card sanctioned by the government of a State of the United States or by the United States federal government (a "Photo ID")

    (ii)    Locate the name found on such Photo ID on the list of Authorized Personnel set forth on Exhibit 2 of the Agreement

    (iii)    Compare the photo on such Photo ID to the appearance of individual presenting such Photo ID

3.    Deposit Of Source Code

3.1    Each party shall deposit source code by placing that source code on a laptop and delivering said laptop by _____ [DATE]. The laptop shall have the following minimum specifications:

- 2GHz or greater processor
- 1 gigabyte or more RAM
- 40 gigabyte or more hard drive
- 15" or larger screen with resolution no less than 1600 by 1200 pixels
- A drive capable of reading DVDs and CDs and writing CDs

4.    Procedure For Source Code Review

4.1    Authorized Personnel shall review the Source Code in the Secure Facility. The Authorized Personnel shall print desired sections of the Source Code to a CD-ROM in PDF format or other easily-accessible standard text format. Authorized Personnel shall not be permitted to take such files or printed sections with them upon leaving the Secure Facility. Rather, OSDP will, by overnight mail, send copies of such files to each party. This will conclude OSDP's responsibilities as to this issue.

4.2    The parties will then have three business days in which to object to the production of such files. If there are no objections, the parties shall treat the files as Attorneys' Eyes Only documents under the applicable protective order. If there are objections, the objecting party must apply to the Court for a protective order within three business days of receiving the files. The parties agree that they will use their best efforts to resolve any objections regarding production of the files prior to filing a motion for protective order.

# Exhibit 2



### ELECTRONIC DISCOVERY SERVICES AGREEMENT

Account Number _____

This agreement ("Agreement") is effective this _____, 2005 (the "Effective Date"), by and between _____("Customer") and_____.("Accessing Company"), Iron Mountain Intellectual Property Management, Inc., with its principal office located at 2100 Norcross Parkway, Suite 150, Norcross, GA 30071 ("Iron Mountain") and Iron Mountain Off-Site Data Protection, a division of Iron Mountain Information Management, Inc. ("OSDP"), each individually referred to herein as a "party" and collectively as "the parties."

A.    Certain software source code owned by Customer (the "Source Code") is subject to litigation.

B.    In order to provide the Plaintiff in such litigation, (the "Accessing Company"), with access to review the Source Code in a secure and controlled fashion, Customer and Accessing Company desire to retain the services of Iron Mountain and OSDP to store the Source Code at a secure facility provided and maintained by OSDP in accordance with the requirements of this Agreement (the "Secure Facility"), and to provide such secure and controlled access to the Source Code at the Secure Facility by certain individual representatives of Accessing Company (defined in Section 3.1 below as "Authorized Personnel").

C.    In order to ensure the control and security of the Source Code, the parties have devised a security protocol to be followed by OSDP in connection with OSDP's control and protection of the Source Code and all access to the Source Code. Such Security Protocol is attached hereto on Exhibit 5.

**NOW, THEREFORE, Customer, Iron Mountain and OSDP agree, as follows:**

### ARTICLE 1 - DEPOSITS

1.1    Deposit of Source Code.  Upon the execution of this Agreement by the parties, Customer shall deliver the Equipment (as defined in Section 2) with the Source Code installed thereon to OSDP, which OSDP shall store and maintain in the Secure Facility, as set forth in the Security Protocol.

1.2    Identification of Source Code. The Source Code is identified on Exhibit 1 hereof.  The Source Code shall be considered highly confidential by Iron Mountain and OSDP in all respects.

### ARTICLE 2 – EQUIPMENT

Customer is to provide the equipment on which the Source Code will be made available for review by Authorized Personnel at the Secure facility (the "Equipment").

**ARTICLE 3 – USE OF SECURE FACILITY**

3.1    Access List of Authorized Personnel. Exhibit 2 sets forth a list of individual representatives of Accessing Company who are authorized to access the Source Code ("Authorized Personnel"), which list shall be subject to additions or deletions of individuals upon Customer's written notice to Iron Mountain and OSDP. Customer hereby certifies that the individuals on such list are authorized to review the Source Code. OSDP will allow access to the Source Code by the Authorized Personnel only in accordance with the Security Protocol.

3.2    Operational Requirements. Customer shall comply with IRON MOUNTAIN's and OSDP's reasonable operational requirements provided to Customer in writing, as modified from time to time by written notice to Customer, regarding: (i) the frequency of Customer's Source Code deposits; (ii) security and access to the Secure Facility (which requirements shall be as set forth in the Security Protocol), and (iii) similar matters. Customer acknowledges that an extraordinary frequency of Customer's Source Code deposits may require Iron Mountain and/or OSDP to incur additional costs, which Customer agrees to pay provided Iron Mountain and/or OSDP gives written notice to Customer thereof in advance and Customer accepts such additional costs. Customer acknowledges that any requests for other equipment and/or services (i.e. computers, printers, fax machines, telephone service, internet access, etc.), or an extraordinary number of scheduled requests made by Accessing Company to access the Source Code may require Iron Mountain and/or OSDP to incur additional costs, which may be charged to Customer.

3.3    Security Protocol. OSDP represents and warrants that it shall fully comply, at all times, with the Security Protocol.

**ARTICLE 4 - TERM AND TERMINATION**

4.1    Term. The initial term of this Agreement is for a period of (12) months with automatic renewals for additional (6) month terms, unless and until, at any time during the term: (a) written notice of termination is delivered by Customer to Iron Mountain and OSDP not less than thirty days prior to the termination date; or (b) the Agreement is terminated by Iron Mountain and OSDP for nonpayment pursuant to Section 4.2.

4.2    Termination. In the event of the nonpayment of fees owed by Customer to IRON MOUNTAIN, Iron Mountain shall provide written notice of delinquency to Customer. If the past-due payment is not received in full by Iron Mountain within one month of the date of such notice, then Iron Mountain shall have the right to suspend Authorized Personnel's access to Secured Facility or terminate this Agreement at any time thereafter by sending written notice of termination to Customer. If Customer provides written notice requesting the return of their Deposit Materials, then Iron Mountain will forward such notice informing the Accessing Company of this action. Accessing Company must acknowledge and agree to this desired action in writing in order for Iron Mountain to comply with this request.

4.3    Disposition of the Source Code. Upon termination of this Agreement, Iron Mountain and OSDP shall return or otherwise deliver the Source Code to Customer in accordance with any and all reasonable instructions from Customer provided by Customer. The Customer will be responsible for fully deleting the Source Code from any media on which it is stored by Customer or for providing Iron Mountain and/or OSDP with complete instructions and software necessary for Iron Mountain or OSDP to fully delete such contents.

## ARTICLE 5 - IRON MOUNTAIN'S FEES

5.1    Fee Schedule.  Iron Mountain is entitled to be paid, in advance, the fees applicable to the services requested by Customer and provided by IRON MOUNTAIN, as identified on fee schedule attached hereto as Exhibit 3.  For any service requested by Customer which is outside of the scope of the services set forth in this Agreement, Iron Mountain will provide a written quote prior to rendering the requested service, and shall render such service only upon Customer's written acceptance of such quote and advance payment.  For any services requested, Iron Mountain shall provide Customer with an invoice.

5.2    Payment Terms.  All initial fees are due on execution of this Agreement. Payment for fees associated with any renewal terms due within thirty (30) days prior to the expiration of the current term, after Customer's receipt of a written, valid, undisputed invoice and in advance of Accessing Company's next visit to the OSDP facility.  If invoiced fees are not paid when they are due, Iron Mountain and OSDP may terminate this Agreement in accordance with Section 4.2.

## ARTICLE 6 - LIABILITIES

6.1    Right to Rely on Instructions.  Iron Mountain and OSDP may rely upon this Agreement, any instruction, document, or signature provided by Customer.  Iron Mountain and OSDP will not be required to inquire into the truth or evaluate the merit of any statement or representation contained in any notice or document provided by Customer. Iron Mountain and OSDP will not be responsible for failure to act as a result of causes beyond the reasonable control of Iron Mountain and/or OSDP.

6.2    Value of Copy of Source Code.  Customer declares for the purposes of this Agreement that the value of the copy of the Source Code in IRON MOUNTAIN's and OSDP's possession (not including any intangible rights with respect thereto) is limited to the cost of replacing the physical media on which the Source Code is stored, if the Source Code is damaged or destroyed.  This limitation of IRON MOUNTAIN's and OSDP's liability will apply regardless of the form of action, whether in contract or tort, including negligence.

6.3    Loss or Damage to Source Code Stored on Magnetic Media.  IRON MOUNTAIN's liability, if any, for damage to the copy of the Source Code in IRON MOUNTAIN's possession (not including any intangible rights with respect thereto) stored on magnetic media shall be limited to the replacement cost of such media.  Iron Mountain reserves the right to provide replacement of such media rather than reimbursement.  This limitation of IRON MOUNTAIN's liability will apply regardless of the form of action, whether in contract or tort, including negligence.

6.4    Limitation of Liability.  NOTWITHSTANDING ANYTHING ELSE HEREIN, ALL LIABILITY, IF ANY, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, OF ANY PARTY TO THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNT EQUAL TO ONE YEAR OF FEES PAID OR OWED TO IRON MOUNTAIN UNDER THIS AGREEMENT.  IF CLAIM OR LOSS IS MADE IN RELATION TO A SPECIFIC DEPOSIT OR DEPOSITS, SUCH LIABILITY SHALL BE LIMITED TO THE FEES RELATED SPECIFICALLY TO SUCH DEPOSITS.  THIS LIMIT SHALL NOT APPLY TO ANY PARTY FOR: (I) ANY CLAIMS OF INFRINGEMENT OF ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT; (II) LIABILITY FOR DEATH OR BODILY

INJURY; (III) DAMAGE TO TANGIBLE PROPERTY (EXCLUDING THE DEPOSIT ITEMS); (IV) THEFT; OR (V) PROVEN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

6.5    Consequential Damages Waiver.  IN NO EVENT SHALL ANY PARTY TO THIS AGREEMENT BE LIABLE TO ANOTHER PARTY FOR ANY INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, LOST PROFITS OR LOST DATA OR INFORMATION, ANY COSTS OR EXPENSES FOR THE PROCUREMENT OF SUBSTITUTE SERVICES, OR ANY OTHER INDIRECT DAMAGES, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE EVEN IF THE POSSIBILITY THEREOF MAY BE KNOWN IN ADVANCE TO ONE OR MORE PARTIES.

6.6    Indemnification.  Each party shall defend, indemnify and hold harmless the others, their corporate affiliates and their respective officers, directors, employees, and agents and their respective successors and assigns from and against any and all claims, losses, liabilities, damages, and expenses (including, without limitation, reasonable attorneys' fees), arising under this Agreement from the negligent or intentional acts or omissions of the indemnifying party or its subcontractors, or the officers, directors, employees, agents, successors and assigns of any of them.

6.7    Controlling Law.  This Agreement is to be governed and construed in accordance with the laws of the State of New York, without regard to its conflict of law provisions.

## ARTICLE 7 - GENERAL

7.1    Entire Agreement. This Agreement, which includes the Exhibits attached hereto, embodies the entire understanding among the parties with respect to its subject matter and supersedes all previous communications, representations or understandings, either oral or written. IRON MOUNTAIN's and OSDP's only obligations are as set forth in this Agreement. No amendment or modification of this Agreement shall be valid or binding unless signed by all the parties hereto.

7.2    Notices.  All notices, payments, invoices and other documents and communications shall be given to the parties at the addresses specified in Exhibit 4. It shall be the responsibility of the parties to notify each other as provided in this Section in the event of a change of address. The parties shall have the right to rely on the last known address of the other parties. Unless otherwise provided in this Agreement, all documents and communications may be delivered by First Class mail.

7.3    Successors.  This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties.  However, no party shall have any obligation in performing this Agreement to recognize any successor or assign of any other party unless it receives clear, authoritative and conclusive written documentation of the change from the such other party.

7.4    Subpoenas or Court Orders. In the event Iron Mountain or OSDP receives a subpoena or other order of a court or other judicial tribunal pertaining to this Agreement, Iron Mountain or OSDP shall promptly notify Customer unless prohibited by law, and shall cooperate with Customer in obtaining a protective order and/or in limiting the scope of any disclosure required of Iron Mountain and/or OSDP. It shall be the responsibility of Customer to challenge any such order; provided, however, that Iron Mountain and OSDP do not waive its rights to present its position with respect to any such

order. Iron Mountain and OSDP will not disobey any order of a court or other judicial tribunal pertaining to this Agreement.

7.5    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

Remainder of page left intentionally blank.

AGREED AND ACCEPTED:

**Customer**                                        **Accessing Company**


By: _____              By: _____


Name: _____              Name: _____


Title: _____              Title: _____


Date: _____              Date: _____



IRON MOUNTAIN OFF-SITE DATA
PROTECTION, A DIVISION OF IRON
MOUNTAIN INFORMATION                       IRON MOUNTAIN INTELLECTUAL
MANAGEMENT, INC.                            PROPERTY MANAGEMENT, INC.


By: _____              By: _____


Name: _____              Name: _____


Title: _____              Title: _____


Date: _____              Date: _____

**EXHIBIT 1**

**SOURCE CODE TO BE DEPOSITED**

Account Number _____

The Source Code shall consist of the following:

**EXHIBIT 2**

**AUTHORIZED PERSONNEL**

Account Number _____

| Individual Name(s) of Authorized Personnel: | Company/Firm Name: |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**EXHIBIT 3**
**Fee Schedule**
**Electronic Discovery Services**

DEPOSIT ACCOUNT NUMBER _____ .

**Electronic Discovery Agreement:**

    One Time Set-up fees:                            $1,050.00

    Simi Valley, CA Vaulting:

    Twelve Month Storage fees (deposit maintenance and handling):    $4,125.00
    One Time Release handling fees:              $ 500.00

    Boston, MA Vaulting:
    Six Month Storage fees (deposit maintenance and handling):    $4,125.00
    One Time Release handling fees:              $ 500.00

**Subtotal:**                                         **$10,300.00**

**Secure Electronic Discovery Facility Usage**

    Discovery Facility  per diem
    Monday to Friday - 8:00 AM – 5:00 PM                 $ 500.00
    Minimum # days paid in advance:                      4
    *Client may buy additional blocks of four (4) days payable in advance

    **Subtotal:**                                      **$2,000.00**

**Total Due With Signing of this agreement:**       **$12,300.00**

**Additional facility in the San Francisco Bay area may be added for an additional $4,125.00 per twelve-month period.**

INCLUDED IN THE FACILITY USAGE ARE:

- Daytime access to a secured Iron Mountain Off Site Data Protection media vaulting facility in the San Diego and Boston  Metropolitan areas, Monday to Friday - 8:00 AM – 5:00 PM
- Two (2) day advance notice required, unless Iron Mountain is able to accommodate shorter notice
- Identification check against pre-approved list of expert witnesses having access to facility and materials with twelve (12) hour written advance notice
- Dedicated room to examine deposit materials for discovery purposes
- Technical personnel to transport vaulted deposit materials and equipment from vault to clean room, to connect equipment and to disconnect the equipment after each session and return to the secure media vault.
- Pricing is good through Jan.31, 2006.
- Subject to the terms and conditions of our standard Electronic Discovery Services Agreement

EXCLUDED IN THE FACILITY USAGE ARE:

- Physical Supervision ($75/hour)
- Does not include the use of telephone service, internet access, printers, fax machines or other business machines
- Facility is not accessible or available on weekends, evenings or observed holidays
- Porting materials from one facility to another (if necessary), which will be done at cost according to the requirements by the parties

## EXHIBIT 4

## DESIGNATED CONTACTS

Account Number _____

Notices and/or communications to Customer should be addressed to:

Invoices to Customer should be addressed to:

Company Name:_____
Address:_____

_____
_____

_____
_____

Designated Contact:_____
Telephone:_____
Facsimile:_____

Contact: _____

_____

**P.O.#, if required:**_____

Notices and/or communications to Accessing Company should be addressed to:

Invoices to Accessing Company should be addressed to:

Company Name:_____
Address:_____

_____
_____

_____
_____

Designated Contact:_____
Telephone:_____
Facsimile:_____

Contact: _____

_____

**P.O.#, if required:**_____

Requests from Customer and/or Accessing Company to change the designated contact should be given in writing by the designated contact or an authorized employee of Customer.

Notices and/or communications to
Iron Mountain should be addressed to:

Invoice inquiries and fee remittances
to Iron Mountain should be addressed to:

Iron Mountain Intellectual Property
Management, Inc.
Contract Administration
2100 Norcross Parkway, Suite 150,
Norcross, GA 30071

Iron Mountain Intellectual Property
Management, Inc.
PO Box 27131
New York, NY 10087-7131

Telephone:  (770) 239-9200
Facsimile:   (770) 239-9201

**EXHIBIT 5**

**SECURITY PROTOCOL**

1.    Confidentiality and Security of Secure Facility and Source Code
1.1.    At all times, the Source Code will be locked inside the Secure Facility, made available for review by Authorized Personnel in the Secure Facility, all subject to the procedures set forth in this Security Protocol.  Authorized Personnel will be allowed to review the Source Code only in the Secure Facility.

2.    Access By Authorized Personnel
2.1.    OSDP shall require proper identification of Authorized Personnel prior to any access to the Secure Facility or the Source Code at any time.  OSDP shall not provide or enable any individual access to the Secure Facility or the Source Code without first verifying that such individual is in fact an Authorized Personnel by following the following procedure:
      (i)    Obtain from the Authorized Personnel, upon each entry, a photo identification card sanctioned by the government of a State of the United States or by the United States federal government (a "Photo ID")
      (ii)    Locate the name found on such Photo ID on the list of Authorized Personnel set forth on Exhibit 2 of the Agreement
      (iii)    Compare the photo on such Photo ID to the appearance of individual presenting such Photo ID

3.    Deposit Of Source Code
3.1    Each party shall deposit source code by placing that source code on a laptop and delivering said laptop by _____ [DATE].  The laptop shall have the following minimum specifications:
- 2GHz or greater processor
- 1 gigabyte or more RAM
- 40 gigabyte or more hard drive
- 15" or larger screen with resolution no less than 1600 by 1200 pixels
- A drive capable of reading DVDs and CDs and writing CDs

4.    Procedure For Source Code Review
4.1    Authorized Personnel shall review the Source Code in the Secure Facility, with the following limitations:
- Authorized users may view the source code using a PC laptop provided by Iron Mountain.
- The laptop should be wiped clean of any software except for an operating system and a program that allows the user to view the source code only as searchable text.  No other programs shall be loaded on the computer.
- The user cannot use any other software to compile and execute the code or use any other software tools to trace through the code.
- The user can request to print source code by file.
- Iron Mountain shall maintain an inspection log of user activity that includes the date, time in, time out, name of the authorized user and any print requests that have been made.  Such log will be sent to the parties after an authorized user has made an inspection of the code.
- No other activity will be recorded or reported to the parties by Iron Mountain during an inspection by an authorized user.

4.2     The Authorized Personnel may print desired sections of the Source Code to a CD-ROM in PDF format or other easily-accessible standard text format.  Authorized Personnel shall not be permitted to take such files or printed sections with them upon leaving the Secure Facility.  Rather, OSDP will, by overnight mail, send copies of such files to the party whose software has been copied (*i.e.*, the non-requesting party).  Three business days after sending the printed sections to the non-requesting party, OSDP will send the printed sections to the requesting party, ***unless*** a letter objecting to such production has been sent to OSDP.

4.2     The non-requesting party will have three business days in which to object to the production of such files.  If there are no objections, the parties shall treat the files as Attorneys' Eyes Only documents under the applicable protective order.  If there are objections, the objecting party must apply to the Court for a protective order within three business days of receiving the files.  The parties agree that they will use their best efforts to resolve any objections regarding production of the files prior to filing a motion for protective order.

# EXHIBIT 3

## FULLY REDACTED

# Exhibit 4



AFFYMETRIX

Daniel R. Reed
Litigation Attorney
Direct Dial:  510.428.8520
E-Mail Address:  Daniel_Reed@affymetrix.com

December 20, 2005

<u>**VIA EMAIL**</u>

Marcus Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

       Re:     *Affymetrix, Inc. v. Illumina, Inc.*
              <u>Civil Action No. 04-901-JJF</u>

Dear Marc:

       I write to raise a number of problems we have identified with Illumina's redactions and privilege log.  Given the impending closure of fact discovery, these items require your immediate attention.

       We have identified three primary areas of concern.  First, there are many documents that have been redacted but do not appear on the privilege log.  These redactions do not have any legitimate basis in the law.  Therefore, we ask that Illumina immediately re-produce each of these documents without any redactions and with the proper confidentiality designation (if any).  The documents are listed by the first bates number of the document:

           IAFP00020396, IAFP00021008, IAFP00481686, IAFP00482171,
           IAFP00482241, IAFP00503734, IAFP00517024, IAFP00535712,
           IAFP00546406, IAFP00546441, IAFP00547156, IAFP00547162,
           IAFP00549028, IAFP00549030, IAFP00550012, IAFP00550220,
           IAFP00567162, IAFP00567164, IAFP00567264, IAFP00570111,
           IAFP00570136, IAFP00570140, IAFP00570830, IAFP00585331,
           IAFP00585514, IAFP00585771, IAFP00585935, IAFP00585954,
           IAFP00586015, IAFP00586030, IAFP00586037, IAFP00586162,
           IAFP00586254, IAFP00586692, IAFP00587097, IAFP00587839,
           IAFP00587841, IAFP00590053, IAFP00590342, IAFP00590639,
           IAFP00591095, IAFP00595180, IAFP00597806, IAFP00597807,
           IAFP00599450, IAFP00599460, IAFP00599468, IAFP00599476,
           IAFP00603036, IAFP00603030, IAFP00603045, IAFP00603660,

6550 Vallejo Street
Suite 100
Emeryville, CA 94608
Telephone 510 428 8500
Fax 510 428 8583
www.affymetrix.com

Marcus Semel
December 20, 2005
Page 2

        IAFP00605009, IAFP00605011, IAFP00606084, IAFP00605491,
        IAFP00607756, IAFP00607932, IAFP00607962, IAFP00607967,
        IAFP00608005, IAFP00608026, IAFP00608028, IAFP00608034,
        IAFP00608036, IAFP00608221, IAFP00611631, IAFP00614408,
        IAFP00612406, IAFP00612768, IAFP00616939, IAFP00626328,
        IAFP00563823, IAFP00586692, IAFP00599460, IAFP00599468,
        IAFP00599476, IAFP00616024, IAFP00615999, IAFP00616001,
        IAFP00616024, IAFP00496279, IAFP00585824, IAFP00603076,
        IAFP00603093, IAFP00611688, IAFP00585900, IAFP00613882,
        IAFP00612526, IAFP00612610, IAFP00612652, IAFP00612701,
        IAFP00570451, IAFP00582690.

        Second, there are a number of public documents that are inappropriately designated under
the Protective Order and/or redacted.  There is no basis to redact or designate as confidential
presentations that were made to the public.  Therefore, we ask that Illumina immediately re-
produce the following documents without designation or redactions (again, listed by first bates
number of the document):

        IAFP00606267, IAFP00606502, IAFP00606648, IAFP00606832,
        IAFP00606881, IAFP00606931, IAFP00606971, IAFP00607090,
        IAFP00607187, IAFP00607239, IAFP00607345, IAFP00607419,
        IAFP00607644, IAFP00607495, IAFP00607548, IAFP00630885,
        IAFP00607288, IAFP00606555, IAFP00630485, IAFP00630526,
        IAFP00606689.

        Third, there are many entries on the Illumina privilege log that do not list an attorney as
an author or an intended recipient.  Please explain how the following log entries are properly
considered privileged:  Log # 11, 12, 13, 38, 114, 116, 118, 152, 256, 277, 286, 292, 354, and
431.  In addition, log entries 35 and 39 appear to be mislabeled (*i.e.,* they do not correspond to
the bates number listed).  Please explain this discrepancy.

        We look forward to your prompt response on these issues.

                                    Sincerely,

                                    Daniel R. Reed
                                    Litigation Attorney