IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AFFYMETRIX, INC.,

         Plaintiff,

    v.

ILLUMINA, INC.,

         Defendant.

C.A. No.  04-901-JJF

**REDACTED VERSION**

## ANSWERING BRIEF OF AFFYMETRIX, INC. IN OPPOSITION TO ILLUMINA'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Derek J. Fahnestock (#4705)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for Plaintiff Affymetrix, Inc.

OF COUNSEL:

Michael J. Malecek
Daniel R. Reed
George C. Yu
Andrea L. Gross
AFFYMETRIX, INC.
6550 Vallejo Street, Suite 100
Emeryville, CA  94608
(510) 428-8500

Original Filing Date:  January 23, 2006

Redacted Filing Date:  February 3, 2006

# TABLE OF CONTENTS

Page

INTRODUCTION

STATEMENT OF FACTS

    A.    The Affymetrix Patents. . . . . . . 2

    B.    Illumina's Proposed Amended Answer. . . . . 3

1.    Illumina's New Allegations Of Purported Violations of Section 2 of The Sherman Act. . . . . . . . 3

2.    Illumina's New Allegations Of Purported Inequitable Conduct and Unclean Hands. . . . . . . . 4

ARGUMENT

    I.    ILLUMINA'S ANTITRUST COUNTERCLAIMS ARE FUTILE BECAUSE IT HAS NOT PROPERLY PLEADED CLAIMS FOR VIOLATION OF § 2 OF THE SHERMAN ACT. . . . . . . . 6

        A.    A Party Asserting A Violation Of Section 1 Or Section 2 Of The Sherman Act Must Adequately Plead the Relevant Market. . . . . . 6

        B.    Illumina Has Not Pleaded Claims Sufficient To Overcome The *Noerr-Pennington* Doctrine, Granting Immunity To Good Faith Actions To Enforce Government Rights. . . . . . 7

        C.    Illumina Fails To Plead The Rudiments Of Any Anticompetitive Conduct. . . . . . 10

    II.    ALLOWING ILLUMINA'S ANTITRUST COUNTERCLAIMS TO PROCEED WOULD BE PREJUDICIAL TO AFFYMETRIX. . . . . . 12

    III.    ILLUMINA'S CLAIMS THAT THE PATENTS IN SUIT ARE UNENFORCEABLE SHOULD NOT BE ALLOWED. . . . . . . . 12

## TABLE OF CITATIONS

Page(s)

Cases

*Akzona v. E.I. Du Pont De Nemours & Co.,*
    607 F. Supp. 227 (D. Del. 1984)      12

*Argus Chemical Corp. v. Fibre-Glass Evercoat Co.,*
    812 F.2d 1381 (Fed. Cir. 1987)      9

*Bristol-Myers Squibb v. IVAX Corp.,*
    77 F. Supp. 606 (D.N.J. 2000)      9

*Brooke Group Ltd v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)      10

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962)      6

*C.R. Bard v. M3 Sys., Inc.,*
    157 F.3d 1340 (Fed. Cir. 1998)      7

*CCPI, Inc. v. American Premier, Inc.,*
    967 F. Supp. 813 (D. Del. 1997)      7

*Cheminoor Drugs v. Ethyl Corp.,*
    168 F.3d 119 (3d Cir. 1999)      8

*Cureton v. National Collegiate Athletic Association,*
    252 F.3d 267 (3d Cir. 2001)      12

*Dial A Car v. Transportation, Inc.,*
    82 F.3d 484 (D.C. Cir. 1996)      10

*E.R.R. Presidents Conference v. Noerr Motor Freight,*
    365 U.S. 127 (1961)      8

*EMC Corp. v. Storage Tech Corp.,*
    921 F. Supp. 1261 (D. Del. 1996) (Farnan, J.)      13, 14

*Foman v. Davis,*
    37 U.S. 178 (1962)      5

*Gordon v. Lewistown Hosp.,*
    423 F.3d 184 (3d Cir. 2005)      6

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002)      5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)      11

*Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.,*
    123 F. Supp. 2d 945 (W.D.N.C. 2000)      11

*Nobelpharma AB v. Implant Innovations, Inc.,*
    141 F.3d 1059 (Fed. Cir. 1998)      8

*Professional Real Estate Investors v. Columbia Pictures*
    *Industries,*
    508 US 49 (1993)      8

*Queen City Pizza v. Domino's Pizza,*
    124 F.3d 430 (3d Cir. 1997)      1, 6

*U.S. Steel Corp. v. Fortner Enters,*
    394 U.S. 495 (1969)      11

*United Mine Workers of America v. Pennington,*
    381 U.S. 657 (1965)      8

*United States v. Grinnell Corp.,*
    384 U.S. 563 (1966)      6

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382
    U.S. 172 (1965)      9

## INTRODUCTION

Almost eighteen months into this litigation, and less than three weeks before the originally scheduled close of fact discovery, Illumina seeks to amend its answer to add at least six separate counts of purported inequitable conduct and unclean hands, and to transform an already complex six patent infringement case into an even more complex antitrust matter. The asserted bases for adding these new allegations have been known to Illumina for months, and nothing in Illumina's motion papers justifies the burden and prejudice to Affymetrix of adding these new and multifaceted allegations at this late date.

Moreover, despite Illumina's contentions to the contrary, its proposed pleading is futile. Illumina's antitrust claims are improperly pleaded on a number of different grounds. First, the *Noerr-Pennington* doctrine immunizes a patentee from antitrust liability based on commencing litigation unless the defendant can establish that plaintiff's case is a "sham." Here, Illumina's bare assertions that

REDACTED

, does not amount to the allegations of "sham litigation" or fraud required.

Second, Illumina's proposed amended antitrust counterclaims are futile because Illumina has failed to plead a "relevant market." The law requires a party asserting a violation of Section 2 of the Sherman Act identify to plead the relevant market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997). Illumina does not do so, and instead, simply states that there is a "market for DNA microarray products" without mentioning the players or products that compete in that

purported market, alleging that these products are not interchangeable or saying anything about the "cross-elasticity of demand" between these products. Third, though Illumina's allegations throw out phrases such as

**REDACTED**

. Illumina's new unenforceability defenses fare no better than its antitrust counterclaims. For each of the six patents at issue, Illumina has purported to lay out somewhat different allegations of inequitable conduct. Each of these purported "new allegations" is based on prior art Illumina has long been aware of or deposition testimony Illumina obtained months ago. Yet, Illumina chose not to raise its allegations until the end of discovery. Moreover, Illumina's last-minute amendment is so conclusory and vague that it does not comply with the particularity requirements of Federal Rule of Civil Procedure 9(b).

In short, Illumina's attempts to add substantial issues (in both number and complexity) to this case at this late date should be denied. The addition of these matters would unfairly complicate this case and prejudice Affymetrix. Moreover, Illumina's vague allegations of antitrust violations, inequitable conduct and unclean hands do not meet even the basic pleading requirements to make out the asserted claims.

This is Affymetrix's Answering Brief in Opposition to Illumina's Motion for Leave to File An Amended Complaint.

STATEMENT OF FACTS

A.     The Affymetrix Patents.

Affymetrix has asserted six patents (U.S. Patent Nos. 5,545,531, 5,795,716, 6,355,432, 6,399,365, 6,607,887, and 6,646,243) against Illumina, alleging

infringement by Illumina's nucleic acid microarrays, and associated instrumentation and software. These patents relate generally to microarray technology for use in numerous biological research and biomedical applications. The patents include both method and apparatus claims describing various applications for the manufacture and use of microarrays.

  B.  <u>Illumina's Proposed Amended Answer.</u>

    1.  Illumina's New Allegations Of Purported
        <u>Violations of Section 2 of The Sherman Act.</u>

    Illumina's efforts to assert a violation of Section 2 of the Sherman Act are contained in the eight paragraphs of Count VII of its proposed amended complaint. In connection with Illumina's purported claims for monopolization or attempted monopolization, Illumina refers in various paragraphs    **REDACTED**

    Nowhere in Count VII or elsewhere in the proposed amendment, however, are there any facts defining that market, or alleging who the players are in any purported market, what products compete in that purported market, or whether those products are interchangeable.

    Similarly, in paragraph 72, Illumina asserts vague allegations that

**REDACTED**

    Again, however, Illumina does not allege (as it must to state a

---

1

  **REDACTED**

4.

claim) supporting facts.  For example,

## REDACTED

2.    Illumina's New Allegations Of Purported
Inequitable Conduct and Unclean Hands.

There are six patents at issue in this litigation.  Illumina now seeks to add

claims that each of the six patents is unenforceable for various acts of "fraud" and

"unclean hands."  In connection with its allegations, Illumina refers to numerous, but

unspecified, pieces of purported prior art and various pleadings and court documents

from other litigations with which Illumina would have had Affymetrix flood the Patent

Office during prosecution.  Illumina identifies but two patents in connection with its

allegations.  The remaining "prior art" is simply referred to "work done by" various

individuals, without any citation, leaving Affymetrix to guess as to what Illumina is

referring to.

Illumina has been aware of all of the "prior art" identified or alluded to in

its new allegations for many months, if not longer.  Indeed, the materials cited in its

proposed amendment were included in Illumina's original interrogatory responses, served

on March 10, 2005, and in its supplemental responses served on October 14, 2005.

Similarly, the deposition of Mr. Lipshutz, which Illumina quotes from in its proposed

amendment, was taken in November of last year.  Illumina has offered no explanation,

however, as to why it is only now raising these issues.

<u>ARGUMENT</u>

A court may deny a party leave to amend pleadings where there exists "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 37 U.S. 178, 182 (1962). "[A]n amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Here, neither the antitrust counterclaims, inequitable conduct allegations, nor unclean hands defense is pleaded adequately to constitute a cognizable claim, and thus leave to amend should be denied with regard to all of Illumina's new contentions. Furthermore, the antitrust claims would add complex issues of antitrust law to this patent infringement case, while the multiple inequitable conduct and unclean hands allegations would add numerous fact intensive issues to be vetted in a short time. Allowing these new claims at this late stage when the parties are trying to finish discovery on the issues that already are in this case would prejudice Affymetrix. It would also add extensive and unnecessary discovery, burden and cost.

I.    ILLUMINA'S ANTITRUST COUNTERCLAIMS ARE
      FUTILE BECAUSE IT HAS NOT PROPERLY
      PLEADED CLAIMS FOR VIOLATION OF § 2 OF THE
      SHERMAN ACT.

      A.    A Party Asserting A Violation Of Section 1 Or
            Section 2 Of The Sherman Act Must Adequately
            Plead the Relevant Market.

To state a claim for monopolization under § 2 of the Sherman Act, a plaintiff must allege "(1) monopoly power in a defined, relevant market and (2) willfully acquired or maintained monopoly power, as distinguished from growth or development due to superior product or business acumen." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). A claim for attempted monopolization in violation of § 2 of the Sherman Act requires that a plaintiff allege that the defendant "(1) had specific intent to monopolize the relevant market, (2) engaged in anticompetitive or exclusionary conduct, and (3) possessed sufficient market power to come dangerously close to success." *Gordon v. Lewistown Hosp.*, 423 F.3d 184 (3d Cir. 2005).

A "relevant market" is defined by the availability to consumers of interchangeable goods that would prevent a market participant from sustaining any significant price increases without a rapid decline in sales. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.") Thus, a party seeking to assert a violation of § 2 of the Sherman Act must identify in its pleading a market defined "with reference to the rule of interchangeability and cross-elasticity of demand." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997). In *Queen City Pizza*, 124 F.3d at 436, the Third Circuit held that:

> Where the plaintiff fails to define its proposed relevant
> market with reference to the rule of reasonable
> interchangeability and cross-elasticity of demand, or
> alleges a proposed relevant market that clearly does not
> encompass all interchangeable substitute products even
> when all factual inferences are granted in plaintiff's favor,
> the relevant market is legally insufficient and a motion to
> dismiss may be granted.

Thus, in *CCPI, Inc. v. American Premier, Inc.*, 967 F. Supp. 813, 817 (D. Del. 1997), this

Court held that a "[p]laintiff's failure to define its market by reference to the rule of

reasonable interchangeability is, standing alone, valid grounds for dismissal."

Despite this requirement, Illumina makes no attempt to define a market

with any reference to the rule of reasonable interchangeability, instead merely stating

baldly that                                       **REDACTED**

Illumina makes no attempt to define what falls within the definition of

**REDACTED**

Illumina does not address the cross-elasticity of demand between such potentially

substitutable goods and services. Illumina's skeletal pleading fails to define a "relevant

market" as required to plead a Section 2 violation. It thus does not state a claim for

which relief would be granted, and its proposed amendment is futile.

> B.    Illumina Has Not Pleaded Claims Sufficient To
>       Overcome The *Noerr-Pennington* Doctrine,
>       Granting Immunity To Good Faith Actions To
>       Enforce Government Rights.

"The law recognizes a presumption that the assertion of a duly granted

patent is made in good faith." *C.R. Bard v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir.

1998). Thus, under the *Noerr-Pennington* doctrine, "[a] party who petitions the

government for redress generally is immune from antitrust liability." *Cheminoor Drugs*

8.

*v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999). "This immunity extends to persons

who petition all types of government entities – legislatures, administrative agencies, and

courts." *Id.* The *Noerr-Pennington* doctrine, rooted in First Amendment concerns over

the maintenance of free channels to petition the government for redress, was recognized

by the Supreme Court in two cases – *E.R.R. Presidents Conference v. Noerr Motor*

*Freight*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381

U.S. 657 (1965).

The sole exceptions to *Noerr-Pennington* immunity occur where litigation

is a "mere sham," or where a patent was procured through fraud on the patent office.

*Cheminoor*, 168 F.3d at 122; *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d

1059 (Fed. Cir. 1998). In *Professional Real Estate Investors v. Columbia Pictures*

*Industries*, 508 US 49, 60-61 (1993)("*PRE*") the Supreme Court outlined a two-part

definition of "sham litigation":

> First, the lawsuit must be objectively baseless in the sense
> that no reasonable litigant could realistically expect success
> on the merits. If an objective litigant could conclude that
> the suit is reasonably calculated to elicit a favorable
> outcome, the suit is immunized under Noerr, and an
> antitrust claim premised on the sham exception must fail.
> Only if challenged litigation is objectively meritless may a
> court examine the litigant's subjective motivation. Under
> this second part of our definition of sham, the court should
> focus on whether the baseless lawsuit conceals "an attempt
> to interfere directly with the business relationships of a
> competitor."

All that a plaintiff needs to maintain immunity is the "existence of

probable cause to institute legal proceedings." *PRE*, 508 U.S. at 62. This probable cause

is "a reasonable belief that a claim may be held valid upon adjudication." *Cheminoor*,

168 F.3d at 122 (quoting PRE, 508 U.S. at 62-63). Moreover, the existence of probable

9.

cause is an absolute defense." *Id.* A defendant must thus plead facts – not bare

conclusions of law put forth as if they were facts – in support of its assertion that a

plaintiff is engaging in "sham" litigation – that is, that the litigation is objectively

baseless, and if, and only if, objectively baseless, brought in bad faith. *Bristol-Myers*

*Squibb v. IVAX Corp.*, 77 F. Supp. 606, 613 (D.N.J. 2000) ("To survive this motion to

dismiss, the counterclaimants must have set forth sufficient information for one to infer

that their allegations are supportable;  they may not rely on bald assertions or legal

conclusions made in the guise of factual allegations.")  Illumina's threadbare inequitable

conduct allegations are themselves insufficiently pleaded, and cannot support the

contention that Affymetrix' claims against Illumina are a "sham."

　　　　　Similarly, despite the inflammatory rhetoric in its Memorandum,

Illumina's claims fall far short of that required to plead *Walker Process* fraud on the

Patent Office. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S.

172 (1965).  As the Federal Circuit reasoned in *Argus Chemical Corp. v. Fibre-Glass*

*Evercoat Co.*, 812 F.2d 1381 (Fed. Cir. 1987), "the road to the Patent Office is so

tortuous and patent litigation is usually so complex, that 'knowing and willful fraud' as

the term is used in *Walker,* can mean no less than clear, convincing proof of intentional

fraud involving affirmative dishonesty, 'a deliberately planned and carefully executed

scheme to defraud ... the Patent Office.'"

　　　　　In *Nobelpharma*, 141 F.3d at 1070-71, the Federal Circuit emphasized that

the standard for *Walker Process* fraud exceeds even the high standards required to plead

inequitable conduct before the patent office:

　　　　　　　　　A finding of *Walker Process* fraud requires higher
　　　　　　　　threshold showings of both intent and materiality than does

a finding of inequitable conduct. Moreover, unlike a finding of inequitable conduct . . . a finding of *Walker Process* fraud may not be based upon an equitable balancing of lesser degrees of materiality and intent. Rather, it must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission. Therefore, for an omission such as a failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice.

Illumina does not present particularized facts demonstrating any "intent" or "scheme" to defraud the patent office.  Rather, Illumina's allegations are simply "mere failure[s] to cite . . . reference[s] to the PTO" and attempts to bring in antitrust claims by their bootstraps by referring to this conduct as "fraud."  These allegations fall far short of *Walker Process* fraud, and thus Illumina's antitrust claims would be futile.

C.    Illumina Fails To Plead The Rudiments Of Any Anticompetitive Conduct.

Furthermore, Illumina alleges

**REDACTED**

To plead an antitrust violation based on any of these acts, a party must provide some basis for its claims.  Illumina, however, has not provided even the most rudimentary factual support.  For example, under *Brooke Group Ltd v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993),

**REDACTED**

11.

**REDACTED**

Similarly, as the Supreme Court held in *U.S. Steel Corp. v. Fortner Enters*, 394 U.S. 495, 498-99 (1969), to state a claim for

**REDACTED**

Moreover, Illumina's allegations            **REDACTED**

are so bare as to render it impossible to discern in what manner these practices are purportedly anticompetitive.

**REDACTED**

Much like price reductions, these practices seem inherently "procompetitive," and thus facts must be alleged to support allegations that they represent anticompetitive conduct. "Cutting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).

II.    ALLOWING ILLUMINA'S ANTITRUST
       COUNTERCLAIMS TO PROCEED WOULD BE
       PREJUDICIAL TO AFFYMETRIX.

"The issue of prejudice requires that [the Court] focus on the hardship to the defendants if the amendment were permitted." *Cureton v. National Collegiate Athletic Association*, 252 F.3d 267, 273 (3d Cir. 2001). A court must "[s]pecifically consider[] whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.* Clearly, here, the addition of a series of complex antitrust claims (as well as allegations of fraud on the Patent Office) would result in extensive discovery, cost, and preparation to defend against Illumina's newly asserted theories.

Illumina's claims under section 2 of the Sherman Act open up a series of complex issues necessitating massive expenditures for fact discovery and highly sophisticated expert analysis pertaining to market definition, indices of market power, and other issues. *See Akzona v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 236 (D. Del. 1984) ("Major antitrust litigation is often enormously time-consuming.") Moreover, these issues bear no relation to the issues of infringement and validity currently before the court. That Illumina alleges scant "facts" in support of these claims merely exacerbates the degree of prejudice to Affymetrix, requiring extensive discovery and preparation simply to determine the precise alleged misconduct.

III.   ILLUMINA'S CLAIMS THAT THE PATENTS IN SUIT
       ARE UNENFORCEABLE SHOULD NOT BE
       ALLOWED.

Claims of inequitable conduct are subject to the heightened pleading requirements of Rule 9(b), which requires that the elements of any alleged fraud be

pleaded with specificity.  *See EMC Corp. v. Storage Tech Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (Farnan, J.).  In *EMC*, 921 F. Supp. at 1263, this Court held that to survive a motion to dismiss, a party challenging the enforceability of a patent must identify by name particular prior art alleged to have been intentionally withheld from the examiner by the inventor during prosecution.  Here, however, although Illumina alleges that each patent is invalid due to the withholding of purported "prior art" with an intent to deceive, Illumina names but two identifiable pieces of what it calls "prior art" – the '126 application (as alleged prior art to the '531 patent) and the '551 patent (as alleged prior art to the '365 patent)  With respect to the four remaining patents, Illumina completely fails to name specific prior art.

        In the remaining allegations, Illumina refers to uncited purported "prior art work" of various individuals or offers vague and open-ended language suggesting that there are unidentified prior art references that Illumina intends to rely upon.  For instance, Illumina alleges that the '716 patent is unenforceable because Affymetrix

**REDACTED**

        While this allegation may provide an illusion of specificity       **REDACTED**       leaves Affymetrix simply guessing as to the precise "prior art" underlying Illumina's claims.

        Similarly, Illumina claims that

**REDACTED**

**REDACTED**

These allegations cannot satisfy Rule 9(b).  *See EMC*, 921 F. Supp. 1263 (dismissing inequitable conduct allegations where accused infringer failed to specifically identify the allegedly withheld prior art).

Either Illumina is unable to identify the other alleged prior art references or specific documents from other litigations, or Illumina is withholding their identity from Affymetrix and the Court.  In either case, Illumina has not complied with Rule 9(b).  Like its antitrust claims, Illumina's accusations of inequitable conduct are so thin that they would not survive a motion to dismiss.  As a result, its request to add them to its counterclaims for declaratory judgment – especially at this late date in the proceedings – should be denied.

Moreover, while Illumina suggests that it could not have brought its inequitable conduct allegations earlier in the litigation, it does not explain why.  *Id.* at 5-6.  Illumina has been aware of the purportedly undisclosed (and unnamed) "prior art" for months.  It has presented the prior art alluded to in its complaint in its responses to interrogatories in March and October 2005.  All of the third parties referenced in the proposed amended complaint were known to Illumina no later than October 2005, when it listed them on its preliminary trial witness list.  Illumina has been aware of Affymetrix's prior litigation since before the onset of this case.  Illumina has had Dr. Lipshutz' testimony since November, and Illumina alleges that it is germane to the

prosecution of only a single patent. Only now does Illumina seek to add untold amounts of entirely unspecified prior art to its claims and plead inequitable conduct and fraud with regard to *each of the six patents-in-suit*, however.

Illumina's delay, coupled with undefined references to unnamed "prior art," render any amendment highly prejudicial to Affymetrix. Affymetrix would be forced to expend further time and resources to counteract Illumina's lack of candor and determine even the basic identity of the prior art to which Illumina alludes. Furthermore, Illumina charges not only inequitable conduct, but fraud, and from this fraud, violations of the antitrust laws. These severe allegations merit extensive discovery and preparation, the retention of numerous additional experts, and great expense – all to rebut exceedingly vague counterclaims tossed in at this late juncture. Not only would Illumina's vague and improperly pleaded allegations be futile, but the burden of holding Illumina to its duty to plead with specificity would fall largely on Affymetrix.[2]

---

[2] Should the court eventually decide to allow Illumina to add these claims, Affymetrix would request a hearing at a subsequent date to discuss scheduling of additional discovery directed to Illumina's antitrust claims and inequitable conduct allegations.

## CONCLUSION

For the foregoing reasons, Illumina's motion for leave to file an amended answer should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Derek Fahnestock (#4705)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  Attorneys for Plaintiff Affymetrix, Inc.

OF COUNSEL:

Michael J. Malecek
Daniel R. Reed
George C. Yu
Andrea L. Gross
AFFYMETRIX, INC.
6550 Vallejo Street, Suite 100
Emeryville, CA 94608
(510) 428-8500

Original Filing Date: January 23, 2006

Redacted Filing Date: February 3, 2006

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2006, I electronically filed the foregoing

document using CM/ECF which will send notification of such filing(s) to the following:

> Richard K. Herrmann
> Morris, James, Hitchens & Williams LLP

I also certify that copies were caused to be served on January 23, 2006 upon the

following in the manner indicated:

> <u>BY EMAIL AND HAND</u>
>
> Richard K. Herrmann
> Morris, James, Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> P.O. Box 2306
> Wilmington, DE  19899-2306
>
> <u>BY EMAIL AND FACSIMILE</u>
>
> Marcus E. Sernel
> Kirkland & Ellis LLP
> 200 East Randolph Drive
> Chicago, IL  60601

> */s/ Maryellen Noreika*
> Maryellen Noreika (#4601)
> 1201 N. Market Street
> P. O. Box 1347
> Wilmington, DE  19899-1347
> (302) 658-9200
> mnoreika@mnat.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2006, I electronically filed the foregoing document using CM/ECF which will send notification of such filing(s) to the following:

Richard K. Herrmann
Morris, James, Hitchens & Williams LLP

I also certify that copies were caused to be served on February 3, 2006 upon the following in the manner indicated:

<u>BY EMAIL AND HAND</u>

Richard K. Herrmann
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306

<u>BY EMAIL AND FACSIMILE</u>

Marcus E. Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

*/s/ Melissa Stone Myers*
Melissa Stone Myers (#3985)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mmyers@mnat.com