# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1751
www.morrisjames.com

Richard K. Herrmann
(302) 888-6816
rherrmann@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

Originally filed: February 13, 2006
Public version filed: February 22, 2006

**VIA ELECTRONIC FILING**
The Honorable Joseph J. Farnan, Jr.
USDC for the District of Delaware
844 King Street
Wilmington, DE 19801

**REDACTED PUBLIC VERSION**

Re:    *Affymetrix, Inc. v. Illumina, Inc.,* D. Del., C.A. No. 04-901-JJF

Your Honor:

Illumina submits the following summary of the issues it would like to raise to the Court's attention at the upcoming hearing on February 15, 2006.

1. Affymetrix' Refusal to Produce the Invention Disclosure of Robert S. Foote that Was Distributed to Third Parties.

Affymetrix continues to withhold documents as privileged that both testimony and other documents establish were shared with third parties in an attempt to drum up commercial interest in the underlying technology. Although Affymetrix has previously told the Court that it would "work with Illumina to resolve the issue," it has persistently ignored Illumina's repeated requests for production despite overwhelming evidence that whatever privilege attached to the documents has been waived.

# REDACTED

---

[1] Affymetrix claims to have succeeded to the privilege by virtue of the later assignment of Dr. Foote's patent rights to Affymetrix. While Illumina may take issue with whether Affymetrix can rightfully bury this prior art by way of buying up the rights to it and claiming privilege over the prior invention documents, the Court need not resolve this issue at this time given the clear disclosure of the document to a third party.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Hon. Joseph J. Farnan, Jr.
February 13, 2006
Page 2

"[U]nder traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." *Westinghouse Elec. Corp. v. Republic of Phillipines*, 951 F.2d 1414, 1427 (3rd Cir. 1991). The letter from David Houghton to Mark Gessler enclosing the invention disclosure form logged as entry 1848 was clearly a disclosure to a third party, thus waiving any attorney-client privilege that existed with respect to that document. *Westinghouse Elec. Corp.*, 951 F.2d at 1427; *Rockwell Int'l v. U.S.*, 897 F.2d 1255, 1265 (3rd Cir. 1990)("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."). While Affymetrix has cited a couple of opinions reflecting the minority view that privilege can be maintained in the face of certain disclosures to third parties, these cases are in any event distinguishable because in those cases it was an attorney's legal analysis that was being shared with an interested third party, whereas in this case it is merely an inventor's description of his invention that is being shared for commercial purposes with a non-lawyer from a third party.

Though at least one communication attaching the invention disclosures was sent under a typical confidentiality agreement (see Ex. C), there is no mention of any common legal interest in this agreement or anywhere else. Whereas parties in a negotiation might have similar business interests, their legal interests are directly opposed rendering the "common interest" exception inapplicable in this situation. *See, e.g., U.S. v. BDO Seidman, LLP*, 368 F.Supp. 2d 858, 861 (N.D. Ill.) ("Furthermore, the asserted common interest must be legal and not merely commercial or financial."); *Oak Indus. v. Zenith Indus.*, 1988 WL 79614 at *4 (N.D. Ill. July 27, 1988). For these reasons, Illumina seeks the immediate production of the two invention disclosure forms and any related documents.

2. Affymetrix' Outright Refusal to Respond to Interrogatories

Affymetrix has refused to provide any substantive response to several interrogatories because it contends that these interrogatories only seek information related to Illumina's First Amended Answer and Counterclaims. For example, in response to Illumina's Interrogatory No. 21 seeking information relating to market share, Affymetrix only provides objections and the following response:

> Subject to and without waiving these objections and its General
> Objections, Affymetrix will supplement its response as appropriate
> or necessary following the Court's ruling on Illumina's Motion for
> Leave to File an Amended Answer and Counterclaims.

As an initial matter, Affymetrix' contention that this interrogatory relates only to Illumina's amended counterclaims is flat wrong -- the interrogatory also clearly relates to Illumina's unfair competition counterclaim, which has been pled from the beginning of the case, and also would be relevant to any claim for lost profits that Affymetrix might assert. But beyond this, Affymetrix is abusing the discovery process by refusing to answer discovery that relates to

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Hon. Joseph J. Farnan, Jr.
February 13, 2006
Page 3

timely-pled counterclaims that contribute to the core of Illumina's case.  Indeed, *Affymetrix* has been asking Illumina's witnesses questions in depositions relating to the same subject matters (e.g. market definition and market share) that it has refused to answer in Illumina's interrogatories.  This attempt to impose a double standard and usurp the Court's role in establishing a deadline for amendments must be rejected, and Affymetrix must be compelled to respond to all outstanding interrogatories immediately.

　　3.　Affymetrix' Continuing Failure to Produce Key Prior Art Documents

　　　　At the last hearing with the Court, Illumina raised an issue with Affymetrix' utter failure to produce any documents relating to various sources of prior art work.  Affymetrix' counsel represented at the hearing that all documents relating to these persons had been produced, but that statement has proven false.  Affymetrix produced the week after the hearing approximately *50,000* pages of documents, a substantial number of which related to the persons and issues discussed at the last hearing.  Despite this large production, made after or on the eve of many important depositions, there remain documents within Affymetrix' possession that have not been produced.

　　　　Illumina served its third set of document requests on December 7, 2005, specifically requesting documents relating to, *inter alia*, the prior art work of Dr. Andrei Mirzabekov, Dr. Yuri Lysov, the Engelhardt Institute of Molecular Biology, Dr. Alexendar Chetverin, Dr. Fred Kramer, the Public Health Research Institute, Dr. Radoje Drmanac, Dr. Radomir Crkvenjakov, Dr. Robert Foote, Dr. Richard Sachleben, and the University of Tennessee.  These persons or entities represent some of the key sources of prior art in this case, and Illumina requested documents from Affymetrix relating to their knowledge of and relationships with them.  Illumina sent a cover letter along with these requests noting that its previous document requests (served twelve months ago) had sought this information -- *e.g.*, Document Request No. 27 sought all documents and things relating to the invalidity or unenforceability of the Affymetrix Patents -- but that it was serving these narrowly-tailored requests to leave no doubt that Illumina wanted and requested these documents.

　　　　While Affymetrix has now finally produced some of its documents relating to these requests, it remains clear that Affymetrix is still withholding other related documents from production.

# REDACTED

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Illumina asks the Court to compel, one last time (before moving for sanctions), Affymetrix to produce any other remaining documents relating to these requests.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Hon. Joseph J. Farnan, Jr.
February 13, 2006
Page 4

### 4. Affymetrix' Production of Financial Documents is Woefully Incomplete

While Affymetrix has spent much time complaining to the Court about Illumina's alleged failure to produce extraneous financial documents, Affymetrix still has not produced many basic financial documents to justify any claims for damages. Despite efforts to ensure compliance without the Court's intervention, Affymetrix' production of "live" version financial and damages data remains deficient. Illumina attaches, as Exhibits D to F, the following: (1) Illumina's December 30, 2005 request for "live" version financial and damages information from Affymetrix, and (2) Illumina's February 1, 2006 and February 10, 2006 letters which detail the deficiencies remaining in Affymetrix's "live" version production. To assist the Court, Illumina identifies below certain of the categories of "live" information/data that Affymetrix has yet to produce. Without question, this information/data that Illumina seeks, both below and in the letters attached as Exhibits D to F, are relevant to the damages theories put forth by Affymetrix and to Illumina's allegations of unfair competition:

**Sales/revenue information by product for 2000 and 2001**

Although this information predates Illumina's sales, this information relating to Affymetrix's sales is necessary to understand what impact, if any, the introduction of Illumina's products in the relevant market had on Affymetrix.

**Costs of goods sold and gross margin information by product for 2000 to present**

While demanding extremely specific and detailed financial information from Illumina, Affymetrix has, to date, only produced cost information for broad categories of products (e.g., "arrays" and "instruments"). To analyze Affymetrix' lost profits allegation, Illumina must have cost information on a product level to ensure that the costs are attributed to the relevant products.

**Financial statements contained within Affymetrix "Internal Finance Packages" for each month from 2000 to present.**

Affymetrix has recently produced in hard copy relevant financial information in monthly "Internal Finance Packages." These spreadsheets include information that has been requested in live version format. To limit the burden and cost to transpose this information to an electronic spreadsheet so that its damages expert can analyze it, Illumina has requested that the financial information contained within these "Internal Finance Packages" be provided to Illumina in "live" format. Affymetrix has not yet provided this information.

**Costs of goods sold and gross margin information by product and transaction for each Affymetrix sale from 2002 to present.**

Illumina requests this information so that it may analyze those specific transactions where Affymetrix has either provided products at no charge or provided pricing

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

The Hon. Joseph J. Farnan, Jr.
February 13, 2006
Page 5

discounts.  This information is relevant to both Affymetrix' claim for lost profits damages and Illumina's long-ago-pled claim that Affymetrix has engaged in unfair business practices under Cal. Bus. Code section 17200 and common law.  Indeed, Affymetrix requested this same information from Illumina, which Illumina has provided to Affymetrix.  *See* IAFP00641478. Illumina thus requests immediate production of all of this information in "live" format as ordered by the Court.

  5.  Licensing-Related Documents/Information

         Affymetrix has yet to produce all relevant information/documents regarding licenses for intellectual property to which Affymetrix is a party, and which may have relevance to this litigation.  For example, Affymetrix has yet to produce relevant files whose existence was testified to by Affymetrix's Director of Licensing and which contain relevant information regarding the negotiations for each of Affymetrix's licenses.  This information is clearly relevant to the analysis of a reasonable royalty rate for this case.  Indeed, to highlight the deficiencies of Affymetrix' production to date regarding licensing-related documents, Affymetrix did not produce several potentially relevant licenses until two days *after* Affymetrix's Director of Licensing testified on behalf of Affymetrix as a Rule 30(b)(6) witness regarding several licensing related topics, despite assurances from Affymetrix' counsel that all relevant material had been produced.[2] Moreover, as identified in its letters to Affymetrix for production of "live" version financial information, Affymetrix has yet to produce complete reports regarding the payments that Affymetrix has made, and/or received, for licenses related to intellectual property.

  6.  Affymetrix Has Not Produced Documents Relating to Capacity Problems

         Affymetrix' production to date regarding its ability to meet customer demand for its products is deficient.  To the extent that Affymetrix intends to seek lost profits damages from Illumina, Affymetrix capacity to manufacture and sell its products to meet customer demand is highly relevant information.  Affymetrix clearly has documents relating to this issue -- in recent investor conference calls, Affymetrix has publicly announced that manufacturing yield issues have caused Affymetrix to fall short of demand for its products.  Yet in the apparent hope of propping up a lost profits claim where it has no basis for one, Affymetrix has withheld documents relating to this manufacturing yield issue. Accordingly, Affymetrix must also supplement its production to ensure that all documents relating to the above-noted manufacturing yield issue, and any other manufacturing yield or capacity issue that has impacted the ability to meet customer demand for Affymetrix' products, are produced.

---

[2] Because these licenses were produced after the deposition of Affymetrix's 30(b)(6) witness regarding negotiation of licenses, Illumina is attempting to work with Affymetrix to arrange for additional deposition time to address these issues if and when all relevant files have been produced.

The Hon. Joseph J. Farnan, Jr.
February 13, 2006
Page 6

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

7. Affymetrix Has Not Produced Sufficient Cost of Goods Sold Information To Make A
Claim For Lost Profits

Affymetrix' document production relating to costs associated with its products is
deficient. For instance, Affymetrix refuses to produce any internal documents that relate to how
Affymetrix calculates revenue, gross margin and net profit (including the ability to identify
labor, material, variances, selling and administrative costs, and the components that make up
those costs). Instead, Affymetrix refers Illumina to Affymetrix' SEC filings as responsive
material to this document production, but clearly the information contained in these SEC filings
does not provide the necessary detail to understand how Affymetrix calculates its revenue, gross
margin and profit information.

8. The Markman Hearing Schedule

Illumina is in receipt of the Court's February 9 Order resetting the Markman hearing to
one of two dates at the convenience of the parties. The March 29 option is not convenient for
Illumina's counsel. Counsel is optimistic that we can reschedule the hearing to April 19, but one
open issue (a possible appellate argument) remains. We expect to learn very soon whether that
issue poses a conflict. If not, we propose to go forward with the Markman hearing on April 19.

Respectfully,

Richard K. Herrmann, I.D. No. 405
rherrmann@morrisjames.com

cc: Dr. Peter T. Dalleo, Clerk of the Court (via electronic filing)
    MaryEllen Noreika, Esq. (via electronic filing)
    Michael J. Malecek, Esq. (via email)

# EXHIBIT   A

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# EXHIBIT   B

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   C

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT   D

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Paul D. Collier
To Call Writer Directly:
312 861-2471
pcollier@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

December 30, 2005

**BY FACSIMILE**

Daniel R. Reed, Esq.
Affymetrix, Inc.
6550 Vallejo Street
Suite 100
Emeryville, CA 94608

Re: *Affymetrix, Inc. v. Illumina, Inc.*, Civil Action No. 04-901-JJF

Dear Dan:

Per the recent ordered entered by the Court, Illumina requests that the following damages-related reports be generated from Affymetrix's existing databases:

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present that provides unit and dollar sales by month for every Affymetrix product, system or service with which Affymetrix contends Illumina competes or interferes with Affymetrix's sales ("the relevant products"). To the extent the information is available, this file should include product line, product model, customer and sale date.

A live, electronic file in SAS, Access, or Excel for the period beginning January 2000 to the present that provides monthly and annual forecasts, budgets, or long-term financial plans/projections for the relevant products.

A live, electronic file in SAS, Access or Excel beginning January 2000 to the present providing in monthly and annual periods the manufacturing costs and operating expenses associated with the manufacture and sales of the relevant products, including total costs and expenses, costs and expenses by product line, and costs and expenses by product.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present providing, in detail, direct and indirect costs associated with the production, distribution and sale of the relevant products, including material, direct labor, manufacturing overhead, selling and general and administrative expenses and variances. To the extent that this information is available, the file should provide the allocation of these costs to the relevant products.

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

Daniel R. Reed, Esq.
December 30, 2005
Page 2

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present reflecting Affymetrix's operations statements and balance sheets.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present providing data regarding orders, contracts, invoices and other recorded unit sales, gross sales, returns, allowances, discounts and net sales for the relevant products.  To the extent available, this information should be provided on a monthly and annual basis.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present identifying all accounts associated with the relevant products.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present that provides manufacturing variances on a monthly basis for the relevant products.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present identifying on a monthly basis, Affymetrix's budgeted costs of goods sold, budgeted net sales and budgeted gross margin for each relevant product

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present that provides all market data and analyses relating to competition, market segments, market share, pricing and sales of the relevant products  in the relevant markets.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present that provides data regarding working capital necessary to manufacture and sell the relevant products.

A live, electronic file in SAS, Access or Excel for the period beginning January 2000 to the present that provides interest rates and terms of short-term and long-term loans and borrowing during the period specified.

A live, electronic file in SAS, Access, or Excel for the period beginning January 2000 to the present that provides monthly unit output at each of Affymetrix's production facilities (by facility, by product line, by product model, by date, or any other relevant criteria).

A live, electronic file in SAS, Access, or Excel for the period beginning January 2000 to the present that provides monthly data reflecting the capacity to produce the relevant products at each of Affymetrix's production/fabrication facilities (by facility, by product line, by product model, by date, or any other relevant criteria).

## KIRKLAND & ELLIS LLP

Daniel R. Reed, Esq.
December 30, 2005
Page 3


We have reviewed these requests with Illumina's damages expert prior to submitting this request, and have determined that these reports are reasonable and necessary to his damages analysis.


Very truly yours,

Paul D. Collier

PDC

# EXHIBIT  E

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Paul D. Collier
To Call Writer Directly:
312 861-2471
pcollier@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

February 1, 2006

**BY FACSIMILE**

Daniel R. Reed, Esq.
Affymetrix, Inc.
6550 Vallejo Street
Suite 100
Emeryville, CA 94608

Re: *Affymetrix, Inc. v. Illumina, Inc.*, Civil Action No. 04-901-JJF

Dear Dan:

I write to address several outstanding issues regarding Affymetrix's discovery, including (1) deficiencies in Affymetrix's document and live data production, (2) Affymetrix's failure to respond fully and completely to Ms. Gondek's January 16, 2006 letter regarding various discovery issues, and (3) to object to Affymetrix's production of key documents late in the discovery process. With respect to the third point above, Affymetrix's recent flurry of production (producing more than one quarter of its production, more than 56,000 pages of documents, in the last two weeks) late in the discovery process, in the middle of a rigorous deposition schedule, and in many cases days after Illumina has taken the depositions for which those documents would be relevant, has severely prejudiced Illumina's ability to take full and complete discovery in this case. Indeed, even with this voluminous and belated production of relevant material, Affymetrix still has not yet met its discovery obligations for at least the reasons discussed below, and those deficiencies must be rectified immediately to avoid any further prejudice to Illumina and to avoid any impact to the case schedule.

### Live Damages Documents

Pursuant to Court order, on December 30, 2005, Illumina requested live, electronic data relating to Affymetrix's relevant products (those products, systems or services with which Affymetrix contends Illumina competes or interferes with Affymetrix's sales.) Affymetrix's production of live data is deficient.

*First,* generally, the produced data does not cover the relevant and requested time period. Affymetrix's production fails entirely to address the period from 2000 - 2001. *Second,* data has

**KIRKLAND & ELLIS LLP**

Daniel R. Reed, Esq.
February 1, 2006
Page 2

not been produced, as requested, specific to and identifiable for each relevant product.  This data
is necessary for Illumina to evaluate Affymetrix's claims of lost profits for such products.

More specific deficiencies are identified below.  To the extent that Affymetrix claims that
such data is not available to it, please specifically so state:

1. Affymetrix has not produced live data reflecting monthly and annual forecasted
   revenue *in units and by relevant product*.   Instead, Affymetrix has produced
   forecasts only by dollar and generic product type.

2. Affymetrix has not produced live data addressing overhead costs.

3. Affymetrix has not produced live costs of goods sold (COGS) data or gross
   margin data *by relevant product and transaction*.

4. Affymetrix has not produced live data reflecting direct and/or indirect costs.

5. Affymetrix has not produced live data reflecting internal operations, profit and
   loss by product, or internal income statements.  Such information could take the
   form of electronic versions of Affymetrix's Internal Financial Packages.

6. Affymetrix has not produced live data reflecting allowances, discounts, and
   returns for each relevant product.  To the extent that Affymetrix believes that such
   information has been provided, please identify such information and provide an
   overview of its relation to this request.

7. Affymetrix has not produced live manufacturing variance data *by relevant
   product*.

8. Affymetrix has not produced live forecasted costs of goods sold, budgeted net
   sales and budgeted gross margins for each relevant product.

9. Affymetrix has not produced electronic versions of market share data, competing
   sales, and other competitive intelligence from third party sources or internal
   Affymetrix documents and/or presentations.

10. Affymetrix has not produced live data detailing loan repayment schedules and
    terms.

**KIRKLAND & ELLIS LLP**

Daniel R. Reed, Esq.
February 1, 2006
Page 3

11.   Affymetrix has failed to produce live data reflecting *monthly unit output at each of its production facilities for each relevant product*. Affymetrix has produced only monthly instrument output information for its Bedford facility and quarterly output data for "wafer" production. Affymetrix has not produced live data reflecting the *capacity to produce each relevant product at each production facility*. Furthermore, Affymetrix has not produced data supporting its forecasted capacity to produce the products.

12.   Affymetrix has not produced live data reflecting market share.

We demand that Affymetrix cure the deficiencies identified above, and produce immediately electronic, "live" versions of the financial and sales data as Illumina specifically requested. If you do not cure these deficiencies immediately, we will consider the parties at an impasse on this issue.

**Documents Identified by Affymetrix Deponents and Not Produced**

Illumina demands the immediate production of documents cited in Affymetrix's witnesses depositions, but not produced to Illumina. For example, in Gregory Yap's deposition the following documents were identified by Mr. Yap but have not been produced by Affymetrix:

**REDACTED**

---

[1] Illumina previously raised Affymetrix's failure to produce commercial monthly reports in both Mr. Raimond's deposition and Ms. Gondek's January 16, 2006 letter, yet Affymetrix has yet to provide any response to this issue.

# KIRKLAND & ELLIS LLP

Daniel R. Reed, Esq.
February 1, 2006
Page 4

Similarly, in Alan Sherr's deposition, Mr. Sherr identified the following documents which have not been produced:

**REDACTED**

## Deficiencies Previously Identified by Illumina

In her January 16, 2005 letter, Ms. Gondek identified numerous deficiencies with Affymetrix's discovery to date. Your January 30, 2006 letter purports to respond to certain of those deficiencies, but unfortunately falls short for the reasons discussed below.

### Documents Dated After March 2005

With respect to your contention that Affymetrix has produced documents that were generated after March, 2005, this does not address whether Affymetrix has met its obligation to supplement under the Federal Rules of Evidence. Indeed, the voluminous Bates ranges that you

KIRKLAND & ELLIS LLP

Daniel R. Reed, Esq.
February 1, 2006
Page 5

cited in your letter do little to address whether Affymetrix has met its duty to supplement. For example, in the first Bates range that you cite (AVI_089186 - AVI_089305), we could only find one example of a document that potentially was dated after March 2005 -- multiple drafts of the same presentation that was scheduled to be given in May, 2005. Clearly, Illumina has no way of knowing the production date of these drafts. Furthermore, the second bates range that you cite (AVI_118360 - AVI_145220) incorporates nearly 30,000 pages, almost entirely dated prior to March 2005. Documents within that range that are dated after March, 2005 are apparently either (1) public documents, or (2) documents that Affymetrix produced after receiving Ms. Gondek's letter and only in the last two weeks. As to your contention that "Affymetrix's production is in accord with the Federal Rules of Civil Procedure", the production of published articles and SEC filings does not meet your obligations to supplement production in this case.

_Document Request No. 4_

        With respect to Document Request No. 4, your contention that the costs associated with design and development of Affymetrix products are irrelevant is without merit. If Affymetrix intends to claim lost profits, it is the profits on sales of Affymetrix' products, and not Illumina's profits at issue. Clearly, to the extent that Affymetrix intends to pursue lost profits damages, Illumina is entitled to discovery regarding _all costs_ for Affymetrix's products, including costs associated with the design and development of such products. By your refusal to produce documents relating to these costs, Illumina understands that Affymetrix does not intend to pursue lost profits. If this understanding is incorrect, Affymetrix must immediately produce all documents and things relating to the costs of design and development of the relevant products.

_Document Request Nos. 5, 10, 56-58, 62 and 64_

        As to your response regarding Document Requests Nos. 5, 10, 56-58, 62 and 64, Affymetrix points to nine documents (AVI_196152 - AVI_196160) as a basis for stating that it has met its discovery obligations for these requests. This, however, is not the case. As an initial matter, we note that all of these documents were produced after you received Ms. Gondek's January 16, 2006 letter. Furthermore, these 9 documents were produced along with more than 50,000 pages of documents (a production that increased Affymetrix's production to date by more than 33%) just days prior to Illumina's deposition of Mr. Yap, Affymetrix's 30(b)(6) deponent on the topics of lost profits, price erosion, market share, sales and other damages-related topics. We, however, will address in a separate letter our position regarding the need for Affymetrix to produce a witness to testify regarding the Rule 30(b)(6) topics on which Mr. Yap was identified.

        Even with this prejudicial and belated production, Affymetrix's document production regarding damages remains woefully inadequate for at least the reasons noted above in the "live

**KIRKLAND & ELLIS LLP**

Daniel R. Reed, Esq.
February 1, 2006
Page 6

version" section of this letter. Moreover, these nine documents that you cite do not meet Affymetrix's discovery obligations specifically relating to Document Request Nos. 5, 10, 56, 58, and 64, and therefore we demand that Affymetrix produce documents, including "live-version" data, that meet its discovery obligations under these specific requests.

*Document Request No. 61*

In response to Illumina's contention that Affymetrix has yet to produce documents responsive to Document Request No. 61, which seeks "[d]ocuments **sufficient to show Affymetrix's methodology for calculating** revenue and gross and net profit before taxes (including the ability to identify labor, material, variances, selling and administrative costs, **and the components that make up those costs,**" your January 30, 2006 letter directs Illumina to its SEC filings as responsive production. These SEC filings, however, do not meet Affymetrix's discovery obligations with respect to this request. Indeed, the information contained in these SEC filings does not provide the requested detail regarding costs including but not limited detailing the components that make up selling, general and administrative expenses. Illumina is entitled to this information and demands its immediate production.

*Privilege Log Issues*

In the January 30, 2005 letter, Affymetrix attempts to refute Illumina's objections to entries citing grouped documents on its privilege log by stating:

> The 'grouped' documents to which you refer in your letter are Affymetrix's internal, privileged patent files. These files include privileged communications, **public documents,** or documents that have already been produced to Illumina (e.g.., prosecution history). They were grouped together on the log because they exist in the Affymetrix document management system as a single large document.

We are at a loss to understand how this explanation justifies grouping all these separate documents from Affymetrix's patent files under one privilege log entry. Simply put, Affymetrix has an obligation to log each individual document for which it claims privilege so that Illumina, and to the extent necessary the Court, can assess whether a legitimate basis for privilege exists. If Affymetrix wishes to maintain privilege in any of the individual documents contained within these patent files, it must log each individual document within these files as a separate privilege log entry. Indeed, you even admit that these privilege log entries are deficient by referring to them as **"largely proper."**

## KIRKLAND & ELLIS LLP

Daniel R. Reed, Esq.
February 1, 2006
Page 7

Furthermore, regarding your representation that Affymetrix will produce in unredacted form those documents that Illumina identified in Ms. Gondek's January 16, 2005 letter as containing redactions and not logged on the privilege log, we demand that you produce these unredacted documents immediately. If you are unable to produce these unredacted documents by the close of business Friday, please let us know so that we can raise the issue before the court.

### Belated Production of Licenses

It has come to our attention that Affymetrix has only recently produced license agreements that may be relevant to this litigation. Specifically, in its January 26, 2006 document production, Affymetrix produced at least the following license agreements that it had previously withheld:

## REDACTED

The timing of this belated production is especially troubling because it came *two days after* Illumina deposed Alan Sherr, Affymetrix's Director of Licensing, who Affymetrix had identified as its corporate representative regarding certain Rule 30(b)(6) topics that relate to licensing. Needless to say, Mr. Sherr could not testify fully or completely regarding these licenses without seeing them, as he stated on the record, and Illumina could not provide him those documents because Affymetrix had withheld them from production. Accordingly, we demand that Affymetrix provide dates on which Illumina can depose Mr. Sherr, or another Affymetrix representative, regarding those licenses, and any related materials to such licenses, that Affymetrix withheld -- or is presently withholding -- after Mr. Sherr's deposition on January 24, 2006. If Affymetrix does not produce a witness to testify regarding these licenses, we will understand that Affymetrix does not intend to rely on these licenses to support its damages theory.

Furthermore, even with its belated production, Affymetrix's document production is still deficient because it has not produced the files that relate to the licenses that Affymetrix has entered into for intellectual property, as Mr. Sherr identified exist during his deposition. The material contained within these files is clearly relevant because, according to Mr. Sherr's

# KIRKLAND & ELLIS LLP

Daniel R. Reed, Esq.
February 1, 2006
Page 8

testimony, they contain correspondence regarding the negotiations for the licenses and draft agreements. Accordingly, we demand that Affymetrix produce the materials contained within such files immediately.

### Alan Dance Deposition

I am also responding to your January 27 letter regarding the deposition of Alan Dance. Contrary to your misrepresentation, we have not canceled Mr. Dance's deposition, but have asked for his availability to be deposed until later in the discovery period, preferably the week of February 20, 2006. Accordingly, please advise regarding Mr. Dance's availability in that time period. If Affymetrix is refusing to present Mr. Dance for deposition during that time period, please inform us immediately so that we can raise this issue with the Court. Indeed, we are surprised by Affymetrix's inflexibility on this issue, especially where we agreed to re-schedule Dr. Foote's deposition based on Affymetrix's counsel's travel difficulties in attending the deposition. We are certain that you will reconsider your untenable position, and provide dates for Mr. Dance's deposition immediately.

### Outstanding Rule 30(b)(6) Deposition Topics

Although it has represented that it will produce a witness on its behalf, Affymetrix has yet to provide Illumina a corporate representative to testify regarding Topic Nos. 3, 4, 5, 6 and 9 of Illumina's Third Rule 30(b)(6) Notice of Deposition. Please identify a witness immediately and available dates for such witness to be deposed.

Very truly yours,

Paul D. Collier

PDC

# EXHIBIT  F

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Paul Collier
To Call Writer Directly:
312 861-2471
pcollier@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

February 10, 2006

**VIA ELECTRONIC MAIL**

Andrea Gross, Esq.
Affymetrix, Inc.
6550 Vallejo Street
Suite 100
Emeryville, CA 94608

Re:    *Affymetrix, Inc. v. Illumina, Inc.*, Civil Action No. 04-901-JJF

Dear Andrea,

I write to address serious deficiencies that remain in Affymetrix's document production despite Affymetrix's recent, supplemental productions. As you are aware, we are still waiting for a full response to our December 30, 2006 request for live versions of requested damages data and our February 1, 2006 letter regarding Affymetrix's outstanding deficiencies in that regard. These deficiencies take on heightened urgency with the upcoming Rule 30(b)(6) deposition scheduled to occur on February 17, 2006. Moreover, I raise additional discovery deficiencies in this letter.

## Live Damages Data

First, Affymetrix's Rule 30(b)(6) witness has been noticed to testify regarding information contained in the financial and sales data that has been, or will be, provided to Illumina. (Topic No. 1 of Illumina's Fifth Rule 30(b)(6) Notice.) Clearly, deficiencies in this production must be cured before this witness is deposed. As was most recently detailed in our February 1, 2006 letter, Affymetrix's production of "live" version data remains deficient. Each of these deficiencies has been reviewed with our damages expert who has confirmed that this information is necessary for his analysis. Without reiterating our February 1, 2006 request, certain deficiencies which apply broadly to Affymetrix's live data production are emphasized below:

1.    Affymetrix still has not provided sales information for *2000 and 2001*.

# KIRKLAND & ELLIS LLP

Andrea Gross, Esq.
February 10, 2006
Page 2

2.        Costs of Goods Sold and Gross Margin information provided by Affymetrix is inadequate in that it addresses only broad categories (*e.g.*, "arrays," "instruments") as opposed to providing costs and gross margin information *by relevant product and transaction.*

Affymetrix has yet to produce documents that provide an analysis of the fixed and/or variable nature of Affymetrix's expense categories.  We request that Affymetrix promptly produce such documents.  To the extent that Affymetrix has produced such documents, we request that Affymetrix identify the Bates range for such documents.

We further request that Affymetrix produce in a "live" version format the financial statements contained within Affymetrix's monthly "Internal Finance Packages" for each month from 2000 to the present.  We also repeat our request that Affymetrix produce all information regarding its historic cost of borrowing, which would include any and all loan tables and repayment schedules.

We also request that Affymetrix produce documents that allow its financial and/or sales staff to cross-reference an Affymetrix part number with its part description.

To the extent that Affymetrix intends to pursue a lost profits theory, this missing sales and costs information, in addition to the information detailed in our February 1, 2006 letter, is necessary to analyze Affymetrix's claim for patent damages and crucial to Illumina's ability to fully depose Affymetrix's Rule 30(b)(6) witness on this topic. We, therefore, renew our request that Affymetrix promptly produce the requested "live" version data or risk the consequences of failing to produce this information.

## Documents Relating to Capacity to Manufacture

Affymetrix's Rule 30(b)(6) witness has also been noticed to testify regarding Affymetrix's capacity to manufacture, distribute, supply and/or market its products.  (Topic No. 6 of Illumina's Third Rule 30(b)(6) Notice.)  Affymetrix's production with respect to capacity to manufacture and/or sell Affymetrix's products is deficient.  Indeed, to date, Affymetrix has produced only one document that purports to provide capacity information, and only as a broad category for Affymetrix's "wafers." (*See, e.g.*, AVI_134604).

We request that Affymetrix promptly supplement its production to provide manufacture and sales capacity information for each of its products.  Similarly, we note that Affymetrix has

## KIRKLAND & ELLIS LLP

Andrea Gross, Esq.
February 10, 2006
Page 3

publicly announced that manufacturing yield issues have caused Affymetrix to fall short of demand for its 500K Mapping Array Set, yet Affymetrix has failed to produce any documents (internal or otherwise) relating to this issue. Please produce all documents referring or relating to this manufacturing issue, and any other documents referring or relating to any other manufacturing issue that has impacted Affymetrix's ability to meet customer demand for its products. To the extent that Affymetrix intends to pursue a lost profits theory, these documents, responsive to Illumina's Request for Production No. 64, are necessary to analyze Affymetrix's claim.

### Documents Relating to Customer Complaints and Product Advantages or Disadvantages

Affymetrix's Rule 30(b)(6) witness has also been noticed to testify regarding customer complaints regarding Affymetrix's products. (Topic No. 9 of Illumina's Third Rule 30(b)(6) Notice.) Affymetrix has failed to produce, and it is our understanding that Affymetrix is refusing to produce, documents referring or relating to customer complaints regarding its products. We understand that customer complaint documentation is indexed and permanently maintained by Affymetrix in a quality control database. *See* AVI_055430-AVI_055434. Therefore this information should be readily available to Affymetrix and should be produced. Information regarding customer complaints is both responsive to Illumina's Document Request No. 78 and relevant to Illumina's analysis of Affymetrix's patent damage claims.

Similarly, we understand that Affymetrix is refusing to produce documents relating to the advantages or disadvantages of its products as requested by Illumina in its Document Request No. 77. Affymetrix's Rule 30(b)(6) witness has also been noticed to testify regarding factors that drive sales of Affymetrix's products. (Topic No. 6 of Illumina's Fifth 30(b)(6).) These documents are also relevant to Illumina's analysis of Affymetrix's patent damages claims.

### Licensing Royalty Information

As addressed previously in our February 1, 2003 letter, Affymetrix has not produced files for those licenses for intellectual property that Affymetrix has negotiated, including but not limited to its licenses with

## REDACTED

Failure to produce these documents prior to the deposition of Alan Sherr, Affymetrix's 30(b)(6) witness on the topic of licenses for which Affymetrix has negotiated, has resulted in prejudice to Illumina. Affymetrix's February 17, 2006 Rule 30(b)(6) witness has been noticed to testify regarding payments received or made

# KIRKLAND & ELLIS LLP

Andrea Gross, Esq.
February 10, 2006
Page 4

by Affymetrix, including royalties, licensing fees or other payments. (Topic No. 5 of Illumina's Fifth 30(b)(6).) These files are clearly relevant to this deposition and we request their prompt production. Illumina may seek to preclude Affymetrix from relying on any licenses for which Mr. Sherr's files have not been produced.

Furthermore, Affymetrix has not produced documents relating to royalties, licensing fees and payments that Affymetrix projects may be made or received by Affymetrix. These documents would be responsive to Illumina's Document Request Nos. 72 and 73. To the extent that Affymetrix has produced such documents, we request that Affymetrix identify the Bates ranges for such documents. If it has not, we request that Affymetrix promptly produce such documents or specifically state that no such documents exist within its custody or control.

Very truly yours,

Paul D. Collier

PC/cg

# EXHIBIT   G

Westlaw.

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1988 WL 79614 (N.D.Ill.)
(Cite as: 1988 WL 79614 (N.D.Ill.))

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
OAK INDUSTRIES, Plaintiff,
v.
ZENITH INDUSTRIES, Defendant.
No. 86 C 4302.

July 27, 1988.

MEMORANDUM OPINION

GRADY, Chief Judge.

*1 This patent infringement case comes before us on three motions. Plaintiff Oak Industries ("Oak") moves (1) for relief from the alleged ethical violations of Michael Barclay ("Barclay"), one of Zenith's attorneys; (2) for relief from Barclay's alleged violation of the protective order imposed in this case; and (3) to compel Zenith to produce a witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. We deny the ethics motion, but grant the motion to compel discovery. We reserve ruling on the protective order motion and all attorney-client privilege issues, pending further discovery concerning Barclay's communication with Carl Bradshaw ("Bradshaw"). We turn first to the ethics and protective order motions and then to the discovery motion.

ETHICS AND PROTECTIVE ORDER MOTIONS
Facts

In May, 1987, Barclay, one of Zenith's attorneys, contacted Bradshaw, who no longer worked for Oak but had served as its general counsel from the 1970s until August 1984. Defendant's Memorandum in Opposition to Plaintiff's Motion for Violation of Ethics Provision and Protective Order, Bradshaw Deposition at 6. According to Barclay, he contacted Bradshaw in order to obtain any non-privileged information Bradshaw had about the Harney patent, one of the patents at issue in this case. Barclay Declaration at ¶ 5. Bradshaw agreed to speak with Barclay and did so on two occasions in 1987. Id. at ¶ 7.

In preparation for their conversations, Barclay sent Bradshaw several documents which he directed Bradshaw not to copy or disclose. The record does not reveal what documents Bradshaw actually received. However, Barclay acknowledges that the materials included one or more internal Oak memoranda "of which Bradshaw was a recipient." Id. at ¶ 11. Barclay claims that "such memoranda were not designated confidential under the protective order at the time they were produced by Oak, and were such that, under Barclay's agreement with Oak's counsel, [he] was permitted to show such documents to their recipients such as Mr. Bradshaw." Id. The record also does not reveal what Barclay and Bradshaw discussed during their two conversations. However, Zenith contends that it is "unlikely" that privileged matters were discussed. Def.Memo. in Opp. at 10.

Oak alleges that Barclay also tried to contact several other ex-Oak employees. However, the only ex-employee (other than Bradshaw) specifically mentioned in Oak's memoranda is Mr. Leo Jedynak ("Jedynak"). Barclay admits that he spoke with Jedynak, but maintains that their conversation did not touch upon any substantive matters involved in this case. Barclay Declaration at ¶ 15-16.

Discussion

The Model Code of Professional Responsibility prohibits direct contact between an attorney and an opposing party without the consent of opposing counsel:

(A) During the course of his representation of a client a lawyer shall not

(1) communicate or cause another to communicate on the subject of the representation with a *partyt* he knows to be represented by a lawyer on that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so....

*2 Model Code of Professional Responsibility DR 7-104 (emphasis added); Ill.Rev.Stat., ch. 110A, Rule 7-104. The new Model Rules of Professional Conduct also proscribe such contact: [FN1]

In representing a client, a lawyer shall not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 79614 (N.D.Ill.)
(Cite as: 1988 WL 79614 (N.D.Ill.))

communicate about the subject of the representation with a *party* the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Model Rules of Professional Conduct Rule 4.2 (emphasis added).   In cases such as this, where employees of a party are involved, the task of identifying the opposing "party" can be very difficult. The Comment to Rule 4.2 of the Model Rules attempts to clarify which employees constitute a "party" for the purposes of the ethical rules:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation [1] with persons having a managerial responsibility on behalf of the organization and [2] *with* any other person whose act or omission in connection with that matter may be imputed to the organizaton for purposes of civil or criminal liability or [3] whose statement may constitute an admission on the part of the organization.

*Id.* Comment 2 (emphasis added).

Though somewhat unclear, Clause 2 of the Comment suggests that a "party" includes former employees, such as Jedynak and Bradshaw, insofar as their acts or omissions in connection with the subject matter of the litigation can be imputed to their employer. *See, e.g., Chancellor v. Boeing,* No. 85-6131 (D.Kan. February 3, 1988); *Sperber v. Washington Heights-West Harlem-Inwood Mental Health Council,* No. 82 CIV 7428 (S.D.N.Y. Nov. 21, 1983), *vacated and withdrawn* (LEXIS, GenFed library, Dist. file). Some authorities have nevertheless held that DR 7-104 and Model Rule 4.2 do not apply to contacts with former corporate employees.   *See In Re Industrial Gas Litigation,* 80 C 3479, Memorandum Op. at 5 (N.D.Ill.     January 28, 1986) (Getzendanner, J.); Illinois State Bar Association Opinion No. 85-12, 74 *Ill.Bar.J.* 514 (1986); Massachusetts Bar Association, Formal Opinion No. 82-7, *quoted in Amarin v. Maryland Cup,* 116 F.R.D. 36 (D.Mass.1987); *Wright by Wright v. Group Health Insurance,* 103 Wash.2d 192, 691 P.2d 564, 569 (1984); *Bobele v. Superior Court of Los Angeles County,* 199 Cal.App.3d 708, 245 Cal.Rptr. 144 (2nd Dist.1988) (applying similar, though not identical, state disciplinary rule).

We hold that Barclay's contacts with Bradshaw and Jedynak do not constitute ethical violations.   The

plain meaning of the word "party," as used in DR 7-104 and Model Rule 4.2, does not include persons who are no longer associated with the employer at the time of the litigation.     The fact that former employees may have information damaging to the employer has nothing to do with the question of whether the employee should be considered an alter ego of the employer.   We believe that expanding the definition of "party" under either DR 7-104 or Model Rule 4.2 to include former employees would unduly hinder attorneys' ability to conduct informal discovery in cases with employer party-opponents. As we see it, requiring the formal consent of an employer's counsel prior to contacting former employees will only increase the costs of litigation and possibly decrease the willingness of former employees to provide information.

Our inquiry does not end here.   As former general counsel of Oak, Bradshaw undoubtedly possesses information subject to the attorney-client privilege. Therefore, Oak is justifiably concerned that Bradshaw may have disclosed privileged information during his conversations with Barclay.   However, we cannot rule today on whether Bradshaw did in fact disclose privileged matters because the record does not reveal the substance of the Barclay-Bradshaw conversations.   Oak may therefore conduct discovery on the subject matter of Barclay's contacts with Bradshaw.

*3 A similar problem is raised by Oak's motion alleging violation of the protective order.   The record does not reveal what, if any, documents Bradshaw and Jedynak received from Barclay.   Therefore, Oak may discover what documents Barclay did in fact send to Bradshaw and Jedynak.

Zenith argues that the work product doctrine prohibits discovery of any notes Barclay took during his conversations with Bradshaw and Jedynak. Rule 26(b)(3), which codifies the work product privilege, allows:

a party [to] obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without due hardship to obtain the substantial equivalent of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 79614 (N.D.Ill.)
(Cite as: 1988 WL 79614 (N.D.Ill.))

Page 3

the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Rule 26(b)(3). Oak's desire to investigate a possible breach of the attorney-client privilege or the protective order certainly constitutes a "substantial need." Moreover, it is difficult to imagine how Oak could obtain the "substantial equivalent" of contemporaneous records of Barclay's conversations from any other source. If Zenith wishes to excise any passages or notes which reflect only Barclay's legal theories or ideas, rather than his summary of the conversations, it should move for an appropriate protective order, Rule 26(c).

To summarize, we deny Oak's motion for relief from ethics violations. We reserve ruling on whether Zenith breached the protective order or whether Bradshaw disclosed privileged information. Oak may conduct discovery on Barclay's contacts with Bradshaw and Jedynak, and may request production of Barclay's notes.

## MOTION TO COMPEL DISCOVERY

Pursuant to Rule 30(b)(6), Oak called for Zenith to produce a witness to testify regarding:

Any and all statements made, orally or in writing, by or between Zenith on the one hand, and on the other hand, any or all of Thompson-CSF, Philips NV, and any other potential purchaser of Zenith's Consumer Electronics.

Zenith argues that it need not produce a Rule 30(b)(6) witness because its discussions with potential buyers of its consumer electronics group are irrelevant to this case. We agree that discussions unrelated to the patents at issue in this case are irrelevant. However, any statements made by Zenith employees concerning the patents at issue are relevant.

*4 Zenith nevertheless contends that any such relevant statements are protected by the attorney-client privilege because they must have been based on "opinion of counsel." Even assuming that such statements were the product of Oak's legal counsel and protected by the attorney-client privilege, Zenith waived the privilege by disclosing such information to the potential buyers of its consumer electronics group. See U.S. v. Lawless, 709 F.2d 485 (7th

Cir.1983) (disclosure may constitute waiver of privilege).

The so-called "community of interest" exception to the general rule that disclosure waives the attorney-client privilege does not apply here. The leading "community of interest" case is Duplan v. Deering Milliken, 397 F.Supp. 1146 (D.C.C.1975). [FN2] In Duplan, the court held that sharing confidential information with a third party who has a "common legal interest" does not waive the attorney-client privilege. "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." Id. at 1172. The Duplan court strictly applied this "identical legal interest" test. For example, it held that a party could disclose information to an outsider who owed it a contractual duty to serve as its patent law advisor. Id. at 1175. However, the court found that the same party's disclosure of confidential information to the exclusive licensee of its patent constituted waiver because the licensee held only a "commercial" interest, not a legal interest, in the litigation. Id.

It is true that many cases subsequent to Duplan have interpreted the "community of interest" exception more liberally. However, of the cases addressing a party's disclosure of confidential information during negotiations, almost all have held that such disclosure waives the privilege. These cases have held that whatever the common interest shared by parties at the negotiating table, it is insufficient to warrant application of the "community of interest" exception. See Research Institute for Medicine and Chemistry v. Wisconsin Alumni Research Foundation, 114 F.R.D. 672, 676-77 (W.D.Wis.1987); Union Carbide v. Dow Chemical, 619 F.Supp. 1036, 1050 (D.Del.1985); SCM v. Xerox, 70 F.R.D. 508, 512-13 (D.Conn.1976). Therefore, because Zenith did not share any common protected interest in this case with the potential buyers of its consumer electronics group, we hold that the attorney-client privilege does not protect any disclosures made during negotiations with those buyers.

We acknowledge that Hewlett-Packard v. Bausch & Lomb, 115 F.R.D. 308, 4 U.S.P.Q.2d 167 (N.D.Cal.1987), holds to the contrary on facts very similar to this case. In Hewlett-Packard, the patent owner disclosed its patent attorney's opinion letter during negotiations with persons interested in purchasing one of its divisions. Magistrate Brazil held that such disclosure did not constitute waiver. In a thoughtful opinion, Magistrate Brazil extended the "community of interest" exception to potential

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 79614 (N.D.Ill.)
(Cite as: 1988 WL 79614 (N.D.Ill.))

buyers of one of the patent owner's divisions. Nevertheless, we choose to follow the weight of authority and hold that Zenith waived its attorney-client privilege by disclosing confidential information to potential purchasers. In light of the Seventh Circuit's admonition to construe the privilege narrowly, U.S. v. Lawless, 709 F.2d 485, 487 (7th Cir.1983), we decline to expand the coverage of the attorney-client privilege to information which a party freely shares with other business persons. Such an expansion--to all persons with whom the party may enter or consider entering into a business transaction--would quickly swallow up the general rule that disclosure waives the attorney-client privilege. Moreover, it would do little to promote the underlying purpose of the privilege, that of encouraging open discussions between clients and their attorneys.

### CONCLUSION

We deny Oak's motion for relief from ethical violations. We grant Oak's motion to compel discovery. We reserve ruling on Oak's motion for violation of the protective order and on all issues of attorney-client privilege relating to Michael Barclay's discussions with former Oak employees.

> FN1. We note that the Illinois Supreme Court has adopted the Model Code of Professional Responsibility, but not the Model Rules of Professional Responsibility. However, like other courts, see In Re Industrial Gas Antitrust, No. 80 C 3479 (N.D.Ill. Jan. 28, 1986) (Getzendanner, J.), we also look to the Model Rules for their persuasive value.

> FN2. The parties have directed us to no Seventh Circuit cases addressing the "community of interest" exception. However, in a related situation, the Seventh Circuit has held that the sharing of confidential information between codefendants' attorneys does not waive the attorney-client privilege. U.S. v. McPartlin, 595 F.2d 1321 (7th Cir.), cert. denied, 444 U.S. 833 (1979).

Not Reported in F.Supp., 1988 WL 79614 (N.D.Ill.)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.