IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AFFYMETRIX, INC.,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>ILLUMINA, INC.,<br><br>    Defendant/Counter-Plaintiff. | C.A. No. 04-901-JJF<br><br>**PUBLIC VERSION** |

**DECLARATION OF PHILIP L. MCGARRIGLE IN SUPPORT OF
AFFYMETRIX, INC.'S COUNTER-STATEMENT IN OPPOSITION TO
ILLUMINA, INC.'S MOTION FOR SUMMARY JUDGMENT OF
INEQUITABLE CONDUCT AND
<u>UNENFORCEABILITY OF U.S. PATENT NO. 6,646,243</u>**

                                                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                      Jack B. Blumenfeld (#1014)
                                                      Maryellen Noreika (#3208)
                                                      1201 N. Market Street
                                                      P.O. Box 1347
                                                      Wilmington, DE 19899-1347
                                                      (302) 658-9200
                                                       *Attorneys for Plaintiff/Counter-Defendant*
                                                       *Affymetrix, Inc.*

OF COUNSEL:

Michael J. Malecek
Daniel R. Reed
Andrea L. Gross
AFFYMETRIX, INC.
6550 Vallejo Street, Suite 100
Emeryville, CA  94608
(510) 428-8500

Original Filing Date:  July 28, 2006
Public Version Filing Date:  August 11, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AFFYMETRIX, INC.,<br><br>    Plaintiff/Counter-<br>    Defendant,<br><br>v.<br><br>ILLUMINA, INC.,<br><br>    Defendant/Counter-<br>    Plaintiff. | C.A. No. 04-901-JJF<br><br>**FILED UNDER SEAL** |

**DECLARATION OF PHILIP L. McGARRIGLE IN SUPPORT OF AFFYMETRIX, INC.'S COUNTER-STATEMENT IN OPPOSITION TO ILLUMINA, INC.'S MOTION FOR SUMMARY JUDGMENT OF INEQUITABLE CONDUCT AND UNENFORCEABILITY OF U.S. PATENT NO. 6,646,243**

I, Philip L. McGarrigle, declare as follows:

1. I have personal knowledge of all the facts contained in this declaration, unless otherwise noted, and, if called upon to do so, would and could testify competently thereto.

**Personal and Professional Background**

2. I am presently the Chief Intellectual Property Counsel, Vice President, and Assistant Secretary, of Affymetrix, Inc. ("Affymetrix").

3. I graduated with a B.A. in Microbiology with a minor in Biochemistry from the University of New Hampshire in 1976.

4. I received a J.D. from the University of Santa Clara Law School in 1983. While at Santa Clara Law School, I was an Associate Editor of the Law Review; first place winner in 1983 of the S.C. Regional Nathan Burkan Memorial Copyright

Competition, sponsored by ASCAP; and winner of Best Team and Best Brief for 1983 in the Santa Clara Moot Court Competition. During law school, I was a clerk in the summer of 1982 for Chief Judge Shane Devine of the New Hampshire District Court (Concord, N.H.). I also served as a law clerk at the NASA/Ames Research Center, Moffett Field, CA, from 1981 to 1984.

5.   I am a member of the State Bar of California, admitted in 1983 (California State Bar Number 11154). I am a registered patent attorney, admitted in 1984 (Registration Number 31395).

6.   I am a member of the following professional associations: Intellectual Property Owners Association (IPO), American Intellectual Property Owners Association (AIPLA), Association of Corporate Patent Counsel (ACPC), and the Federal Circuit Bar Association.

7.   I am an adjunct professor of law at Santa Clara Law School, where I have taught Biotechnology Law since 2000. I am also a member of the Santa Clara High Technology Advisory Board which is a governing body designed to steer the internal intellectual property program.

8.   I have published on various topics, including the following: "The Role of Foreign Judgments in Patent Litigation: Perspective and Strategic Overview," IDEA, Volume 39, No. 1, page 107 (1998); "Creating a Corporate Intranet Web Page," House Counsel, page 15, winter 1998; "Oddzon Products v. Just Toys Inc.: Practioner Beware: Prior Knowledge Requirement of 35 U.S.C. Section 102(f) Clarified," New Matter. Volume 22, No. 3, page 36 (Fall/Winter 1997); "Hazardous Biological Experiments in Outer Space," 18 Akron Law Review 103 (1984); and "Simultaneous Copyright and

Trade Secret Protection for Computer Programs," 23 Santa Clara Law Review 1037 (1983).

9. I have been an invited speaker or panel member at many professional events, including the following: I was the moderator of the ethics section of IPO's "PTO Day," moderating a panel including the current and past heads of the USPTO Office of Enrollment and Discipline (Washington, D.C., December 2004); I was co-presenter with Mr. Bruce Stoner, former Chief Judge of the USPTO Board of Appeals and Interferences at the Licensing Executives Society Annual meeting to discuss "Post Grant Opposition Practice" (Boston, MA, October 2004); I was a panel member at a presentation put on by the American Conference Institute entitled "Planning and Conducting an Effective Initial Search" (San Francisco, CA, April 2004); I was also a panel member at BIO 2004 on the topic "Achieving Economics in Obtaining Patent Protection without Reducing Deal Value" (San Francisco, CA, June 2004); and I was a panel member at a seminar put on by the American Conference Institute on How Intellectual Property Affects Small Companies (San Francisco, CA, 2001).

10. After graduation from Santa Clara Law School, I worked as a staff attorney in Chevron Oil Company's Legal Department from 1984 to 1988. My primary responsibility was patent prosecution, as well as some licensing and employment-related tasks. During my employment at Chevron, I prosecuted about one hundred different patents, as well as managing other tasks such as product review and clearance. I also worked as a *pro bono* attorney through the San Francisco Bar Association representing various indigent clients. Approximately 50 patents have issued identifying me as the prosecuting attorney based on my work at Chevron.

11. In 1988, I moved from Chevron to Cetus Corporation and stayed there, through a merger with Chiron Corporation, until 1996. My duties included patent prosecution matters for several divisions within Cetus and Chiron, such as the Cetus/Ben Venue Partnership, the Therapeutics Division, and Chiron Opthalmics. I began as a staff attorney and left as a Division Patent Counsel and Assistant Secretary. My areas of responsibility at Cetus included the therapeutic area, which involved handling the company's main area of protein and production technology, such as Interleukin II (IL-II), Beta Interferon (IFN-ß), Macrophage Colony Stimulating Factor (M-CSF), and others. The Cetus/Ben Venue partnership involved the manufacture and marketing of generic drugs. During my employment at Cetus and Chiron, I prosecuted or managed several hundred different patents, as well as managing other tasks such as product review and clearance for the therapeutics, generics, and the opthalmics areas. Approximately 60 patents have issued identifying me as the prosecuting attorney based on my work at Cetus and Chiron.

12. From 1996 to 1998, I was Patent Counsel and Assistant Secretary at Kaiser Aluminum and Chemical Company. My duties at Kaiser were to manage the revival of the patent department and to handle other intellectual property, licensing, and employment matters as appropriate. At Kaiser, I prosecuted or managed more than one hundred patent applications, as well as managing other tasks such as product review and clearance. Approximately 20 patents have issued identifying me as the prosecuting attorney based on my work at Kaiser.

13. In 1998, I joined Affymetrix as Chief Intellectual Property Counsel. As noted above, I now also hold the titles of Vice President and Assistant Secretary. At

Affymetrix, I have a broad range of responsibilities for supervision of the patent portfolio for Affymetrix, including world-wide patent prosecution and drafting, *inter partes* proceedings (including interferences, reexaminations, and oppositions) before the USPTO, EPO, and other entities, licensing, and other matters related to intellectual property. I have also organized special presentations on technologies related to DNA microarrays to the USPTO, the European Patent Office, and the Japan Patent Office.

14. During these 23 years of practice from 1983 to 2006, I have never been subject to any disciplinary proceedings or complaints before either the State Bar of California or the United States Patent and Trademark Office. Nor have I ever been found to have committed inequitable conduct.

### Recognition Of Affymetrix's Science And Patent Portfolio

15. Affymetrix and its scientists have been recognized for various awards for their technological advances. These include prestigious scientific awards such as the Newcomb-Cleveland Award from the American Association for the Advancement of Science for the most important paper published in *Science* in 1991; the Association for Laboratory Automation Achievement Award (1998); the Takeda Foundation Award (2002); *The Economist* Innovation Award for Nanotechnology (2002); and the Edwin F. Ullman Award from the American Association for Clinical Chemistry (2005).

16. The patented technology of Affymetrix has also received recognition from both government entities and associations of intellectual property professionals. For example, the European Patent Office recently recognized Drs. Fodor, Pirrung, Stryer, and Read, as inaugural Inventors of the Year in the small and medium enterprise category based on their invention of the DNA microarray as embodied in EP 476 014 (one of the

5

European equivalents to U.S. Patent Nos. 5,744,305 and 5,445,934). This was the first award of this type given out by the EPO and was measured against all patents given out in a ten year period. *See* the official EPO communication at http://www.european-patent-office.org/news/pressrel/2006_05_11_e.htm. Drs. Fodor *et al.*, were awarded the prize after having been recommended by the EPO examining corps and a panel of industrial representatives. The same group of inventors also received the Intellectual Property Owner Assocation's (IPO) Distinguished Inventor of the Year Award in 1993. The MIT *Technology Review* has recognized Affymetrix's patent portfolio as being in the top tier of all biotechnology and pharmaceutical companies for the last four years, including a ranking of #1 in 2001.

**U.S. Patent No. 6,646,243 And The May 30, 2002 Information Disclosure Statement**

17.   I have reviewed the "Opening Brief In Support Of Illumina's Motion For Summary Judgment Of Inequitable Conduct and Unenforceability of U.S. Patent No. 6,626,243," in which Illumina alleges that Affymetrix committed inequitable conduct with respect to the '243 patent by failing to disclose certain information concerning prior litigation involving another Affymetrix patent.

18.   As reflected on the face of the '243 patent, I was the patent attorney responsible for the prosecution of this patent.

19.   On May 30, 2002, I filed the Information Disclosure Statement ("IDS") in application 10/098,203 which matured into the '243 patent, a copy of which is attached as Exhibit I to Illumina's Opening Brief.

20.     As part of this IDS, I supervised the creation of a set of 2 CDs to present the large number of references cited against Affymetrix patents in litigation and administrative proceedings starting in 1998 and thereafter. As the IDS states:

> These references have arisen during multiple litigations and oppositions involving patents that relate to the present application as well as the normal course of prosecution. Applicants have cited them to fulfill their duty of disclosure. In an effort to make the review of these references more manageable on the Examiner, Applicants have provided the PTO with multiple copies of the two compact discs (CDs) with the references available for electronically viewing or searching.

Exhibit I at 1. The references cited by Affymetrix's opponents in these litigations were voluminous. Affymetrix initially provided references to the USPTO in a binder set that was approximately 8 feet wide and was updated on occasion. (*See* Exhibit I at 2: "The CDs presented to Examiner Tsang were to accompany the hard copies of the references in the IDS, which are in a central location in her office for the availability of all Examiners.") Due to this large volume of references, Affymetrix created the CDs to provide more ready access to these references to the USPTO. I worked together with the PTO to create these CDs, including discussions with John Doll, now Commissioner for Patents, and Cecilia Tsang, Special Programs Examiner. It was with their approval and request that this electronic database of references was created.

21.     The IDS further describes the CDs as follows:

> Of the two CDs that make up the IDS, one contains the articles and another contains patents/published applications. The CD containing the articles is in .pdf format and can be viewed by selecting the appropriate article as discussed below. The patent CD contains text versions and versions of the patents with the appropriate figures. It is fully searchable and contains a program that has the ability to search for specific terms or to use Boolean logic to formulate more specific searches. There are links within each full text patent to the patents that are cited therein.
>
> The vendor who prepared the patent literature CD suggests that you open the README.HTML file in the root directory of the CD before

7

> use. It contains the directions on how to use the CD, as well as a hyperlink to the patent list. The CD that contains the articles suggests that you open "Index" or "Index2" to view images. You will see 1449 forms which list the articles which can be opened by clicking on the hyperlinked number of the article in the left hand column.

Exhibit I at 2. The index provided on the CDs appears as a traditional 1449 form used to disclose prior art references to the PTO. However, this index was provided in three formats for ease of use. There was a PDF version of the 1449 form (as filed in another application as part of a similar IDS form). There was an HTML version of the 1449 form – linked to the ReadMe.html overview – that provided a live hyperlink to each reference. Finally, a live Microsoft Word version of the 1449 form was also provided (and also linked to the ReadMe.html overview).

22.   As noted above, the CDs also came with a piece of software enabling the examiners to conduct Boolean logic searches on the text of all the patent references. The README.HTML file provides directions on how to use the CD generally and, specifically, how to use this software. (A print-out of this README.HTML file is attached to Affymetrix's Counter-Statement as Exhibit 4.)

23.   The IDS also describes administrative and civil litigation related to Affymetrix's patents. First, it describes interferences filed against U.S. Patent Nos. 5,744,305 and 5,800,992:

> Two commonly owned patents US 5,744,305 and US 5,800,992 have been involved in interference proceedings. Specifically, the interferences were Interference No. 104,359 between commonly owned US 5,744,305 and Brown et al., USSN 08/688,488, and Interference No. 104,358 between commonly owned US 5,800,992 and USSN 08/514,875. Both interferences have been decided (subject to current appeal in District Court of Northern California, Civil Case No. C99 21111-JF/EAI) by the USPTO in favor of real party in interest Affymetrix, the assignee of the present application. The Junior party challenged the patents on the basis of lack of enablement and written description under 35 USC §112, among other issues. The Junior party's initial position is set out in papers (with

> supporting information) entitled "Request for Declaration of Interference, 37 C.F.R. §1.608" in both interferences. The initial response of Senior party Patentee is set out in papers (with supporting information) entitled "Fodor's Opposition to Brown's Rule 608(b) Request" in both interferences.

Exhibit I at 2. These interferences were initiated by Incyte, the exclusive licensee of the Junior party patent after Affymetrix asserted these patents against Incyte. (Copies of the interference decisions in Affymetrix's favor are attached to Affymetrix's Counter-statement as Exhibits 10 and 11.)

24. The IDS next describes the civil litigation involving the assertion of some of Affymetrix's patents:

> Further, US 5,744,305 and US 5,800,992 are the subject of litigation (*Affymetrix, Inc. v. Hyseq,Inc.,* US District Court for the Northern District of California, San Francisco Division, Civil Action No. C98-03192 FMS, and *Affymetrix. v. Synteni, Inc. and Incyte Pharmaceuticals, Inc.,* US District Court for the Northern District of California, San Francisco, Case No. C98-4508 FMS (MEJ)). In the course of these proceedings, allegations of invalidity over prior art, lack of enablement, lack of support and inequitable conduct (relating to duty of candor, content of declarations under 37 CR §1.132, and arguments made during prosecution) have been raised. These allegations are denied. In a more recent lawsuit with Incyte Genomics (*Incyte Genomics Inc. v. Affymetrix,*), Affymetrix counterclaimed for patent infringement under U.S. patent 5,871,928 ('928). The '928 patent is in a related family to the present application. Incyte has filed their "Initial Disclosure of Prior Art" and the references cited therein have been included into the current IDS. The lawsuit is filed in the Northern district of California, San Francisco division and is Case No. C 00-3210 MJJ. Both the Hyseq and Incyte litigations were settled.

Exhibit I at 3. In describing the Incyte and Hyseq litigations where Affymetrix had asserted its patents (as opposed to those where it was a defendant), I named only two of the three docket numbers. I understand that all 3 cases were related or consolidated with one another. I also am now aware that after these cases were transferred to Judge Fogel, they were renumbered as 21163, 21164, and 21165. I also named only the '305 and '992 patents and omitted reference to the 5,445,934 and 5,795,716 patents which were also

9

asserted in one or the other of these lawsuits. (The '934 patent was asserted in the 4507 docket against Incyte. The '716 patent was asserted in the 3192 docket against Hyseq.) Omitting explicit reference to any specific docket numbers or specific patent numbers was not intentional.

25. The IDS next describes an opposition of a European patent:

> Further, oppositions have been filed against a related European application EP 619,321 in the European Patent Office, and a revocation proceeding has been brought in the United Kingdom against related patents GB 2,248,840 and EP (UK) 0619 321.

Exhibit I at 3. The EP 619,321 is a European equivalent to the application which led to the issuance of the '934 patent. The European Patent Office provides on-line access to the public to documents filed in opposition proceedings. I believe this on-line access has been available since at least 2002.

26. Finally, the IDS states that any document from litigation desired by the examiners will be provided:

> Applicants can provide copies of litigation documents that may be of interest to the Examiner, but have not done so due to the extensive nature of the multiple litigation and papers filed therein.

Exhibit I at 3-4.

27. The declaration of Dr. Michael Pirrung was available on-line in the EPO in these opposition proceedings. (It was also available in the 4508 docket.) In fact, Exhibit N appears to be a copy of the Pirrung declaration obtained from those proceedings due to the date marking of "M06-10-99" thereon.

## Conclusion

28. To the extent the information identified in Illumina's opening brief is found to have been inadequately disclosed to the PTO, and to the extent any such

10

information is found to be material and not cumulative of other disclosures, such nondisclosure was not the result of any intentional or deliberate conduct on my part.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed July 28, 2006, in Santa Clara, California.

*/s/ Philip L. McGarrigle*
Philip L. McGarrigle

CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2006, I electronically filed the foregoing document using CM/ECF which will send notification of such filing(s) to the following:

>   Richard K. Herrmann
>   Morris, James, Hitchens & Williams LLP

I also certify that copies were caused to be served on July 28, 2006 upon the following in the manner indicated:

BY HAND

>   Richard K. Herrmann
>   Morris, James, Hitchens & Williams LLP
>   222 Delaware Avenue, 10th Floor
>   P.O. Box 2306
>   Wilmington, DE 19899-2306

BY EMAIL AND FEDERAL EXPRESS

>   Marcus E. Sernel
>   Kirkland & Ellis LLP
>   200 East Randolph Drive
>   Chicago, IL 60601

>                         */s/ Maryellen Noreika (#3208)*
>                         Maryellen Noreika (#3208)
>                         1201 N. Market Street
>                         P. O. Box 1347
>                         Wilmington, DE 19899-1347
>                         (302) 658-9200
>                         mnoreika@mnat.com

CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2006, I electronically filed the foregoing document using CM/ECF which will send notification of such filing(s) to the following:

> Richard K. Herrmann
> Morris, James, Hitchens & Williams LLP

I also certify that copies were caused to be served on August 11, 2006 upon the following in the manner indicated:

BY HAND

Richard K. Herrmann
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306

BY EMAIL AND FEDERAL EXPRESS

Marcus E. Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
bschladweiler@mnat.com