IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AFFYMETRIX, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 04-901 JJF |
| : | |
| ILLUMINA, INC., : | |
| : | |
| Defendant. : | |

Michael J. Malacek, Esquire, Daniel R. Reed, Esquire, George C. Yu, Esquire, and Andrea L. Gross of AFFYMETRIX, INC., Emeryville, California; Jack B. Blumenfeld, Esquire and Maryellen Noreika, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Robert G. Krupka, Esquire of KIRKLAND & ELLIS LLP, Los Angeles, California; Mark A. Pals, Esquire, and Marcus E. Sernel, Esquire of KIRKLAND & ELLIS LLP, Chicago, Illinois; Richard K. Herrmann, Esquire of MORRIS, JAMES, HITCHENS & WILLIAMS LLP, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

August 16, 2006
Wilmington, Delaware

Farnan, District Judge

Pending before the Court is Defendant Illumina, Inc.'s ("Illumina") Motion To Dismiss Affymetrix' Count 2 For Lack Of Standing And Subject Matter Jurisdiction (D.I. 234). For the reasons discussed, the Court will deny Illumina's Motion.

## BACKGROUND

Plaintiff Affymetrix, Inc. ("Affymetrix") filed this patent infringement action against Illumina contending that Illumina has infringed six patents owned by Affymetrix. Claim 2 of Affymetrix's Complaint (D.I. 1) alleges that Illumina has infringed U.S. Patent No. 5,795,716 (the "'716 patent"). By its Motion, Illumina contends that this Court lacks jurisdiction to hear Claim 2 because Affymetrix has never had legal title to the '716 patent and thus lacks standing to sue for infringement of that patent.

The parties agree that Dr. Robert Lipshutz conceived of the invention claimed in the '716 patent (the "invention") sometime in the summer of 1992. (D.I. 234 at 1; D.I. 246 at 2.) At that time, Dr. Lipshutz was employed by Daniel H. Wagner Associates, Inc. ("Wagner"). In connection with that employment, Dr. Lipshutz signed an "Agreement As To Patents, Copyrights, And Inventions," which contained a paragraph providing, in full:

> I hereby agree, for myself, my heirs and representatives, to assign, transfer, and set over, and I do hereby assign, transfer, and set over to the Corporation (for disposition to its clients if

1

> appropriate), its successors and assigns, all my
> rights, title, and interest in and to any and all
> designs, ideas, inventions, improvements, and
> manuscripts or other copyrightable material, which I,
> either solely or jointly with others may hereafter
> conceive, make or suggest during my employment by the
> Corporation or its successors and the six-month period
> next following the termination of such employment, and
> which in any way relate directly or indirectly to its
> or its clients' business problems, procedural,
> mechanical and commercial needs, and production
> research or experimental developments and projects of
> every name and nature under consideration and/or being
> carried on by or for the Corporation prior to
> termination of my employment.

(D.I. 234, Ex. C.) Illumina contends that this agreement automatically transferred all rights in the invention to Wagner and that Wagner has never transferred that ownership. (D.I. 253 at 2.) Affymetrix does not dispute the transfer of rights from Dr. Lipshutz to Wagner, but contends that there was a further transfer from Wagner to Affymax Research Institute ("Affymax" or "ARI"), from which Affymetrix was later spun off.

Both before and after Dr. Lipshutz's conception of the invention, Wagner performed consulting work for Affymax. Affymetrix contends that Affymax acquired all rights in the invention as a result of a 1991 consulting agreement (the "1991 Agreement") between Wagner and Affymax. (D.I. 246 at 5.) Section 2 of the 1991 Agreement, entitled "Ownership of Work Product," provides in full:

> The Work Product ("Work Product") produced by
> Consultant under this Agreement and all proprietary
> rights therein shall be the exclusive property of ARI.
> Work product includes (but is not limited to)

2

>inventions, discoveries, compounds, reports, memoranda, drawings, computer programs, devices, models, or other materials of any nature, or information relating to any of the foregoing, which are or were generated in connection with the work scope described in Section 1 of this Agreement. Consultant will cooperate with ARI in the enforcement and perfection of ARI's rights.

(Id., Ex. A, Ex. 2 at 1.) Section 1 of the 1991 Agreement, entitled "Work Scope," provides in full:

>Consultant shall provide such services as requested by ARI relating to:
>
>Developing search strategies and related software design specifications for VLSIPS data analysis as requested by ARI contact. Work shall follow a three-phase scope:
>- development of a tactical outline detailing a set of search strategies,
>- implementation of a subset of these search strategies, potentially as an initial global search, supplemented by special case searches,
>- evaluation and improvement of search strategies in response to processed data and statistical analysis.

(Id.) Section 10 of the 1991 Agreement, entitled "Sections Surviving Termination," provides in full: "The following sections shall survive the termination of this agreement: Sections 2, 6, 7, 9, 11, and 12." (Id. At 4.) In 1996, after Affymax had spun off Affymetrix, Affymax assigned its rights in the application for the '716 patent to Affymetrix. (D.I. 246, Ex. B.)

## DISCUSSION

The parties agree that if Affymetrix owns the '716 patent, its ownership devolves from the operation of the 1991 Agreement.

3

(D.I. 253 at 5-8; D.I. 246 at 5.) Illumina contends that the 1991 Agreement did not transfer ownership of the invention to Affymax because (1) the 1991 Agreement was not in effect at the time that Dr. Lipshutz conceived the invention, (D.I. 253 at 5); (2) the invention does not fall within the scope of the 1991 Agreement, (Id.); and (3) even if Affymax were entitled to ownership of the invention, the language of the 1991 Agreement was insufficient, by itself, to effect an assignment of Wagner's rights in the invention to Affymax, (Id. at 8-9).

## I. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction if the plaintiff lacks standing to bring his claim. Kwan v. United States, 84 F.Supp.2d 613, 617 n.2 (E.D. Pa. 2000). A motion to dismiss under 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. See Mortensen v. First Fed. Sav. and Loan, 549 F.2d 884, 891 (3d Cir. 1977). In considering a facial challenge, a court must accept as true, all allegations in the complaint. Id. In contrast, when considering a factual challenge, a court is free to weigh the evidence and no presumption of truthfulness attaches to the plaintiff's allegations. Id. The instant Motion presents

4

a factual challenge to the Court's subject matter jurisdiction.

**II.  Whether The 1991 Agreement Was In Effect When Dr. Lipshutz Conceived The Invention**

The 1991 Agreement does not explicitly provide for its own termination.  Illumina contends that the 1991 Agreement was not in effect when Dr. Lipshutz conceived of the invention in the summer of 1992 because at that time "Wagner was neither doing work for Affymetrix nor being funded by Affymetrix."  (D.I. 253 at 7.)  However, Section 10 of the 1991 Agreement provides that Section 2, on ownership of work product, survives termination of the agreement.  Thus, whether or not the entire 1991 Agreement was still in effect at the time Dr. Lipshutz conceived of the invention, Section 2 was still in effect.  Therefore, if the invention was work product within the meaning of Section 2, then Section 2's provision establishing ownership in Affymax applies.

**III. Whether The Invention Was Conceived In Connection With The Work Scope Of The 1991 Agreement**

The conception of the invention was work product within the meaning of Section 2 of the 1991 Agreement if it occurred "in connection with the work scope" of the Agreement.  The Court concludes that it did.

Illumina contends that the conception of the invention was not work product because "the 'work scope' of the 1991 Agreement does not encompass the subject matter of the '716 patent."  (D.I. 267 at 3.)  While that may be true, it is beside the point.

5

Under Section 2 of the 1991 Agreement, work product is not limited to things falling within the work scope, but includes things "generated in connection with the work scope." (D.I. 246, Ex. A, Ex. 2 at 1.) The work scope of the 1991 Agreement relates to VLSIPS[1] data analysis. (Id.) Synthesis of nucleic acid arrays for use in analyzing nucleic acid sequences is one application of VLSIPS. The invention claimed in the '716 patent is a computer system for analyzing nucleic acid sequences. It is logical then, to conclude that Dr. Lipshutz's conception of the invention arose from his consideration of Affymax's problems related to VLSIPS applications. In other words, his conception of the invention was generated in connection with solving problems related to VLSIPS data analysis. The Court concludes therefore, that the invention was conceived in connection with the work scope of the 1991 Agreement and thus, Affymax acquired the right to ownership of the invention by operation of Section 2 of the 1991 Agreement.

### IV. Whether Wagner's Rights In The Invention Were Transferred To Affymax By Operation Of The 1991 Agreement

Finally, Illumina contends that, even if the 1991 Agreement gave Affymax the right to ownership of the invention, legal ownership was never effectively transferred from Wagner to Affymax. (D.I. 267 at 12.) Illumina argues that the 1991

---

[1] VLSIPS, or Very Large Scale Immobilized Polymer Synthesis, is Affymax/Affymetrix's proprietary technology for synthesizing a large array of polymers in known locations within a relatively small area on the surface of a substrate.

Agreement amounted only to an agreement to assign rights and did not effect a present assignment of future rights. (Id.) In response, Affymetrix contends that the 1991 Agreement effected a present transfer of "proprietary rights" from Wagner to Affymax. (D.I. 268 at 13.) The Court agrees with Affymetrix.

The parties cite five cases in support of their contentions, three of which are from the Federal Circuit. However, the language of Section 2 of the 1991 Agreement differs significantly from the language of the agreements at issue in each of these cases. In both cases in which the agreement at issue was found to be merely an agreement to assign and not an assignment, the agreement contained language indicating that after conception of an invention, some further act was required to transfer title of the invention. See Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1576 (Fed. Cir. 1991) ("[a]ny inventions conceived by IDEA or its employees. . . shall be the property of CLIENT [Arachnid], and all rights thereto will be assigned by IDEA . . . to CLIENT"); Freedom Wireless v. Boston Communications Group, Inc., 220 F.Supp.2d 16, 18 (D. Mass. 2002) ("all inventions . . . belong to the Company. The Employee will promptly disclose such inventions . . . and perform all actions reasonably requested by the Company to establish and confirm such ownership . . . ."). On the other hand, in the cases in which the agreement at issue was found to be a present assignment of a future interest, the

7

agreement contained express language of present conveyance.  See Filmtec Corporation v. Allied-Signal Inc., and UOP Inc., 939 F.2d 1568, 1570 (Fed. Cir. 1991) ("MRI agrees to grant and does hereby grant . . . ."); Speedplay, Inc., v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed. Cir. 2000) ("All inventions . . . 'shall belong exclusively to [Speedplay] and [Byrne] hereby conveys, transfers and assigns . . . .'"); Imatec, LTD. v. Apple Computer, Inc., 81 F.Supp.2d 471, 478 (S.D.N.Y. 2000) ("I agree to assign and hereby do assign . . . ."). The Agreement here, however, contains neither the "will assign" language of Arachnid nor the "does hereby grant" language of Filmtec, but simply states that "[t]he Work Product . . . produced by Consultant under this Agreement and all proprietary rights therein shall be the exclusive property of ARI."[2] (D.I. 246, Ex. A, Ex. 2 at 1.)  Therefore, none of the cited Federal Circuit cases is directly controlling here.

The proper construction of assignment agreements is a matter of state contract law.  Minco, Inc., v. Combustion Engineering, Inc., 95 F.3d 1109, 1117 (Fed. Cir. 1996).  Section 11 of the 1991 Agreement provides that construction of the Agreement "shall

---

[2] The Court construes the last sentence of Section 2, "Consultant will cooperate with ARI in the enforcement and perfection of ARI's rights," as obligating Wagner to assist Affymax in prosecuting and enforcing the '716 patent rather than requiring Wagner to take some further action to transfer rights in the invention to Affymax.

8

be governed by the substantive law of the State of California . . . ." (D.I. 246, Ex. A, Ex. 2 at 4.) Under California law, a contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone . . . ." Cal. Civ. Code § 1639. However, if a contract's terms are ambiguous or uncertain, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. The only evidence offered in that regard is the deposition testimony of Dr. Lipshutz. When questioned about contracts between Wagner and Affymax, Dr. Lipshutz testified that "[t]he -- the basic idea was we worked together, and we -- Affymetrix owns everything, Affymax. That was -- that was sort of the quid for getting to play." (D.I. 246 Ex. A, Ex. 4, 179:18-21.)

    Dr. Lipshutz's testimony supports the proposition that both Wagner and Affymetrix understood Section 2 of the 1991 Agreement to be a present assignment of future interests. That proposition is further supported by the fact that Wagner has never challenged Affymax/Affymetrix's ownership of the invention. The Court concludes therefore, that Section 2 of the 1991 Agreement was a present assignment of future interests and that, upon conception,

legal title to the invention was transferred to Affymax by operation of law. Subsequently, Affymax effectively assigned its rights in the invention to Affymetrix. (See D.I. 246 Ex. B.)

## CONCLUSION

For the reasons discussed, the Court concludes that Affymetrix held legal title to the '716 patent during the period of alleged infringement and, therefore, that Affymetrix has standing to sue for infringement of the '716 patent. Accordingly, the Court will deny Illumina's Motion To Dismiss.[3]

An appropriate order will be entered.

---

[3] By letter dated July 11, 2006 (D.I. 274), Illumina requested the Court's permission to file a reply to Affymetrix's supplemental brief (D.I. 268) because Affymetrix submitted new evidence and argued new issues. Because the Court did not consider any of the evidence or argument of which Illumina complains, a reply brief is not necessary.

10