## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **AFFYMETRIX, INC.**, a Delaware corporation, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) Civil Action No.: 04-901 JJF |
| | ) |
| **ILLUMINA, INC.**, a Delaware corporation, | ) **PUBLIC VERSION** |
| | ) |
| Defendant/Counter-Plaintiff. | ) |
| | ) |

---

**ILLUMINA'S COUNTER-STATEMENT OF CONTESTED FACTS IN OPPOSITION TO AFFYMETRIX'S MOTION FOR SUMMARY JUDGMENT OF ILLUMINA'S COUNTERCLAIM OF INTENTIONAL INTERFERENCE WITH ACTUAL AND PROSPECTIVE ECONOMIC ADVANTAGE AND PORTIONS OF ILLUMINA'S COUNTERCLAIM FOR UNFAIR BUSINESS PRACTICES**

---

Richard K. Herrmann (#405)
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Original Date: July 28, 2006
Redacted Date: August 17, 2006

*Attorneys for Illumina, Inc.*

## TABLE OF CONTENTS

COUNTER-STATEMENT OF FACTS ....................................................................3

I.  Affymetrix Possesses Market Power In The Relevant Markets. ...........................3

    A.  Affymetrix has a dominant share of the DNA microarray market. .............3

    B.  Affymetrix's market dominance is strengthened by barriers to
        entry. ...........................................................................................................4

    C.  Affymetrix has exploited the barriers to entry to impede
        competition from new entrants, including Illumina...................................6

II.  Affymetrix Initiated A Scheme To Eradicate Illumina As A Competitor. ..............7

    A.  Affymetrix perceived Illumina's entry as a threat to its dominance
        in the genotyping and gene expression markets. .......................................7

    B.  Because Illumina threatened its market dominance, Affymetrix
        directed customers away from Illumina even when Affymetrix did
        not have a competitive product to offer. .....................................................7

    C.  Affymetrix engaged in a comprehensive scheme to "block" or
        "halt" each Illumina sale. ...........................................................................8

    D.  Affymetrix aggressively pursued its scheme to eradicate Illumina
        as a competitor. .........................................................................................11

III.  Affymetrix's Scheme To Eradicate Illumina As A Competitor Went Well
     Beyond Competition On The Merits.......................................................................12

    A.  To interfere with Illumina's ability to compete, Affymetrix has
        persuaded, or attempted to persuade, customers to breach sales
        contracts with Illumina. ...........................................................................12

    B.  To interfere with Illumina's ability to compete, Affymetrix has
        disseminated false and misleading information. .......................................15

    C.  To maintain its market dominance, Affymetrix offered tying
        promotions intended to interfere with Illumina's introduction of its
        100K Array. ...............................................................................................20

    D.  To maintain its market dominance, Affymetrix rushed release of its
        500K GeneChip® to interfere with Illumina's introduction of its
        100K Array. ...............................................................................................22

    E.  To maintain its market dominance, Affymetrix has provided free
        instrument rentals to customers, including prospective Illumina
        customers. ..................................................................................................23

i

F.   To maintain its market dominance and to interfere with Illumina's ability to compete, Affymetrix formed business relationships with competitors to compete against Illumina. ............................................... 24

G.   To maintain its market dominance, Affymetrix has entered into restrictive and exclusionary contracts that have impeded competition. ................................................................................... 26

H.   To interfere with Illumina's ability to compete, Affymetrix has misappropriated and used Illumina's confidential information. ............... 29

I.   To impede Illumina's ability to compete, Affymetrix has asserted patents that it knows are unenforceable against Illumina. ........................ 31

IV.   Illumina Has Been Economically Harmed By Affymetrix's Scheme To Eradicate Illumina As A Competitor. ................................................... 32

CONCLUSION ................................................................................................................ 33

In accordance with the Court's Memorandum Order, Illumina, Inc. ("Illumina") hereby submits its Counter-Statement of Facts in opposition to Affymetrix, Inc.'s ("Affymetrix's") Motion For Summary Judgment Of Illumina's Counterclaim of Intentional Interference With Actual and Prospective Economic Advantage and Portions Of Illumina's Counterclaim For Unfair Business Practices. The following Counter-Statement sets forth the material facts supporting its tortious interference and unfair competition counterclaims as pled in its First Amended Answer and Counterclaims and as addressed in its supplemental interrogatory responses.

In its motion, Affymetrix seeks summary judgment with respect to only two facets -- dissemination of false and misleading statements and misappropriation of Illumina's confidential information -- of Illumina's allegations regarding Affymetrix's anticompetitive behavior under the Cal. Bus. & Prof. Code § § 17200 et. seq. ("the UCL"). (*See* Affymetrix's Br., at 2-4). While Illumina has evidence to support each of these allegations individually, it is improper to analyze these individual allegations and their legal sufficiency in isolation. *See Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal.App.4th 886, 894-95 (Cal. Ct. App. 2002) ("And we are mindful that what is unfair or fraudulent, unlike unlawfulness, [under the Cal. Bus. Code 17200] is a question of fact, which involves an equitable weighing of all the circumstances.").

As the facts set forth below reveal, Affymetrix has initiated a desperate and expansive scheme to maintain its market dominance by eradicating, or at least slowing down, Illumina, a competitor that it recognized early in Illumina's formation as a threat in the DNA microarray market. Affymetrix's unlawful scheme to impede competition, which is supported by its marketplace behavior taken as a whole, is actionable under the UCL. *See Cel-Tech Comm.,*

*Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 539 (Cal. 1999) (proscribing behavior that is unlawful, unfair or fraudulent that impedes or harms competition). Further, as part of its scheme, Affymetrix has intentionally and wrongfully interfered with Illumina sales (consummated and prospective), resulting in economic harm to Illumina, in violation of common law tortious interference.

In short, this Court need not entertain full briefing on this motion because, at a minimum, genuine issues of material fact exist with respect to Affymetrix's scheme to impede competition and eradicate Illumina:

- Whether, as part of its scheme, Affymetrix has exploited barriers to entry to strengthen its market power;

- Whether, as part of its scheme, Affymetrix persuaded, and attempted to persuade, Illumina's customers to breach sales contracts, resulting in economic harm to Illumina;

- Whether, as part of its scheme, Affymetrix has disseminated false and misleading information regarding Illumina and its products;

- Whether, as part of its scheme, Affymetrix has engaged in anticompetitive bundling or rebate programs;

- Whether, as part of its scheme, Affymetrix rushed to market a product that was not ready for commercial release to impede competition;

- Whether, as part of its scheme, Affymetrix has misappropriated and made improper use of a competitor's confidential information.

In light of the disputed facts, Illumina respectfully requests that the Court deny Affymetrix's motion for summary judgment in lieu of further briefing on the motion.

## COUNTER-STATEMENT OF FACTS

**I.    Affymetrix Possesses Market Power In The Relevant Markets.**

    **A.    Affymetrix has a dominant share of the DNA microarray market.**

        1.    Affymetrix began independent operations in 1992 as one of the first companies to enter the DNA microarray market.[1]  (*See* Ex. 1 (2005 Affymetrix 10-K), at 4). Affymetrix now employs over 1,100 employees.  (*See id.*, at 23).

        2.    Touting itself as the "gold standard" for DNA microarrays, Affymetrix has long maintained a dominant share of the DNA microarray market.   (*See* Ex. 2 (10/2003 Affymetrix 8-K), at AVI126404).  Affymetrix has described itself publicly for many years as the "market leader" in the DNA microarray market.  (*See* Ex. 3 (2002 Affymetrix 10-K), at 3).

        3.

REDACTED

        4.

REDACTED

---

[1] DNA microarrays are used by researchers worldwide to conduct genetic studies.  Pharmaceutical, biotechnology, agrichemical, diagnostics, and consumer product companies, as well as academic, government, and other non-profit research institutes and laboratories use DNA microarrays.  (*See* Ex. 1 (2005 Affymetrix 10-K), at 3).

[2] Although products relating to these applications may use the same platform and general analysis, researchers obtain different genomic information from genotyping and gene expression applications.  For example, in genotyping studies, researchers use microarrays to scan genomes to identify genetic similarities associated with various diseases.  In gene expression studies, researchers use microarrays to identify correlations between genes, and also to determine their biological functions.  (*See* Ex. 1 (2005 Affymetrix 10-K), at 7-13).

REDACTED

5.   ⸱ ⸱⸱

REDACTED

**B.**   **Affymetrix's market dominance is strengthened by barriers to entry.**

6.   Significant barriers exist to block new companies from entering the DNA microarray market that have permitted Affymetrix to maintain and strengthen its market dominance. REDACTED *see also* Ex. 10 at 2 (quoting Affymetrix's Executive Vice President Ken Nussbacher, "People are assuming [the microarray market] is going to open up. . . . We [Affymetrix] are fighting very hard to keep that from happening. We don't think it should.")).

7.   One barrier for new entrants is that the DNA microarray market has high research and development costs associated with its competitive products.

REDACTED

8.   A further barrier to entry for new entrants in the DNA microarray industry is that Affymetrix's GeneChip® products, which Affymetrix has long touted as the "gold standard," have strong brand recognition in the market. REDACTED

4

REDACTED

9.     A further barrier to entry for new entrants in the DNA microarry industry is that Affymetrix has an extensive customer base that has installed Affymetrix microarray platforms.

REDACTED

10.     A further barrier for new entrants is the substantial investment that a DNA microarray customer must make to switch between competitors' technology platforms.  For example, Illumina's basic BeadStation® system, which a customer must purchase to switch from an Affymetrix platform to an Illumina platform, has a 2005 catalog list price of $300,000.  (*See* Ex. 15 (2005 Illumina Catalog), at IAFP11915).

11.     Affymetrix's brand recognition and wide spread market acceptance has impeded, and continues to impede, new entrants' ability to enter the market, making it more difficult for them to compete.

REDACTED

C.    **Affymetrix has exploited the barriers to entry to impede competition from new entrants, including Illumina.**

12.

REDACTED

13.    Affymetrix touts its number of publications - as opposed to the quality of the findings in those publications - to customers as an alleged advantage that its products maintain over Illumina's products.

REDACTED

14.

REDACTED

15.

REDACTED

## II.    Affymetrix Initiated A Scheme To Eradicate Illumina As A Competitor.

16.    Illumina is a public corporation with headquarters in San Diego.  (*See* Ex. 21 (2005 Illumina 10-K).

17.    Although it was formed in 1998, Illumina did not sell its first commercial DNA microarray product until 2003.  (*See id.* at 3).  Today, Illumina offers a wide variety of arrays and related products for gene expression and genotyping applications.  (*See id.*).

### A.    Affymetrix perceived Illumina's entry as a threat to its dominance in the genotyping and gene expression markets.

18.    Although Illumina offers both gene expression and genotyping products, Illumina's initial market penetration has occurred predominantly through sales of genotyping products.    REDACTED

19.

REDACTED

B.    REDACTED

20.    REDACTED

7

REDACTED

C.

REDACTED

21.

22.

REDACTED

8

REDACTED

REDACTED

---

[3] Each of the documents cited in this bullet-point list are attached in the same order as Exhibit 28.

REDACTED

REDACTED

REDACTED

25.    For many of the Illumina sales with which Affymetrix interfered, Affymetrix did not even have a competitive solution at the time.

REDACTED

26.

REDACTED

**D.    Affymetrix aggressively pursued its scheme to eradicate Illumina as a competitor.**

27.

REDACTED

---

[4] In its motion. Affymetrix

REDACTED    To the contrary, Illumina's behavior is distinct from Affymetrix's for purposes of analyzing unfair competition because Illumina neither possesses market power, nor has it engaged in a scheme to eradicate a competitor, as has Affymetrix. *See LePage's Inc. v. 3M*, 324 F.3d 141, 151-152 (3d. Cir. 2003) ("[A] monopolist is not free to take certain actions that a company in a competitive (or even oligopolistic) market may take, because there is no market constraint on a monopolist's behavior.").

REDACTED

28.

REDACTED

29.

REDACTED

30.

REDACTED

31.

REDACTED

**III.     Affymetrix's Scheme To Eradicate Illumina As A Competitor Went Well Beyond Competition On The Merits.**

**A.     To interfere with Illumina's ability to compete, Affymetrix has persuaded, or attempted to persuade, customers to breach sales contracts with Illumina.**

32.     As part of its scheme to eradicate Illumina as a competitor, Affymetrix sought to persuade customers to breach sales contracts with Illumina.  Exemplars of such

REDACTED

REDACTED

12

behavior are transactions involving two Illumina customers -- *i.e.*,
REDACTED

1.    Affymetrix interfered with Illumina's sales contract with
REDACTED

33.    REDACTED

34.    REDACTED

35.    REDACTED

36.    REDACTED

37.    REDACTED

REDACTED

REDACTED

REDACTED

2.    **Affymetrix interfered with Illumina's sales contract with**

40.

REDACTED

41.

REDACTED

42.

REDACTED

14

43.

REDACTED

44.

REDACTED

**B.    To interfere with Illumina's ability to compete, Affymetrix has disseminated false and misleading information.**

45.    As part of its scheme to eradicate Illumina as a competitor, Affymetrix has disseminated false and misleading information to impede Illumina's ability to compete.

**1.    Affymetrix has disseminated false and misleading statements to DNA microarray customers regarding Illumina and its products.**

46.

REDACTED

REDACTED

REDACTED

48.

REDACTED

49.

REDACTED

50.

REDACTED

51.

REDACTED

52.

REDACTED

REDACTED

2.    **Affymetrix has disseminated misleading information as to the availability of its products to win sales from Illumina.**

53.    In competitive bid situations with Illumina, Affymetrix has misled prospective customers regarding the availability of its next-generation products to win sales from Illumina.

54.

REDACTED

55.    REDACTED

56.

REDACTED

57.

REDACTED

17

58.

REDACTED

59.

REDACTED

60.

REDACTED

61.

REDACTED

---

7

REDACTED

62.

REDACTED

63.

REDACTED

64.

REDACTED

65.    REDACTED

Affymetrix won this business by making a commitment that it knew, or should have known, that it could not meet, and therefore, precluded Illumina from being able to win this sale on the merits.

**C.    To maintain its market dominance, Affymetrix offered tying promotions intended to interfere with Illumina's introduction of its 100K Array.**

66.    REDACTED

67.    REDACTED

68.    REDACTED

69.    REDACTED

20

REDACTED

70.

REDACTED

71.

REDACTED

72.

REDACTED

---

8: REDACTED and as discussed below, Affymetrix rushed this technically deficient product to market in a further attempt to block Illumina's market entry.

21

**D.**     **To maintain its market dominance, Affymetrix rushed release of its 500K GeneChip® to interfere with Illumina's introduction of its 100K Array.**

73.

# REDACTED

74.     Affymetrix     commercially     launched     its     500K     GeneChip®

contemporaneously with Illumina's commercial launch of its 100K Array.

# REDACTED

Ex. 51 (6/28/05 Illumina Press

Release), at 1 (announcing June 2005 release of Illumina's 100K BeadChip®)).

75.     Based on technical and manufacturing issues, Affymetrix' 500K

GeneChip® was not yet ready to be commercially launched at that time.

76.     It is widely known that Affymetrix has experienced technical issues with

its 500K chip that have caused it to fall short of Affymetrix's technical expectations for this chip.

(*See* Ex. 52 (Piper Jaffray report), at 1 (identifying specific technical problems that Affymetrix's

500K chip is experiencing).

77.

# REDACTED

22

REDACTED

78.

REDACTED

REDACTED

E.

79.

REDACTED

80.

REDACTED

---

[9] A substantial cost for customers seeking to conduct experiments using DNA microarrays is the purchase of an instrument, such as Illumina's BeadStation®, on which to conduct the DNA microarray experiment.

23

REDACTED

REDACTED

81.

REDACTED

F.     To maintain its market dominance and to interfere with Illumina's ability to compete, Affymetrix formed business relationships with competitors to compete against Illumina.

82.     Affymetrix collaborated with its competitors in an attempt to interfere with Illumina's sales and to diminish competition.

1.     Affymetrix collaborated with, and later acquired, ParAllele to compete against Illumina for genotyping services projects.

83.     ParAllele Biosciences was a company that provided genotyping services.

84.     REDACTED

85.     REDACTED

24

86.    On October 24, 2005, Affymetrix announced that it had acquired ParAllele (*See* Ex. 56 (10/24/2005 press release.).

87.    REDACTED

2.    **Affymetrix collaborated with Perlegen to compete with Illumina for genotyping services projects.**

88.    REDACTED

89.    REDACTED

90.    REDACTED

**G.    To maintain its market dominance, Affymetrix has entered into restrictive and exclusionary contracts that have impeded competition.**

91.    Affymetrix has negotiated agreements under which the party contracting with Affymetrix may be limited from doing business with Affymetrix's competitors, such as Illumina.

**1.    Affymetrix's contract with Gene Logic limited Gene Logic's ability to conduct business with Illumina.**

92.    Gene Logic Inc. is a services-based company that offers genomic services to assist drug developers in the development and analysis of pharmaceuticals.

93.

REDACTED

94.

REDACTED

95.

REDACTED

26

96.     REDACTED

97.     REDACTED

        REDACTED

98.

**2.**     REDACTED

99.     REDACTED

100.    REDACTED

101.    REDACTED

102.

        REDACTED

103.    REDACTED

104.

REDACTED

105.

REDACTED

106.

REDACTED

107.

REDACTED

**H.    To interfere with Illumina's ability to compete, Affymetrix has misappropriated and used Illumina's confidential information.**

108.

REDACTED

109.

REDACTED

110.

REDACTED

111.

REDACTED

112.            REDACTED

113.

            REDACTED

114.            REDACTED

115.            REDACTED

---
10

        REDACTED

116.                    REDACTED


117.            REDACTED


118.            REDACTED


**I.     To impede Illumina's ability to compete, Affymetrix has asserted patents that it knows are unenforceable against Illumina.**

119.    In June 2004, Affymetrix initiated this lawsuit against Illumina alleging infringement of six patents.  (D.I. 1).  Subsequently, Affymetrix dismissed with prejudice one of the asserted patents.  (D.I. 266).

---

11              REDACTED


12              REDACTED

120.    Affymetrix does not seek summary judgment to dismiss Illumina's anticompetitive allegation that Affymetrix has asserted patents against Illumina that it knows to be unenforceable.  So as not to burden the Court with evidence relating to this allegation, Illumina refers the Court to, and hereby incorporates by reference herein, its factual allegations as stated in Illumina's First Amended Answer and Counterclaims regarding its unenforceability allegations for each of the asserted patents.  (*See* D.I. 217).

121.    Affymetrix was a party to, and had knowledge of, the fraud committed to obtain these patents.  (*See id.*)  Accordingly, as one facet of its scheme to impede Illumina's ability to compete, Affymetrix knowingly asserted unenforceable patents against Illumina, thereby raising Illumina's barrier to entry of the DNA microarray market.

**IV.    Illumina Has Been Economically Harmed By Affymetrix's Scheme To Eradicate Illumina As A Competitor.**

122.    Affymetrix's scheme to eradicate Illumina as a competitor has caused Illumina economic harm.  For instance, Illumina has been directly impacted through cancellation of the sales contract that it consummated with  .    and the additional resources that Illumina expended to ensure the    sales contract was not canceled.

# REDACTED

123.    Illumina has had to expend resources to combat the false and misleading statements, of which it is aware, that Affymetrix has made regarding it and its products.  (*See id.*)  Moreover, it is impossible for Illumina to gauge the full scope of the economic harm to it based on Affymetrix's scheme to disseminate false and misleading information because Illumina is not fully aware of all customers to whom Affymetrix disseminated this information and the full impact that these statements have had on prospective customers.  (*See id.*, at 366:4-367:12).

124.    In addition, Affymetrix's scheme has unlawfully slowed Illumina's entry into the genotyping and gene expression markets, and its market penetration would be much deeper. For instance, in gene expression, Illumina has fallen short of its sales expectations. (*See* Ex. 8 (Flatley Dep.), at 223:16-224:8). In addition, as a function of Affymetrix's scheme, Illumina has lost sales to Affymetrix, such as the WTCCC transaction, in genotyping. (*See* Ex. 39 (Orpin 30(b)(6) Dep.), at 106:21-107:20 (testifying about list of sales that Illumina lost to Affymetrix)).

## CONCLUSION

Affymetrix has engaged in a comprehensive scheme of unfair competition intended to strengthen its market dominance and to eradicate Illumina as a competitor. Contrary to Affymetrix's request, the facets of Affymetrix's anticompetitive scheme cannot be parsed and analyzed independently, but must be scrutinized as a whole. Given the many genuine issues of material fact that exist with respect to Affymetrix's scheme, the Court need not entertain full briefing to conclude that it must deny Affymetrix's summary judgment motion to strike portions of Illumina's claims under the UCL and common law tortious interference.

33

Dated:  July 28, 2006

Richard K. Herrmann (#405)
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 198016
(302) 888 6800
rherrmann@morrisjames.com

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861 2000

*Attorneys for Illumina, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2006, I caused to be electronically filed the foregoing document, **REDACTED VERSION OF ILLUMINA'S COUNTER-STATEMENT OF CONTESTED FACTS IN OPPOSITION TO AFFYMETRIX, INC.'S MOTION FOR SUMMARY JUDGMENT OF ILLUMINA'S COUNTERCLAIM OF INTENTIONAL INTERFERENCE WITH ACTUAL AND PROSPECTIVE ECONOMIC ADVANTAGE AND PORTIONS OF ILLUMINA'S COUNTERCLAIM FOR UNFAIR BUSINESS PRACTICES**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Jack B. Blumenfeld, Esq.
> Mary Ellen Noreika, Esq.
> Morris Nichols Arsht & Tunnell
> 1201 Market Street
> Wilmington, DE 19801

Additionally, I hereby certify that on this 17th day of August, 2006, the foregoing document was served via email on the following non-registered participant:

> Daniel R. Reed, Esq.
> Affymetrix, Inc.
> 6550 Vallejo Street, Suite 100
> Emeryville, CA 94618
> 510.428.8500

By:_____*/s/ Richard K. Herrmann*____
Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com