## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AFFYMETRIX, INC., a Delaware corporation,

    Plaintiff/Counter-Defendant,

v.

ILLUMINA, INC., a Delaware corporation,

    Defendant/Counter-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.:  04-901 JJF

**PUBLIC VERSION**

---

## ILLUMINA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MATTHEW LYNDE AS IT RELATES TO LOST PROFITS

Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Illumina, Inc.*

Original filed:  February 13, 2007
Public version filed:  February 21, 2007

# TABLE OF CONTENTS

I.      DR. LYNDE'S FLAWED LOST PROFITS ANALYSIS ................................................ 3

II.     THE TRIAL COURT'S OBLIGATION TO EXCLUDE UNRELIABLE
        AND/OR UNSUPPORTED EXPERT OPINIONS ........................................................ 4

III.    DR. LYNDE'S LOST PROFITS TESTIMONY IS SPECULATIVE,
        UNSUPPORTED, UNRELIABLE, AND SHOULD BE EXCLUDED. ......................... 6

        A.      Dr. Lynde's Testimony is Premised On An Erroneous And
                Unsupported Assumption. ........................................................................ 7

        B.      Dr. Lynde's Application Of His Flawed Method Results In
                Economic Inconsistencies That Dr. Lynde Cannot Reconcile. ............................. 8

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Altschuler v. University of Pennsylvania School of Law,*
    201 F.3d 430, No. 99-7423, 1999 WL 1314734  (2d Cir. Dec. 27, 1999) ................9

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
    377 U.S. 476 (1964) .........................................................................................6

*BIC Leisure Products, Inc. v. Windsurfing Int'l., Inc.,*
    1 F.3d 1214 (Fed. Cir. 1993) .......................................................................4, 8

*Boucher v. Suzuki Motor Corp.,*
    73 F.3d 18 (2d Cir. 1996) ...............................................................................3

*Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l., Inc.,*
    246 F. 3d 1336 (Fed. Cir. 2001) ..................................................................4, 5

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ............................................................................. passim

*Del Mar Avionics Inc. v. Quinton Instrument Co.,*
    836 F.2d 1320 (Fed. Cir. 1987) .......................................................................5

*Eaton Corp. v. Parker-Hannifin Corp.,*
    292 F. Supp. 2d 555 (D. Del. 2003) ................................................................6

*Elcock v. Kmart Corp.,*
    233 F.3d 734 (3d Cir. 2000) ...........................................................................6

*Glaxo Group Ltd. v. Ranbaxy Pharms., Inc.,*
    262 F.3d 1333 (Fed. Cir. 2001) ......................................................................6

*Hanson v. Alpine Valley Ski Area, Inc.,*
    718 F.2d 1075 (Fed. Cir. 1983) .......................................................................2

*Hebert v. Lisle Corp.,*
    99 F.3d 1109 (Fed. Cir. 1996) ........................................................................5

*Kearns v. Chrysler Corp.,*
    32 F.3d 1541 (Fed. Cir. 1994) ........................................................................2

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) .......................................................................................5

*KW Plastics v. United States Can Co.,*
    131 F. Supp. 2d 1289 (N.D. Ala. 2001) .........................................................10

*Mercedes Benz U.S.A. LLC v. Coast Auto. Group, Ltd.,*
    No. 99 3121, 2006 WL 2830962 (D.N.J. Sep. 29, 2006)...........................................5

*Oiness v. Walgreen Co.,*
    88 F.3d 1025 (Fed. Cir. 1996)...................................................................10

*Paper Converting Machine Co. v. Magna Graphics,*
    745 F.2d 11 (Fed. Cir. 1984)......................................................................8

*Rite-Hite Corp. v. Kelley Co., Inc.,*
    56 F.3d 1538 (Fed. Cir. 1995)....................................................................6

*Standard Havens Prods. v. Gencor Indus., Inc.,*
    953 F.2d 1350 (Fed. Cir. 1991)..................................................................2

*State Industries, Inc. v. Mor-Flo Industries, Inc.,*
    883 F.2d 1573 (Fed. Cir. 1989)..................................................................4

**Rules**

Fed. R. of Evid. 702 ............................................................................6, 10

Illumina respectfully requests that the Court exclude the testimony and opinions of Affymetrix expert Dr. Matthew R. Lynde concerning lost profits.[1]    A fundamental prerequisite for proof of lost profits damages is that the patentee identify what it would have sold "but for" the alleged infringement, and then quantify its lost profits based on these "but for" sales.  Dr. Lynde has not done so.

Dr. Lynde's analysis wholly fails to address what sales Affymetrix would have made "but for" Illumina's infringement.

## REDACTED

This is precisely the type of unreliable and speculative expert opinion that must be excluded pursuant to *Daubert*.  *See Daubert*, 509 U.S. at 597 (holding that the Federal Rules require that the trial judge ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.").

This problem does not merely go to the weight of Dr. Lynde's lost profits testimony.  Rather, it is a fundamental flaw that precludes this testimony.  Allowing Dr. Lynde to present an illusory lost profits analysis assures jury confusion and reliance on an unsupportable analysis, and also greatly prejudices Illumina by precluding any meaningful challenge to Affymetrix's lost profits argument.  Had Dr. Lynde actually done a proper

---

[1] This motion seeks to exclude Dr. Lynde's testimony and opinions only as to lost profits, and does not seek to exclude Dr. Lynde's testimony otherwise.

analysis and identified specific products that he asserts Affymetrix would have sold "but for" Illumina's alleged infringement, then Illumina could show that Affymetrix cannot meet its burden of proof on the other *Panduit* factors (*e.g.*, capacity, demand) for such products. Illumina's prejudice is not theoretical.

## REDACTED

[2]

Arguing that Illumina and Affymetrix are competitors, and that some unspecified Affymetrix products might be substitutable for some Illumina products in certain circumstances, is not evidence of lost sales. Dr. Lynde cannot be allowed to forego the requisite analysis of identifying what sales Affymetrix would have made upon which to base a lost profits case.

To be clear, Illumina is ***not*** seeking to strike Dr. Lynde's other testimony -- this motion relates only to his opinions on lost profits. Dr. Lynde has an alternative reasonable royalty theory **REDACTED**, and this motion does not seek to strike those opinions.[3]                     **REDACTED**

it would result in a damages award that is speculative and unsupported by any accepted economic theory, is unreliable, unhelpful to a jury, and severely prejudicial to Illumina. Accordingly, the jury should not be presented with Dr. Lynde's unsupported lost

---

[2] *See Standard Havens Prods. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) (acknowledging that "the mere existence of a competing device does not necessarily make that device an acceptable substitute").

[3] Where the patentee cannot meet its burden of proving lost profit damages, the proper measure of damages is a reasonable royalty. *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1552 (Fed. Cir. 1994) (holding that where a patent owner has failed to prove lost profits, damages would be determined on the basis of a reasonable royalty); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) ("If actual damages cannot be ascertained, then a reasonable royalty must be determined.")

profits analysis. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (holding that it is proper to exclude expert opinions that are "speculative or conjectural, or if it is based on assumptions that are 'so unreasonable and contradictory as to suggest bad faith.'") (internal citations omitted).

## I.   DR. LYNDE'S FLAWED LOST PROFITS ANALYSIS

**REDACTED**

---

[4]     **REDACTED**

[5]     **REDACTED**

3

**REDACTED**

Dr. Lynde's testimony is also fraught with logical

inconsistencies that cannot be reconciled (see, *infra*).

## II. THE TRIAL COURT'S OBLIGATION TO EXCLUDE UNRELIABLE AND/OR UNSUPPORTED EXPERT OPINIONS

It is the duty of the trial court judge to ensure that unreliable or unhelpful expert

testimony does not reach the jury.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

---

[6]     **REDACTED**

[7]     **REDACTED**

This approach has been rejected by the Federal Circuit, explaining that a lost profits analysis *must* include an analysis of the products' price and product characteristics -- and thus substitutability -- even if a market share analysis is applied.  *See BIC Leisure Prods., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) (holding that the *Mor-Flo* analysis allows a patentee to establish the second *Panduit* factor based upon market share information, but only if the patentee has *first* demonstrated that the patentee's and the accused infringer's products have been shown to be sufficiently similar in terms of price and product characteristics to be substitutable); *accord Crystal Semiconductor,* 246 F.3d at 1356 (holding that reliance on the market share concept requires that the patentee first conduct an analysis of the products' price and product characteristics.)

4

579, 579-80, 594 (1993) (holding that the trial judge has the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding that the Court's obligation in this regard applies to testimony based on technical or other specialized knowledge and that "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline."). Without this gatekeeping function, such unreliable and irrelevant testimony will confuse the jury and cause undue prejudice to Illumina. *See Daubert*, 509 U.S. at 595 (noting that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.").

It is well established that patent damage awards must not be "based upon the patentee's speculation or optimism, but must be established by evidence." *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996) (noting that "damage awards cannot be based on speculation"); *accord Del Mar Avionics Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) (noting that "liability does not extend to speculative profits."). The burden rests on Affymetrix to provide *evidence* that demonstrates to a reasonable probability that "but for" the infringing activity, it would have made the specific additional sales. *Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l., Inc.*, 246 F. 3d 1336, 1353 (Fed. Cir. 2001). And Affymetrix has the burden to demonstrate that Dr. Lynde's opinions will be useful to the jury and are reliable.[8] *See Daubert*, 509 U.S. at 592;

---

[8] *See* Fed. R. Evid. 702; *see also Mercedes Benz U.S.A. LLC v. Coast Auto. Group, Ltd.*, No. 99 3121, 2006 WL 2830962, at *10 (D.N.J. Sep. 29, 2006) (noting that, to meet the requirement for reliability, the Third Circuit has required testimony "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, *Daubert*

5

*Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 567 (D. Del. 2003).  To be useful, testimony as to lost profits must address the sales and profits *of the patentee* that were lost because of the infringement.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (holding "[t]he question to be asked in determining damages is …'had the infringer not infringed, what would the Patent Holder … have made?'"); *accord Glaxo Group Ltd. v. Ranbaxy Pharms., Inc.*, 262 F.3d 1333, 1339 (Fed. Cir. 2001) (holding that "patent damages are not paid for a total amount of lost sales.  Rather, if [defendant] were somehow found liable for infringement of the [asserted] patent, it would owe [the patentee] either a reasonable royalty or lost profits on [the patentee's] lost sales."); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (holding "the general rule for determining actual damages to a patentee … is to determine the sales and profits lost to the patentee because of the infringement.").

Because Dr. Lynde's lost profits testimony is neither reliable nor useful, it must be excluded.  *See Elcock v. Kmart Corp.*, 233 F.3d 734, 754-56 (3d Cir. 2000) (concluding that expert testimony on lost future earnings should have been excluded because the expert's economic model relied on assumptions wholly without foundation in the record).

## III. DR. LYNDE'S LOST PROFITS TESTIMONY IS SPECULATIVE, UNSUPPORTED, UNRELIABLE, AND SHOULD BE EXCLUDED.

## REDACTED

Dr. Lynde compounds this speculation through his application of this presumption resulting in cumulative errors and rendering his

---

holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity.").

lost profits testimony wholly unreliable.  Dr. Lynde's unsupported presumption can result only in a speculative theory of lost profit damages.

A.    **Dr. Lynde's Testimony is Premised On An Erroneous And Unsupported Assumption.**

**REDACTED**

_____

9

**REDACTED**

10    **REDACTED**

**REDACTED**

his testimony is irrelevant and is not *evidence* of

*Affymetrix's* lost profits on those products "but-for" Illumina's accused infringing sales.

**B.    Dr. Lynde's Application Of His Flawed Method Results In Economic Inconsistencies That Dr. Lynde Cannot Reconcile.**

The only appropriate measure of any Affymetrix lost profits would be the amount that Affymetrix proves with reasonable probability it would have actually netted from substitute sales. *Paper Converting Mach. Co. v. Magna Graphics*, 745 F.2d 11, 23 (Fed. Cir. 1984).

**REDACTED**

Not surprisingly,

Dr. Lynde provides no evidence that his application has been tested, subjected to peer

---

**REDACTED**

11    **REDACTED**

12    **REDACTED**

*See BIC Leisure Prods.*, 1 F.3d at 1219 ("If the products are not sufficiently similar to compete in the same market for the same customers, the infringer's customers would not necessarily transfer their demand to the patent owner's product in the absence of the infringer's product. In such circumstances, as in this case, the first *Panduit* factor does not operate to satisfy the elemental 'but for' test.").

review or publication, or accepted within the economic community. *See Daubert*, 509 U.S. at 593-94 (citing each of these considerations as relevant to the trial court's determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.").

**REDACTED**

Because Dr. Lynde's premise is based on an illogical foundational assumption, its application results in flaws and speculation. [13]  Such speculation should not be allowed to reach the jury. *Altschuler v. Univ. of Pennsylvania Sch. of Law*, No. 99-7423, 1999 WL

---

[13]    **REDACTED**

                                        Thus, Dr. Lynde's premise does not apply.  In the "but-for" world, Affymetrix's claimed revenue must be earned through sales of Affymetrix's products at Affymetrix's prices.
                              **REDACTED**

1314734, at *2 (2d Cir. Dec. 27, 1999) (holding that district court properly exercised its gatekeeping authority in excluding expert based on a finding that his report concerning hiring practices was "junk" and was therefore not reliable evidence); *see also KW Plastics v. United States Can Co.*, 131 F. Supp. 2d 1289, 1292 (N.D. Ala. 2001) (citing the advisory committee notes for Fed. R. Evid. 702, "the trial court's gatekeeping function requires more than simply taking the expert's word for it" and noting that experts may not justify their analysis based only upon their own subjective beliefs). Thus, Dr. Lynde's opinions concerning lost profits ***cannot*** assist the trier of fact in reaching any reasonable or reliable conclusion on the proper measure of lost profits. *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996) (finding error in jury award of lost profits where patentee's analysis "adds vague estimation and gross extrapolation to unsupported presumption" and noting that "[a]t every step, this damages calculation is fraught with speculation.").

## CONCLUSION

For the reasons set forth above, Illumina respectfully requests that the Court exclude the testimony of Matthew R. Lynde as it relates to lost profits in this matter.

Dated: February 13, 2007

Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Illumina, Inc.*

11

# EXHIBITS   A to C REDACTED IN THEIR ENTIRETY

# EXHIBIT  D

Westlaw.

201 F.3d 430                                                                                                    Page 1
201 F.3d 430, 1999 WL 1314734 (C.A.2 (N.Y.))
**(Cite as: 201 F.3d 430)**

▷
Briefs and Other Related Documents

Altschuler v. University of Pennsylvania School of Law.C.A.2 (N.Y.),1999.NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA2 s 0.23 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Second Circuit.
HOWARD ALTSCHULER, Plaintiff-Appellant,
v.
UNIVERSITY OF PENNSYLVANIA SCHOOL OF LAW, Trustees of the University of Pennsylvania, University of Pennsylvania, Elizabeth Slusser Kelly, as Professor of Law and Director of the University of Pennsylvania School of Law Legal Writing Program and individually, Colin Diver, as Dean of the University of Pennsylvania School of Law and individually, Judith Rodin, Dr., as President of the University of Pennsylvania and individually, JOHN DOES, in their capacities as employees and/or agents of the University of Pennsylvania and individually, Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone P.C., Jane Does, in their capacities as employees and/or agents of Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone P.C. and individually, Defendants-Appellees.
**No. 99-7423.**

Dec. 27, 1999.

Appeal from the United States District Court for the Southern District of New York, Stanton, Judge.

Howard A. Altschuler, Haworth, NJ, pro se.
Arthur M. Toback, Toback, Hyman & Bernstein, New York, NY, for defendants-appellees affiliated with the University of Pennsylvania.
Abbott S. Brown, Brown & Gold, South Orange, NJ, for defendant-appellee Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C.

Present WINTER, Chief Judge, PARKER and SOTOMAYOR, Circuit Judges.

**\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

**\*1** Howard Altschuler appeals from Judge Stanton's dismissal of his claims and from certain collateral evidentiary rulings. He argues that the district court erred in: (i) holding there was no evidence from which a reasonable jury could find that attorneys at Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. ("Brach Eichler") abused their conditional privilege to publish an allegedly defamatory statement about appellant; (ii) ruling that Brach Eichler's failure to deny a statement in a letter from appellant was not an adoptive admission that Brach Eichler knew the statement was false; (iii) precluding the testimony of an expert witness proffered by appellant; (iv) not sanctioning Brach Eichler by drawing an adverse inference from its destruction of certain telephone records and its failure to apprise appellant that one of Brach Eichler's partners had left the firm; (v) dismissing his breach of contract claims against the University of Pennsylvania School of Law; and (vi) dismissing his Section 1983 claim based on the Law School's alleged violation of the Family Educational Records and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. We affirm.

**\*1** We review de novo a district court order granting judgment as a matter of law under Fed.R.Civ.P. 50(a) and will affirm such orders if no reasonable trier could return a verdict for the non-movant. See Norville v. Staten Island Univ. Hosp., ___ F.3d ___, No. 98-9583, 1999 WL 996945, at \*2 (2d Cir. Nov. 2, 1999). The parties do not contest the district court's ruling that New Jersey law applies to appellant's defamation claim. Appellant also does not dispute that Brach Eichler's intra-firm publication of the allegedly defamatory statement-that appellant had been subject to discipline while at the Law School-is protected by a conditional privilege. Appellant argues, however, that the district court erred in ruling that, as a matter of law, Brach Eichler did not abuse that privilege. Under New Jersey law, the conditional privilege is abused when, inter alia, the holder of the privilege publishes a defamatory statement in an excessive manner or makes it with either actual knowledge of, or reckless disregard for, its falsity. See Bainhauer v. Manoukian, 520 A.2d 1154, 1172-73 (N.J.Super.Ct.App.Div.1987). To overcome a conditional privilege defense to a defamation claim, a plaintiff must show abuse of the privilege by clear and convincing evidence. See Erickson v. Marsh &

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 430                                                                Page 2
201 F.3d 430, 1999 WL 1314734 (C.A.2 (N.Y.))
(Cite as: 201 F.3d 430)

_McLennan Co., 569 A.2d 793, 806 (N.J.1990)._

**\*1** Having carefully reviewed the record, we hold that there is no evidence from which a reasonable jury could conclude by any standard of proof that Brach Eichler abused its conditional privilege. No duty existed requiring any Brach Eichler attorney to investigate further the information it received and published internally. And, there was no evidence that any Brach Eichler attorney either knew or recklessly disregarded that the statement at issue was false. And that Brach Eichler may have published it to two partners who interviewed appellant but worked in a department of the firm with no hiring needs cannot support a finding of excessive publication by clear and convincing evidence. These partners clearly had the requisite common interest in appellant's qualifications to work at their firm so that publication of the statement to them was privileged. _See Coleman v. Newark Morning Ledger Co., 149 A.2d 193, 203 (N.J.1959)_ ("A communication made [b]ona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable ....") (internal quotation marks omitted); _Restatement (Second) of Torts § 596_ cmt. c (1977) ( "The [conditional privilege] rule is based on the fact that one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them. This interest in their common affairs entitles him to information y(3)27 that affects the common interest[ ] even though he is not personally concerned...."). Accordingly, we affirm the district court's order granting Brach Eichler judgment as a matter of law on appellant's defamation claim.

**\*2** We also hold that the district court did not abuse its discretion in making certain evidentiary rulings relating to whether Brach Eichler was protected by the conditional privilege. Brach Eichler's failure to respond to appellant's letter denying that he was subject to discipline at the Law School does not evidence that Brach Eichler knew the alleged defamatory statement was false. In the circumstances, no employer would naturally have denied the truth of this statement by a jilted applicant; the firm's silence in the face of appellant's letter is therefore of no probative value. _See United States v. Hale, 422 U.S. 171, 176 (1975)_ ("Failure to contest an assertion ... is considered evidence of acquiescence only if it would have been natural under the circumstances to object

to the assertion in question."). The district court also properly exercised its gatekeeping authority in excluding the proffered expert-a former director of personnel-based on a finding that his report concerning hiring practices was "junk" and was therefore not reliable evidence of whether Brach Eichler recklessly disregarded the falsity of a third-party's statement that appellant was subject to discipline at the Law School. _See Kumho Tire Co. v. Carmichael, 119 S.Ct. 1167, 1171 (1999)_ (holding that district court has "broad latitude" to determine whether non-scientific expert testimony is sufficiently reliable to be admissible). Finally, the district court properly declined to sanction Brach Eichler with an adverse inference due to the spoliation of certain evidence because there was no showing that Brach Eichler destroyed or suppressed relevant evidence in bad faith. _See Aramburu v. Boeing Co., 112 F.3d 1398, 1407 (10th Cir.1997)_ (applying the "general rule" that adverse inference from spoliation must be predicated on bad faith of party alleged to have destroyed or suppressed evidence). The telephone records that appellant sought as evidence were destroyed before the firm had notice that this litigation was likely to be commenced. And Brach Eichler had no duty, absent a discovery request, to apprise appellant that the partner who told appellant he would not be hired had left the firm.

**\*2** We also affirm the orders dismissing appellant's claims against the Law School. As to the breach of contract claims, we affirm for substantially the reasons stated by the district court. _See Altschuler v. University of Pennsylvania Law Sch.,_ No. 95 Civ. 249, _1997 WL 129394,_ at \*4-\*7 (S.D.N.Y. Mar. 21, 1997). As to appellant's Section 1983 claim, we affirm on the ground that the Law School, a private entity, is not a state actor subject to Section 1983 liability for failing to comply with FERPA. _See Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir.1996); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 937-38 (1982)._

**\*2** We therefore affirm.

C.A.2 (N.Y.),1999.
Altschuler v. University of Pennsylvania School of Law
201 F.3d 430, 1999 WL 1314734 (C.A.2 (N.Y.))

Briefs and Other Related Documents (Back to top)

• 2000 WL 34467284 (Appellate Petition, Motion and Filing) Petition for Rehearing (Jan. 16, 2000)
• 99-7423 (Docket) (Apr. 16, 1999)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

201 F.3d 430                                                                    Page 3
201 F.3d 430, 1999 WL 1314734 (C.A.2 (N.Y.))
**(Cite as: 201 F.3d 430)**


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   E



Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

**H**

Briefs and Other Related Documents

Mercedes-Benz, U.S.A. LLC v. Coast Automotive Group, Ltd.D.N.J.,2006.
United States District Court,D. New Jersey.
MERCEDES-BENZ U.S.A LLC,
Plaintiff/Counterclaim Defendant,
v.
COAST AUTOMOTIVE GROUP, LTD., and
Tamim Shansab, Defendants/Counterclaimants/Third
Party Plaintiffs,
v.
David Michael Motor Cars Corp., Ray Cantena
Motor Cars Corp., and Contemporary Motorcars,
Inc., Third Party Defendants.
Civil Action No. 99-3121 (WHW).

Sept. 29, 2006.

Michael S. Waters, Mcelroy, Deutsch, Mulvaney & Carpenter, LLP, Newark, NJ, for Plaintiff/Counterclaim Defendant.
Richard Samuel Mazawey, Law Offices of Richard Mazawey, Clifton, NJ, William T. Connell, Dwyer, Connell & Lisbona, Esqs., Fairfield, NJ, Craig S. Hilliard, Stark & Stark, PC, Princeton, NJ, for Defendants/Counterclaimants/Third Party Plaintiffs.
George R. Hirsch, Bressler, Amery & Ross, PC, Florham Park, NJ, Robert C. Chapin, Pollock, Montgomery & Chapin, PC, Bedminster, NJ, David S. Stone, Boies, Schiller & Flexner, LLP., Short Hills, NJ, Martin G. Margolis, The Margolis Law Firm, P.A., Verona, NJ, Christopher Iannicelli, Morgan, Lewis & Bockius, LLP, Princeton, NJ, Peter A. Efros, Efros & Wopat, Red Bank, NJ, Richard M. Pescatore, Vineland, NJ, for Third Party Defendants.
Geofrey James Hill, Park Ridge, NJ, for Defendants/Third Party Plaintiffs/Third Party Defendants.

**OPINION**

WALLS, Senior District Judge.
*1 This Opinion addresses motions by (1) plaintiff Mercedes-Benz USA ("MBUSA" or "plaintiff") for partial summary judgment and to exclude the expert testimony of Howard M. Markovitz ("Markovitz") and John A. Del Roccili ("Del                                    Roccili"),                         (2) defendants/counterclaimants/third-party plaintiffs Coast Automotive Group Ltd. ("Coast") and Tamim

Shansab ("Shansab") (collectively "Coast defendants") for partial summary judgment on their counterclaims, summary judgment on MBUSA's Amended Complaint and to exclude the expert testimony of Albert Parziale, and (3) third-party defendants David Michael Motor Car Corp. ("David Michael") and Contemporary Motor Cars, Inc. ("Contemporary") for summary judgment on Coast defendants' counterclaims that relate to them.

**FACTS AND PROCEDURAL BACKGROUND**

*1 The procedural history of this case is, to put it mildly, complex. Specifically, this litigation concerns the validity of the termination, by MBUSA, of the Mercedes Benz franchise held by Coast. Coast was an MBUSA dealer located in Toms River, New Jersey; Shansab is the owner operator of the dealership. In addition to Mercedes-Benz automobiles, Coast acted as a dual franchise with Porshe, Audi and Volkswagen.[FN1] (See Certification of Raymond Dupell (hereinafter "Dupell Cert."), Ex. F.) A franchise between Coast and MBUSA was created by Dealer Agreement on January 1, 1992. As part of the Dealer Agreement, MBUSA reserved the right to unilaterally terminate the agreement and the license of the trademarks thereunder, if Coast failed to meet certain contractual obligations. MBUSA contends that its termination of the franchise agreement was justified because Coast: (1) made fraudulent misrepresentations in its application to enter into an agreement, concealment of the existence of foreign investors, (2) failed to maintain floor plan financing with an acceptable financial institution, (3) failed to comply with working capital and other financial requirements of the agreement, and (4) failed to comply with facility requirements. MBUSA sent notice of termination to Coast on June 10, 1999, and fearful that Coast would not voluntarily comply with the termination, MBUSA filed this complaint, later amended to add Count Three, seeking an injunction for Coast's alleged dilution of MBUSA's federal trademark by not using the proper designated indicia of the mark, such as signs, literature and other visible indicia of the mark pursuant to 15 U.S.C. § 1125(c) (Count One), seeking an injunction for Coast's alleged false designation of origin and false or misleading description of goods and services following the termination of the franchise agreement pursuant to 15

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

U.S.C. § 1125(a) (Count Two), and seeking rescission of the Dealer Agreement and damages based on Coast's fraud in the inducement of the franchise agreement (Count Three).

> FN1. Dualing is a common practice among automobile franchisees involving the sale of two or more different vehicle lines from the same location. *See General Motors Corp. v. New A.C. Chevrolet, Inc.*, 91 F.Supp.2d 733, 736 n. 1 (D.N.J.2000).

*1 In response to MBUSA's Amended Complaint, Coast defendants filed counterclaims alleging a violation of the New Jersey Franchise Practices Act ("NJFPA") (Count One), breach of contract (Count Two), breach of the implied covenant of good faith and fair dealing (Count Three) and violation of the Automobile Dealer's Day in Court Act ("FDDCA") (Count Four). Coast defendants later amended their counterclaim and added third-party defendants David Michael, Contemporary, and Ray Cantena Motor Cars Corp. ("Ray Cantena"). The amended counterclaim added a single new count against MBUSA for violation of the Sherman and Clayton Acts (Count Five) and added claims against MBUSA and third-party defendants for common law restraint of trade (Count Six), tortuous interference with prospective economic advantage (Count Seven), tortuous interference with contract (Count Eight), unfair competition (Count Nine), and violation of the New Jersey Antitrust Act (Count Ten).

*2 Initially, MBUSA's Amended Complaint was assigned to the Hon. Mary L. Cooper in the Trenton vicinage, who entered an order on September 13, 1999, preliminarily enjoining Coast from any further use of the Mercedes-Benz trademark. In entering the preliminary injunction, Judge Cooper declined to enter such relief as to Count One, the dilution claim, because there was no irreparable harm to plaintiff given that the franchise was due to be terminated and the problem of dilution would be mooted by this action. On Count Two, the likelihood of confusion argument, Judge Cooper noted that granting the injunction depended on the validity of the termination of the franchise. Judge Cooper discussed the fact that notice of termination by MBUSA was provided to Coast, and thus upon termination, a preliminary injunction preventing Coast's use of MBUSA trademarks was appropriate. Judge Cooper's preliminary injunction was upheld by the Third Circuit in an unpublished opinion issued on June 5, 2001. Following Judge Cooper's issuance of the

preliminary injunction, the case was transferred to the Hon. Alfred M. Wolin in the Newark vicinage on December 28, 2000. On March 20, 2001, the Court ordered that this matter and the class action lawsuit, *In re Mercedes-Benz Antitrust Litig.*, 99-cv-4311, be consolidated for discovery purposes. The consolidation of these cases was based primarily on defendants' counterclaim involving allegations of Sherman and Clayton Act violations on the part of MBUSA, claims which are central to the pending class action. Indeed, Shansab provided significant testimony relating to the alleged antitrust violations. *See In re Mercedes-Benz Antitrust Litigation*, 2006 WL 2129100, at * 12 (D.N.J. July 26, 2006).

*2 On August 1, 2005, the parties filed respective motions for summary judgment. Specifically, MBUSA filed a motion for summary judgment on Count Two of its Amended Complaint and for summary judgment on all of the Coast defendants' counterclaims. Related to this motion, MBUSA sought to strike the testimony and opinions of Howard M. Markovitz ("Markovitz") and John A. Del Roccili ("Del Roccili"). The testimony of Markovitz and Del Roccili is necessary to aid in calculating damages resulting from conduct involving discriminatory automobile allocation alleged in the Coast defendants' counterclaims. Coast defendants have also made several motions seeking summary judgment on (1) Counts One and Two of their counterclaim alleging breach of contract and violation of the NJFPA, and (2) MBUSA's Amended Complaint in its entirety. Related to their summary judgment motions, the Coast defendants also seek to strike the testimony and report of Albert Parziale. Mr. Parziale's testimony addresses issues regarding the financial operation and records of Coast that ultimately relate to the termination of the Coast franchise. Finally, both David Michael and Contemporary have filed motions seeking summary judgment on the counterclaims alleged only against them. The Court will address each parties' motions in turn.

## SUMMARY JUDGMENT STANDARD

*3 Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 318 (1986).

**\*3** Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir.2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini,* 254 F.3d 476, 481 (3d Cir.2001). At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. In doing so, the Court must construe the facts and inferences in the light most favorable to the non-moving party. *Curley v. Klem,* 298 F.3d 271, 277 (3d Cir.2002).

## DISCUSSION

### I. MBUSA's Motions

**\*3** MBUSA seeks summary judgment on Count Two of its Amended Complaint, and on all of the Coast defendants' counterclaim. In addition, MBUSA moves to strike the testimony and reports of two of the Coast defendants' experts.

### A. Motion for Summary Judgment on Count Two of Amended Complaint

**\*3** MBUSA moves for summary judgment on Count Two of its Amended Complaint which seeks a permanent injunction for Coast's alleged false designation of origin and false or misleading description of goods and services following the termination of the Mercedes-Benz franchise agreement pursuant to 15 U.S.C. § 1125(a). As noted, Judge Cooper who was originally assigned this

case, entered a preliminary injunction against Coast's use of MBUSA's trademark following the termination of the franchise agreement. Judge Cooper noted that the granting of a preliminary injunction was dependant upon a proper termination of the franchise agreement. To secure the extraordinary relief of a preliminary injunction, MBUSA had to demonstrate that "(1) [it was] likely to succeed on the merits; (2) denial [would] result in irreparable harm; (3) granting the injunction [would] not result in irreparable harm to the defendant[s]; and (4) granting the injunction [was] in the public interest." *Maldonado v. Houston,* 157 F.3d 179, 184 (3d Cir.1998), *cert. denied,* 526 U.S. 1130 (1999) (as to a preliminary injunction). A plaintiff must establish that all four factors favor preliminary relief. *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187 (3d Cir.1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction. *See University of Texas v. Camenisch,* 451 U.S. 390, 392 (1981). Thus, plaintiff will succeed and the Court will grant a permanent injunction on Count Two of the Amended Complaint if plaintiff can demonstrate that termination of the franchise agreement was proper.

**\*4** To support its claim that termination of the franchise was proper, plaintiff alleges several failures to perform specific obligations under the franchise agreement. Plaintiff places heaviest reliance on alleged misrepresentations made by Shansab regarding the source of funds available to capitalize the dealership. The Application for Dealership Agreement and the Franchise Agreement, both signed by Shansab, provide that any such misrepresentations made with regard to the application for a dealership are proper grounds for termination of the Franchise Agreement. Plaintiff alleges that before termination of Coast's Franchise Agreement, it discovered that a portion of the funds that Coast claimed as capitalization for the dealership was actually encumbered loans from private investors,[FN2] in direct violation of the Franchise Agreement.[FN3] More importantly, plaintiff asserts that issue preclusion, or what is more formally known as collateral estoppel, precludes the Coast defendants from litigating the propriety of the franchise termination. Specifically, plaintiff points to a decision by Judge Garrett Brown (now Chief Judge) in *Coast Automotive Group, Ltd. v. VW Credit,* Civ. No 97-2601 (D.N.J. Oct. 30, 2002) (slip opinion). In *Coast,* Volkswagen brought suit against Coast seeking rescission of the Volkswagen Dealer Agreement on grounds identical

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

Page 4

to this case, namely that Coast had misrepresented the source and nature of its funding. The rescission claim was tried as a bench trial before Judge Brown. While Judge Brown entered judgment in favor of Coast and denied Volkswagen's claim for rescission based on Volkswagen's failure to prove scienter, the Court made detailed factual findings including that "the Court finds by clear and convincing evidence that the $2.5 million provided to Shansab by his Japanese friends was encumbered" and further that,

> FN2. Plaintiff claims it originally learned of the true nature of the source of the funds through Shansab's trial testimony in an unrelated case before Judge Cooper in which Shansab unsuccessfully alleged that Toyota had discriminated against him based on his race and national origin in not allowing him to acquire two Toyota dealerships. In that case, Shansab testified that:
> Q: Okay. And to Mercedes Benz you represented that you had in cash in the bank $2.39 million, is that right?
> A: That's correct.
> Q: That was money, money that had come from Japanese investors, right?
> A: That's correct.
> Q: Did you ever disclose the source of those funds to Mercedes-Benz?
> A: No, I did not.

> FN3. Section 15T(h) of the Franchise agreement allows for termination based on "[a]ny misrepresentation by Dealer or by any Dealer Operator or Owner in applying for this dealer Agreement, or regarding the source of funds or capitalization of Dealer."

*4 As stated, this Court finds that Tamim Shansab and Nasir Shansab misrepresented to [Volkswagen] that the $2.5 million they received from their Japanese friends and intended to invest in Coast through TSE was completely unencumbered. There is little doubt that this fact was material to the approval of the franchise applications. Likewise, the very fact and nature of the application indicates that the Shansabs obviously intended that the defendants rely on the information provided and that the defendants did in fact rely on it.
*4 (Certification of Michael S. Waters ("Waters Cert."), Ex. 12.) This decision was not appealed.

*4 In addition, Coast brought claims under the New Jersey Franchise Practices Act and the Automobile

Dealer's Day in Court Act which were tried before a jury which found in favor of Volkswagen based on Coast's violation of the Franchise Agreement. That jury verdict was upheld by the Third Circuit in an unpublished opinion. *See Coast Automotive Group, Ltd. v. VW Credit, Inc.,* 119 F. App'x. 419, 424-25 (3d Cir.2005) (hereinafter "*VW Credit* "). In upholding the jury's verdict, the Third Circuit found
*5 [W]e find the evidence is sufficient to support the verdict based on Coast's substantial noncompliance in materially misrepresenting its financial ability in the dealer application.... Here, Tamim Shansab and Nasir Shansab represented on the dealer application that their personal investments of $1.6 million and $400,000 respectively were unencumbered. Nowhere did they disclose that the money actually came from investors in Japan. In a separate agreement with these investors, Tamim Shansab agreed to repay $1.7 million and to grant the investors a beneficial ownership interest in the dealership. VOA/AOA relied on Shansab's representations of his financial ability and those representations were central to VOA/AOA's decision to grant the dealership to Coast. Shansab's failure to disclose that the money he promised was not his and that investors wholly unknown to VOA/AOA had an ownership interest in the dealership constituted a material breach of the express terms of the dealership application. Thus, the evidence was sufficient for the jury to find under § 56:10-9, that Coast failed to substantially comply with the franchise dealership application.

*5 *Id.*

*5 Based on these judicial determinations, MBUSA argues that Coast is collaterally estopped in this case from claiming that MBUSA's termination was improper. The doctrine of collateral estoppel, as applied by New Jersey courts, requires demonstration of these elements: (1) the issue presented in the earlier action was identical to the one raised in a later action; (2) there was a final judgment on the merits; (3) the party asserting the issue earlier is the same or is in privity with the party currently raising the issue; (4) the party was given a full and fair opportunity to litigate the issue; and (5) the determination of the issue was essential to the final judgment. *See Matter of the Estate of Dawson,* 136 N.J. 1, 20 (1994). Here, the Coast defendants claim that neither factual findings by either the Third Circuit or by the District Court were "essential" to the final judgments. Coast defendants argue that because the District Court found against Volkswagen its factual findings were therefore not essential to the ultimate decision and alternatively Coast defendants assert that because the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

Third Circuit noted an alternative basis to support the jury verdict on appeal, that its factual findings regarding the funding were technically not essential to the Circuit's affirmance of the jury verdict.

**\*5** The Court finds that the District Court's factual findings that were made in reference to Volkswagen's rescission motion were not essential to the court's ruling. The District Court ultimately determined that the plaintiff had failed to prove the requisite scienter requirement in order to grant the relief of rescission sought by the dealer. Ultimately, the issue of scienter was dispositive and related in no way to its factual holdings regarding the encumbered funding. As such, these findings could not be deemed essential for purposes of collateral estoppel.

**\*6** However, the Third Circuit's findings regarding the issue of improper funding are essential and are properly subject to application of collateral estoppel to bar Coast defendants from litigating the issue of whether the funding was proper. This Court has previously noted that alternative holdings are considered necessary to the final judgment and thus retain preclusive effect. *See McCendon v. The Continental Group, Inc.,* 660 F.Supp. 1553, 1561 (D.N.J.1987) (noting that "even if the holdings are considered as alternative grounds, the Restatement, generally adopted by the Third Circuit, states that alternative holdings on appeal are 'necessary' to judgment and therefore preclusive" (citations omitted)); *see also* Restatement (Second) of Judgments § 27, comment O (1982); *In re Dalkon Shield Punitive Damages Litig.,* 613 F.Supp. 1112, 1117 (E.D.Va.1985); 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4421 (2002). As such, this Court finds that plaintiff's termination of the franchise was proper, given preclusive effect of the Third Circuit's determination that the misrepresentations made by Shansab regarding the source of funds available to capitalize the dealership were in direct conflict with the performance obligations of the franchise agreement.

**\*6** Because plaintiff's claim for a permanent injunction is dependant on a determination that the termination was proper, the Court finds that since plaintiff's termination of the Coast franchise was proper, plaintiffs have demonstrated actual success on the merits to support the grant of a permanent injunction against Coast defendants regarding the use of the Mercedes-Benz trademark by defendants. The grant of injunctive relief is appropriate here and now to prevent the future use of the trademark by

defendants who, although they have long since discontinued their use of the trademark, continue to resist plaintiff's claim and indeed seek reinstatement of their franchise by counterclaims. *See Apollo Distrib. Co. v. Jerry Kurtz Carpet Co., Inc.,* 696 F.Supp. 140, 143 (D.N.J.1988). Coast is hereby permanently enjoined from any use of the tradename, trademark, and servicemark "Mercedes-Benz," and the Mercedes-Benz logo and Three-Pointed Star, both two and three dimensional, registered in the United States Patent and Trademark Office under U.S. trademark and service mark registration numbers 1,045,081; 1,045,080; 1,060,986; 657,387; 661,311; and 657,386 on any property, real or personal, in any business dealings with any person or entity and in any advertisements.

**B. Motion for Summary Judgment on Counts One through Four of Coast Defendants' Counterclaim**

**\*6** Plaintiff asserts that a determination by this Court that the franchise agreement between plaintiff and Coast was properly terminated will effectively dismiss the Coast defendants' counterclaims for violation of the NJFPA (Count One), breach of contract (Count Two), breach of the duty of good faith and fair dealing (Count Three) and violation of the Automobile Dealer's Day in Court Act ("ADDCA") (Count Four). Plaintiff contends that it is entitled to summary judgment pursuant to N.J.S.A. 56:10-9 which provides that:

**\*7** It shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with the requirements imposed by the franchise and other agreements ancillary or collateral thereto.

**\*7** N.J.S.A. 56:10-9 (West 2001). Curiously, plaintiff seems to suggest, without providing any support for the position, that this provision in the NJFPA is somehow applicable to its common law claims and its federal ADDCA claim. This is not the case, as the defense applicable in the New Jersey statute is applicable only to actions "brought under this act." *Id.* As such, the Court will apply its determination that termination of the franchise agreement was proper to each counterclaim separately.

**\*7** To begin, the Court finds that there is no genuine issue of material fact regarding Coast defendants breach of contract counterclaim. As noted, the franchise agreement explicitly established plaintiff's right to unilaterally terminate the agreement and the license of the trademarks thereunder, if Coast failed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to meet certain contractual obligations. This Court has determined that collateral estoppel should be applied by the Third Circuit's earlier determination that the Coast defendants had made misstatements regarding the nature of the funding for the franchise. Because the contract provided for the right to unilaterally terminate the agreement in the event that the franchisee made any misstatements as to the funding of the franchise, there can be no dispute that plaintiff's actions constitute a breach of the agreement.[FN4] As such, Count Two of Coast defendants' counterclaim is dismissed.

> FN4. In their own motion seeking summary judgment on Counts One and Two of the counterclaim, Coast defendants argue that summary judgment in favor of plaintiff on the breach of contract claim is not warranted but should be granted in their favor because plaintiff failed to pay Coast defendants a certain sum owed for the return of parts as outlined by the franchise agreement. Specifically, pursuant to the franchise agreement and the NJFPA, a franchisor must compensate a franchisee for certain expenses following termination of the agreement. However, as plaintiff notes, this argument is misplaced because Coast defendants' argument is unrelated to the underlying claim asserted in their counterclaim. In their counterclaim, Coast defendants seek damages that resulted from the improper *termination* of the franchise agreement, not for contractual amounts due under the agreement or that may be required by statute.

*7 At first glance, Coast defendants' counterclaim for breach of the NJFPA appears to be completely precluded by the explicit language of N.J.S.A. 56:10-9. Indeed, at least several courts have recognized that § 56:10-9 "allows a franchisee's substantial noncompliance to serve as a complete defense to any action brought under the NJFPA." *VW Credit*, 119 F. App'x. at 423-24; *see also General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 321 n. 11 (3d Cir.2001); *In re The Matterhorn Group, Inc.*, 2002 WL 31528396 (Bankr.S.D.N.Y. Nov. 15, 2002); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 286 (S.D.N.Y.1991) ("It is a defense to a claim brought under the act [NJFPA] by a franchisee that the franchisee has failed to comply substantially with the requirements imposed by the franchisor"). However, the Third Circuit has

questioned whether a parties' good faith is relevant to a claim under the Act. *General Motors Corp.*, 263 F.3d at 321 n. 11. In a wide ranging footnote, the Third Circuit in *General Motors Corp.* expressed some doubt as to whether the statutory definition of good cause for terminating the franchise agreement necessarily precluded claims that the franchisor acted in bad faith. *Compare id.* (noting that the Franchise Act specifically defines good cause which focuses on the objective actions of the franchisee and not on subjective motivations and that § 56:10-9 "allows a franchisee's substantial noncompliance to serve as a complete defense in 'any action' instituted under the [Act]"), *with id.* (noting that New Jersey courts in construing other provisions of the franchise statute, have imposed good faith requirements in particular circumstances.).

*8 In an unpublished opinion involving Coast, the Third Circuit again addressed whether the absolute defense of § 56:10-9 is contrary to the common law duty of good faith and fair dealing as codified in § 56:10-7(e) of the NJFPA and whether such a duty should be applicable to the entire statute. *See VW Credit*, 119 F. App'x. at 424. The Court determined that:

*8 Even if we assume that § 56:10-7(e) codifies the common law duty of good faith and fair dealing and that § 56:10-9 effects a change by providing a defense to franchisors not available at common law, we are not persuaded that § 56:10-9 is inconsistent with or inapplicable to actions brought under § 56:10-7(e). In New Jersey, statutes that impose duties or burdens, or establish rights, or provide benefits not recognized by common law, are subject to strict construction. *It is clear that if the statutory defense makes any change in the common law at all, it does so only with regard to those cases where the franchisee also breached the franchise agreement.*

*8 *Id.* (emphasis added) (internal citations omitted). Given the clear language of the statute and in accordance with the Third Circuit's dicta, the Court finds that the NJFPA should be read to preclude any claim under the Act alleging bad faith when it has been demonstrated that the franchisee substantially failed to comply with the agreement. Because the Court has held that Coast defendants failed to substantially comply with the franchise agreement, summary judgment for plaintiff on Count One is now appropriate.

*8 Counts Three and Four of Coast defendants' counterclaim involve allegations of bad faith. Specifically, the Coast defendants allege that plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 7
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

breached the covenant of good faith and fair dealing and the ADDCA which requires automobile manufacturers "to act in good faith in performing or complying with any of the terms or provisions of the [automobile] franchise, or in terminating ... the franchise with said dealer...." 15 U.S.C. § 1222. The Court notes that Coast defendants' claims which are premised on allegations of bad faith are necessarily separate and independent from the alleged breach of the franchise agreement claim. That is to say, Coast defendants' failure to allege a breach of contract claim is not dispositive of its claims involving allegations of bad faith. *See Bak-A-Lum Corp. v. Alcoa Bldg. Prod.,* 69 N.J. 123, 129-30 (1976) (Noting that a breach of the implied covenant of good faith and fair dealing differs from a "literal violation of a contract"); *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 244, 773 A.2d 1121 (2001) (citing *Sons of Thunder, Inc. v. Borden,* 148 N.J. 396, 419, 690 A.2d 575 (1997)) ("Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term."); *Northview Motors, Inc. v. Chrysler Motors Corp.,* 227 F.3d 78, 93 (3d Cir.2000) ("if an ADDCA defendant has objectively valid reasons for terminating its relations with a dealer, the dealer cannot prevail in an ADDCA action absent evidence that the defendant had an ulterior motive for its action").

*9 Here, a genuine issue of material fact exists regarding whether plaintiffs retained an ulterior motive for terminating Coast's franchise agreement, namely that plaintiff sought to punish Coast defendants for refusing to participate in an alleged price fixing conspiracy. Plaintiff vigorously denies the Coast defendants' allegations regarding the existence of such a conspiracy. But, this Court has already determined in the related class action that genuine issues remain regarding the existence of any conspiracy. Here, there remains a genuine issue regarding whether Coast defendant's alleged resistance to such an alleged conspiracy formed the basis for retaliatory conduct on the part of plaintiff by terminating the franchise agreement. Regardless of whether an independent, objective basis exists for such a termination, what remains at issue is the subjective motivations of the plaintiff. For these reasons, plaintiffs motion for summary judgment on Counts Three and Four of Coast defendants' counterclaims is denied.

**C. Plaintiff's Motions for Summary Judgment on Counts Five through Ten of Coast Defendants' Counterclaim and to Exclude the Expert Testimony of Markovitz and Del Roccili**

*9 Plaintiff moves for summary judgment on all of Coast defendants' counterclaims based on their failure to allege damages. Proof of damages is a necessary element of Coast defendants' claims and summary judgment is proper if Coast defendants cannot prove damages at trial. *See Rocci v. MacDonald-Carter,* 323 N.J. Super 18 (App.Div.1999). Plaintiff's motion is premised entirely on its claim that Coast defendants' expert testimony regarding damages is unreliable pursuant to Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). Plaintiff argues that Coast defendants' counterclaims allege that plaintiff punished Coast for not joining the alleged price-fixing conspiracy by failing to provide Coast with the cars that Coast claims it would have received under plaintiff's allocation system. Markovitz and Del Roccili offered expert opinions regarding plaintiff's alleged failure to allocate cars and the resulting damages from such allocation failures. Because a determination that the opinions of Markovitz and Del Roccili are invalid under Daubert would leave Coast defendants with no evidence of damages resulting from the alleged improper allocation, the parties have extensively briefed this issue. For the following reasons, the Court finds that the opinions of Markovitz and Del Roccili are not reliable, should be stricken and the Court grants summary judgment on Counts Five through Ten of Coast defendants amended counterclaim.[FN5]

> FN5. Plaintiff suggests that if the Court determines that Coast defendants are unable to prove damages based on the striking of the expert testimony of Markovitz and Del Roccili, that the Court should grant summary judgment on all of Coast defendants counterclaims including Counts One through Four. Counts Five through Ten of the amended counterclaim added a single new count against MBUSA for violation of the Sherman and Clayton Acts (Count Five) and added claims against MBUSA and third-party defendants for common law restraint of trade (Count Six), tortuous interference with prospective economic advantage (Count Seven), tortuous interference with contract (Count Eight), unfair competition (Count Nine), and violation of the New

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Jersey Antitrust Act (Count Ten). These claims were premised on Coast defendants' allegations regarding a conspiracy to deny a reasonable allocation of automobile to the Coast dealership. Alternatively, Coast defendants counterclaims One through Four, discussed above, although incorporating the allegations regarding alleged improper allocation, are premised primarily on plaintiff's alleged wrongful termination of the parties' franchise agreement. As such, failure to prove damages resulting from the alleged conspiracy to deny a reasonable allocation does not impact those claims that depend on allegations that plaintiff acted in bad faith in terminating the franchise.

**\*9** Rule 702 of the Federal Rules of Evidence governs the standards applicable for admission of expert testimony:

**\*9** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**\*10** Fed.R.Evid. 702.

**\*10** The Third Circuit has addressed the contours of Rule 702 explaining that the rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003); *see also In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 741-43 (3d Cir.1994) ("*Paoli II* ")(citing *Daubert*, 509 U.S. 579). The qualification element has been interpreted to require that the witness possess specialized expertise, but has been applied broadly by the Third Circuit such that "a broad range of knowledge, skills, and training qualify an expert." *Id.* The plaintiff does not challenge the qualifications of either Markovitz or Del Roccili.

**\*10** More relevant here is the requirement that expert testimony be reliable. In interpreting this requirement, the Third Circuit has required testimony to "be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good

grounds' for his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). The Third Circuit has identified a list of non-exhaustive factors that a district court may consider in determining a proposed expert's reliability

**\*10** As a final component of assessing proposed expert testimony, Rule 702 requires that the testimony must fit the issues in the case. "In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404. The Supreme Court in *Daubert* noted that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. at 591-92.

**\*10** Pursuant to the limitations in Rule 702, the district court is mandated the role of gatekeeper, assuring that opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert*, 509 U.S. at 592 ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

**\*10** Plaintiff's primary challenge to Markovitz and Del Roccili's testimony is the reliability and fit of that testimony. Essentially, plaintiff claims that there is no foundation for the assumptions made by Coast defendants' experts in their reports and that their methodology to calculate future allocations and subsequent damages was flawed and arbitrary. That claim has merit.

**\*10** At the outset, the Court finds unpersuasive Coast defendants' argument that plaintiff's failure to produce its own expert opinions requires the Court to permit the testimony of Markovitz and Del Roccili because it remains unrebutted. This argument misses the mark precisely because the burden to prove damages and to prove the reliability of expert opinions with regard to those damages remains with *Coast*, not MBUSA. *See Soldo v. Sandoz Pharmaceuticals Corp.*, 244 F.Supp.2d 434, 558 (W.D.Pa.2003) (noting under similar circumstances that allowing expert testimony based on an opposing parties failure to present an expert of its own "would turn Rule 702 and Daubert on their heads by allowing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

Page 9

the absence of reliable testing and data to support a causation opinion. Such an approach would also flip the relevant burdens-it is plaintiff who has the burden of proving causation and the reliability of her experts' testimony.").

### 1. Challenge to Markovitz's Opinion

*11 Plaintiff argues that Markovitz's expert opinion is unreliable because he made no computations of automobile allocations based on Coast's actual sales and in fact did not look at any of the circumstances surrounding Coast's operation to make an assessment of what constituted a reasonable allocation. [FN6] Instead, Markovitz looked only at the average growth in the retail sales of New York area dealers and relied entirely on Shansab's statement that Coast received a fair allocation in 1994 but not in 1995 until termination of the franchise in 1999. In particular, Markovitz admitted that he did not consider any other factors, including the specific number of cars allocated to Coast other than assuming that Coast allocations should have increased at a rate equal to the average of all Mercedes-Benz dealers in the tristate area. In addition, Markovitz failed to address the fact that Coast was allocated more automobiles than the dealership actually purchased.

> FN6. The Court notes that Markovitz's expert report contains no analysis and consists entirely of profit schedules based on factual assumptions that the report does not explain or analyze in any significant way.

*11 The following deposition testimony of Markovitz summarizes the basis for his opinion:
*11 Q: Did [Shansab] tell you that 1994 was the last year that he got his proper allocation?
*11 A: I don't-I would say yes.
*11 ....
*11 Q: [D]id Mr. Shansab tell you that in 1995 and thereafter he was punished by Mercedes-Benz by being given reduced allocations?
*11 A: That was my understanding.
*11 Q: From what he told you?
*11 A: Yes.
*11 Q: And that these were allocations that were less than he was entitled to as an allocation under their allocation system?
*11 A: I don't know if he referred to it in that manner.
*11 Q: But he claimed to be entitled to more cars?
*11 A: That's correct.
*11 Q: ... Do you have any other letters-

*11 A: No.
*11 Q: -that show what the allocation-
*11 A: No.
*11 Q: -given to him was?
*11 A: No, I do not.
*11 Q: Now, did you ask for the allocation records-
*11 A: No.
*11 Q: -of Coast?
*11 A: No.
*11 ...
*11 Q: Did you ask for the allocation records of other dealers in the Northeast region?
*11 A: No.
*11 ...
*11 Q: And Mr. Shansab told you that what he actually got, that his allocation for 1995 was not a fair allocation, that he was punished during that year?
*11 A: That's correct.
*11 Q: Okay. And you accepted that statement from him, that he was punished during that year?
*11 A: Yes, I did.
*11 Q: And you based your report on that?
*11 A: No. I based my report on the amount-his percentage of the sales in the New York region in 1994, when he claimed was the last year he received a fair allocation of cars, and in increasing his unit sales every year after that, based on the percentage of increase in sales in the New York region, I came up with the number that he would have received, and then-do you want me to stop?
*11 Q: No. Go ahead.
*11 A: -and then I compared it to the number of units he would have received to the total units in the region and his share percentage was close to what it was for 1994 to verify that I had done the projection properly.
*12 ....
*12 Q: Okay but the premise of your report is that what he actually was offered and what he actually received in 95 was not his fair allocation but was a punishment allocation. You started with that assumption?
*12 A: Yes.
*12 Q: Okay. And that you got from Mr. Shansab?
*12 A: That's correct.
*12 Q: Okay. And the same is true for each year thereafter, Mr. Shansab told you that whatever his allocation was was not his fair allocation but was a punishment allocation?
*12 A: He told me that the allocation continued on the same method going forward-
*12 Q: Right.
*12 A: -that he wasn't treated fairly.

*12 (Certification of Michael S. Waters, Ex. 2, p. 97-103.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

**\*12** Based on Markovitz's own admissions, he relied on factual assertions and assumptions provided by Shansab without doing any independent analysis and without providing a factual basis for his conclusion that Coast was damaged by unfair allocation. Such speculation should bar the expert's testimony because an "expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Paoli II*, 35 F.3d at 742 (citations and internal quotations omitted); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir.2000) ("Although Daubert does not require a paradigm of scientific inquiry as a condition precedent to admitting expert testimony, it does require more than [a] haphazard, intuitive inquiry."). The Third Circuit has cautioned against the admission of an opinion without sufficient factual predicate, referring to such an opinion as a "castle made of sand." *Elcock v. K-Mart Corp.*, 233 F.3d 734, 755 (3d Cir.2000); *see also Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 99 (3d Cir.1983) (ruling that the trial judge was in error by "permitting plaintiff's expert to testify as to plaintiff's future earnings loss without first requiring plaintiff to establish a factual basis for this testimony"); *Benjamin v. Peter's Farm Condo. Owner's Ass'n.*, 820 F.2d 640, 643 (3d Cir.1987) (finding a district court was in error in admitting expert testimony regarding post-injury earning capacity that was based on the "personal belief" of the plaintiff). Moreover, a proposed expert opinion based on factual assumptions not present in the case "cannot be said to 'assist the trier of fact,' as Rule 702 requires" because "[t]his type of opinion misleads the factfinder and arguably does not comply with the 'fit' requirement." *Elcock*, 233 F.3d at 756.

**\*12** Plaintiff points to additional specific evidence to support the conclusion that Markovitz's opinion is unreliable. As example, plaintiff notes that had Markovitz looked at Coast's actual allocation records, he would have discovered that in 1995, the first year in which Shansab alleges Coast was provided an unfair allocation, Coast was actually offered 187 cars by plaintiff but that Coast only purchased 171 cars leaving 16 units still available to Coast. (Certification of Raymond Dupell, Ex. A) Because Markovitz based the unfair allocation calculations out from the 1995 numbers, his failure to consider that more cars were allocated to Coast than were actually purchased necessarily impacted the allocation calculations in later years, and by definition were necessarily unreliable.

**\*13** Markovitz also offers that his damage assessment was a result not just of unfair allocation in the total number of cars but also resulted from the losses attributable to allegedly undesirable cars. Specifically, Coast defendants claim that plaintiff provided a disproportionate mix of cars to Coast that were either difficult models to sell, or plaintiff allegedly provided a number of 94 cars at the end of the year just as the 95 model was being offered making it difficult to sell at a profit. Overall, Markovitz provided no factual basis for his assessment of a $1,000 compensation amount for these types of cars. Additionally, evidence suggests that Coast received equivalent and sometimes fewer numbers of difficult to sell cars than the average Mercedes-Benz dealer in the region. (*See* Certification of Raymond Dupell, Exs. B & C.)

### 2. *Challenge to Del Rocci's Opinion* [FN7]

> FN7. The Court received notice from Coast defendants in June of 2006 of the unfortunate death of Dr. Del Roccili. Coast defendants seek to substitute the testimony of Dr. Del Roccili with another expert based on the same report. The Court need not consider this request given its discussion below regarding the inadmissibility of Dr. Del Roccili's report.

**\*13** Coast defendants offer the expert testimony of Del Rocci in order to value the franchise rights of the coast dealership on the date the franchise was terminated and to determine a future stream of income based on that value. (*See* Certification of Michael S. Waters, Ex. 5, p. 2.) In determining the valuation of the franchise at the date of termination, Del Rocci based his conclusion on the profits projected by Markovitz in his report.[FN8] Because the Court has excluded the report of Markovitz based on its failure to conform with the requirements of Fed.R.Evid. 702 of reliability and fit, and because Del Rocilli's report is entirely dependent upon the methods and calculations performed in Markovitz's report, Del Rocilli's report must likewise be stricken.

> FN8. In his deposition testimony, Markovitz explained the connection between his report and the valuation report including future projected income stream that was conducted by Del Roccili:
> A: If I remember correctly, it was decided

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the furthest we could go in projecting the lost profits was to the date of the termination of the franchise.

Q: That's what you were going to do?

A: Yeah. And Sam Kursch was going to prepare the valuation of the franchise as of that date.

Q: *And it was going to be based on the profits you projected during the operation of the franchise?*

A: Yes.

Q: And subsequently Dr. del Ricolli took the place of Mr. Kursch and did that job?

A: That's correct.

Q: Did you have conversations with Dr. del Ricolli?

A: One or two.

Q: And what can you recall of those conversations?

A: They were similar to the conversation we had that day with Sam Kursch and what information he was going to need to prepare his report.

Q: And that resulted in the same arrangement?

A: Yes.

(Certification of Michael S. Waters, Ex. 2, p. 60-61.)

**\*13** Here, Markovitz and Del Rocilli's opinions are based on nothing more than speculation and subjective belief in the truth of the assertions made by Shansab about unfair allocation without any factual basis for those conclusions. They are thus unreliable and inadmissible under Fed.R.Evid. 702. Because of the inadmissibility of these opinions, Coast defendants cannot establish damages associated with plaintiff's allegedly discriminatory allocation of automobiles. This failure to prove damages is fatal to Coast defendant's counterclaims Five through Ten. The Court therefore grants summary judgment in favor of plaintiff on those counterclaims.

## II. COAST DEFENDANTS' MOTIONS

### A. Coast Defendants' Motions for Summary Judgment

**\*13** Coast defendants seek summary judgment on all three claims of plaintiff's Amended Complaint. In addition, Coast defendants seek summary judgment on Counts One (violation of the NJFPA) and Two

(breach of contract) of their counterclaims.[FN9]

FN9. As the Court noted in footnote four, *supra,* Coast defendants argue that summary judgment in their favor is warranted on Counts One and Two because plaintiff failed to pay Coast defendants a certain sum owed for the return of parts as outlined by the franchise agreement. The Court rejected this particular claim because in their counterclaim, Coast defendants seek damages that resulted from the improper *termination* of the franchise agreement, not for contractual amounts due under the agreement or that may be required by statute. In addition, Coast defendants have raised the issue of alleged debt under the franchise agreement for the first time in this motion. No mention of the debt was made in their counterclaim, nor did Coast defendants refer to the debt in answering plaintiff's interrogatories regarding contract damages. Finally, no discovery regarding this debt was ever taken. In sum, the Court will not address Coast defendants' claim of debt owed under the franchise agreement in the context of the pending summary judgment motions.

**\*13** To begin, summary judgment on Count Two of plaintiff's Amended Complaint and on Counts One and Two of the counterclaim in favor of Coast defendants is not appropriate given this Court's grant of summary judgment of these claims in favor of plaintiff.

**\*13** Turning to Count One of the Amended Complaint, Coast defendants seek summary judgment on plaintiff's claim for an injunction based on Coast's alleged dilution of MBUSA's federal trademark by not using the proper designated indicia of the mark, such as signs, literature and other visible indicia of the mark pursuant to 15 U.S.C. § 1125(c). Essentially, Coast defendants argue that plaintiff's Amended Complaint seeks "nothing more than injunctive relief" and that it has already "obtained the relief it sought." Judge Cooper, in ruling on the motion for a preliminary injunction, declined to enter such relief as to Count One, the dilution claim, because there was no irreparable harm to plaintiff given that the franchise was due to be terminated and the problem of dilution would be mooted by termination of the franchise agreement. That remains the case now. This Court has determined that

Slip Copy                                                                    Page 12
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451
(Cite as: Slip Copy)

termination of the franchise was proper and has granted a permanent injunction on Count Two of plaintiff's Amended Complaint. To that end, it appears that the relief sought under Count One is now moot.

*14 Coast defendants' remaining argument in its multiple summary judgment motions is its assertion that summary judgment is appropriate on plaintiff's claim for rescission and damages based on Coast defendants' fraud in the inducement of the franchise agreement. In order to rescind the franchise agreement, the party seeking rescission must prove by clear and convincing evidence: "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *Coast Automotive Group, Ltd. v. VW Credit,* Civ. No 97-2601, at * 15 (D.N.J. Oct. 30, 2002) (slip opinion); *see also Granite State Ins. Co. v. UJEX, Inc.,* 2005 WL 1618792, at *6 (D.N.J. July 11, 2005) (quoting *First American Title Ins. v. Lawson,* 798 A.2d 661, 667 (N.J.Super.Ct.App.Div.2002), rev'd in part on other grounds, 827 A.2d 230 (N.J.2003)). The element of detrimental reliance requires the moving party to demonstrate damages. *See Coast Automotive Group, Ltd. v. VW Credit,* Civ. No 97-2601, at *17. Coast defendants allege that the record does not reflect any damages suffered by plaintiff. As alleged in the Amended Complaint, plaintiff claims that it suffered damages based on Coast defendants' fraudulent inducement because the "Dealer Agreement is subject to rescission and Coast's use of the trademarks, therefore has been and is unlicensed and unauthorized." In other words, plaintiff alleges damages based on the unlicenced use of its trademarks. This argument makes little sense because it puts the cart before the horse. Even if the Court were to accept plaintiff's claim for damages, Coast defendants note that "[i]n a suit for money damages for fraud ... [i]n order to obtain equitable relief such as rescission ... clear and convincing proof [of damages] is required." *Batka v. Liberty Mutual Fire Ins. Co.,* 704 F.2d 684 (3d Cir.1983). Plaintiff argues generally that it was damaged by Coast's refusal to accept cars that were allocated to them and that customer satisfaction suffered greatly. However, this harm is completely unrelated to the underlying misstatements made by Coast defendants in its application for the franchise dealership. Plaintiff has produced no evidence that it suffered any trademark damage resulting from the alleged misrepresentations.

*14 Even assuming the existence of a genuine issue

of material fact relating to the claim of equitable fraud, specifically the element of damages, the Court finds that rescission is not an appropriate remedy under the circumstances of this case. In general, rescission is available under New Jersey law when one of the parties to a contract commits fraud in inducing the other party to enter into the contract. *See Merchants Indemnity Corp. v. Eggleston,* 37 N.J. 114, 130-31 (1962). "If a party to a contract is guilty of misrepresentation, the contract is voidable and the victim may rescind the contract." *Cooper v. Borough of Wenonah,* 977 F.Supp. 305, 313 (D.N.J.1997). The remedy of rescission results in the "unmaking" of the parties' agreement from the beginning as opposed to mere termination. *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1296 (Fed.Cir.1999). A court's application of the rescission remedy is discretionary should be made only in extraordinary circumstances. *See id.; Hilton Hotels Corp. v. Piper Co.,* 214 N.J.Super. 328, 336 (Ch. Div.1986). In addition, a court must apply rescission only in circumstances where it is clear that the court can return the parties to the "ground upon which they originally stood." *Id.* (quoting *Driscoll v. Burlington-Bristol Bridge Co.,* 28 N.J.Super. 1, 4 (App.Div.1953)); *see also Hamel v. Allstate Ins. Co.,* 233 N.J.Super. 502, 506-07 (App.Div.1989); *Sempre Constr. Co. v. Tp. of Mt. Laurel,* 196 N.J.Super. 204, 209 (Ch. Div.1984).

*15 The passage of time in this case and the complicated relationship between the parties demonstrate to the Court that a return to the "ground upon which they originally stood" would be an exercise in futility. To say that Coast's franchise relationship with plaintiff and its other dualed car manufacturers including Porshe, Audi and Volkswagen was strained would be a mild characterization of what has ultimately been a tumultuous relationship. Throughout this long relationship, both parties have expended large amounts of capital and unmaking these transactions would be next to impossible. *See, e.g., Walter v. Holiday Inns, Inc.,* 784 F.Supp. 1159, 1166 (D.N.J.1992) ( "Prior to and after the [execution of the contract], the defendants infused some $24.8 million dollars of capital into the project for development. Subsequent to this, the defendants have contributed $215 million for maintenance and upgrading of the facility. Under these circumstances, it would be virtually impossible for the court to 'unmake' the buy-out transaction so as to restore the parties to the status quo ante."). Because the equities in this case militate against rescission of the franchise agreement and because plaintiff has presented no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

clear and convincing evidence of trademark damages that resulted from the misstatements of Coast defendants, Coast defendants motion for summary judgment on Count Three is granted.

### B. Coast Defendants' Motion to Exclude the Expert Testimony of Albert Parziale

**\*15** The Coast defendants also moved separately to dismiss the sole expert witness proffered by plaintiff. Plaintiff offered the opinion of Mr. Parziale to address the various financial and accounting issues relating to Coast's financial records and to provide expert opinions on the circumstances surrounding plaintiff's termination of the Coast franchise and the overall operation of the dealership. Essentially, Coast defendants argue that the opinion that would be offered by Mr. Parziale is "irrelevant" because it addresses "only a narrow subject-the financial affairs of Tamim Shansab." However, a review of Mr. Parziale's report demonstrates that his opinion was not limited to the financial affairs of Mr. Shansab but deals extensively on the financial condition of Coast and Mr. Shansab who was its principal. Such testimony is certainly relevant. *See generally In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 179 (E.D.Pa.2000). Moreover, Coast defendants' motion is irrelevant in light of this Court's grant of summary judgment on Count Two of the Amended Complaint in favor of plaintiff. In so granting, the Court recognizes the preclusive effect of the Third Circuit's determination that Coast's was in substantial noncompliance with the franchise agreement by materially misrepresenting its financial ability in the dealer application. Because Mr. Parziale's offered opinions relate to this subject which the Court has already disposed of, Coast defendants' motion is denied as moot.

### III. DAVID MICHAEL AND CONTEMPORARY'S MOTIONS

**\*16** Third-party defendants David Michael and Contemporary move for summary judgment on all of Coast and Shansab's counterclaims alleged against them (Counts Five through Ten). Because the Court has already granted summary judgment on these counts in favor of plaintiff based on Coast defendants inability to demonstrate damages as a result of the exclusion of its experts' testimony, these claims are likewise dismissed as to third-party defendants. Third-party defendants are entitled to summary judgment.

### CONCLUSION

**\*16** For the forgoing reasons, the Court grants to plaintiff summary judgment on Count Two of its Amended Complaint and on Counts One, Two, and Five through Ten of Coast defendants' counterclaims. Relatedly, the Court grants plaintiff's motion to strike the expert testimony of Markovitz and Del Roccili and grants plaintiff's request for a permanent injunction. The Court denies the Coast defendants' motions with the exception of their motion for summary judgment on Count Three of plaintiff's Amended Complaint, which is granted. The Court grants third-party defendants' motion for summary judgment as to Counts Five through Ten of Coast defendants' Counterclaims.

D.N.J.,2006.
Mercedes-Benz, U.S.A. LLC v. Coast Automotive Group, Ltd.
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases P 75,451

Briefs and Other Related Documents (Back to top)

• 2006 WL 654285 (Trial Motion, Memorandum and Affidavit) Brief of Mercedes-Benz USA, LLC in Opposition to Coast Automotive Group, LTD. and Tamim Shansab's Motion for Partial Consolidation (Feb. 24, 2006)
• 2006 WL 654286 (Trial Motion, Memorandum and Affidavit) Brief of David Michael Motor Car Corp. In Opposition to Motion for Partial Consolidation (Feb. 24, 2006)
• 2006 WL 654284 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Coast's Motion Pursuant to Fed. R. Civ. P. 42(a) for Partial Consolidation of Trials (Feb. 6, 2006)
• 2005 WL 3171910 (Trial Motion, Memorandum and Affidavit) Reply Brief of David Michael Motor Car Corp. in Support of Summary Judgment (Oct. 24, 2005)
• 2005 WL 3171914 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Coast's Motions for summary Judgment and Partial Summary Judgment (Oct. 24, 2005)
• 2005 WL 3171906 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Mbusa's Motion for Summary Judgment (Oct. 21, 2005)
• 2005 WL 3171893 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Mercedes-Benz USA LLC's Motion to Strike the Opinions of Howard M. Markovitz and John A. Del Roccili,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2830962 (D.N.J.), 2006-2 Trade Cases  P 75,451
(Cite as: Slip Copy)

Page 14

PH.D. and to Bar Their Testimony at Trial (Oct. 11,
2005)
• 2005 WL 2899445 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to David
Michael Motor Car Corp.'s Motion for Summary
Judgment (Sep. 30, 2005)
• 2005 WL 2899446 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to
Contemporary Motor Cars Corp.'s Motion for
Summary Judgment (Sep. 30, 2005)
• 2005 WL 2899444 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to
Mercedes-Benz USA, LLC'S Motion for Summary
Judgment (Sep. 29, 2005)
• 2005 WL 2899443 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to
Mercedes-benz USA, LLC'S Motion to Strike the
Opinions of Howard M. Markovitz and John A. Del
Roccoli and to Bar Their Testimony at Trial (Sep. 15,
2005)
• 2005 WL 2511664 (Trial Motion, Memorandum
and Affidavit) Brief in Support of Motion for
Summary Judgment on Behalf of David Michael
Motor Car Corp. (Aug. 15, 2005)
• 2005 WL 2511669 (Trial Motion, Memorandum
and Affidavit) Brief of Contemporary Motor Cars,
Inc, in Support of Its Motion for Summary Judgment
(Aug. 15, 2005)
• 2005 WL 3863251 (Trial Motion, Memorandum
and Affidavit) Brief of Contemporary Motorcars, Inc.
In Opposition To Coast Automotive Group, Ltd.'s
Motion for Partial Consolidation Of Trials (Feb. 23,
2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.