IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AFFYMETRIX, INC.,                    )
                                     )
              Plaintiff,             )
                                     )
       v.                            )      C. A. No. 04-901 (JJF)
                                     )
ILLUMINA, INC.,                      )      REDACTED VERSION
                                     )
              Defendant.             )
_____ )

**PLAINTIFF AFFYMETRIX, INC.'S RESPONSES TO**
**DEFENDANT ILLUNINA, INC.'S MOTIONS *IN LIMINE***
**RELATING TO PHASE ONE OF THE TRIAL**


                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                          Jack B. Blumenfeld (#1014)
                          Maryellen Noreika (#3208)
                          Derek J. Fahnestock (#4705)
                          1201 N. Market Street
                          Wilmington, DE  19899-1347
                          (302) 658-9200
                          dfahnestock@mnat.com
                            Attorneys for Plaintiff Affymetrix, Inc.

OF COUNSEL:

Michael J. Malecek
Daniel R. Reed
Andrea L. Gross
Stephen C. Holmes
AFFYMETRIX, INC.
6550 Vallejo Street, Suite 100
Emeryville, CA  94608
(510) 428-8500

Original Filing Date:  February 22, 2007

Redacted Filing Date:  March 1, 2007

**PLAINTIFF AFFYMETRIX, INC.'S RESPONSES TO
DEFENDANT ILLUMINA, INC.'S MOTIONS *IN LIMINE*
RELATING TO PHASE ONE OF THE TRIAL**

Affymetrix respectfully submits the following responses in opposition to the six

motions *in limine* filed by Illumina.

# Tab 1

**AFFYMETRIX'S RESPONSE TO ILLUMINA'S MOTION *IN LIMINE* #1**

Illumina's Motion *in Limine* #1 seeking to remove the Court's *Markman* Memorandum Opinion "in its entirety" should be denied.  To be clear, Affymetrix does not wish to reargue claim construction before the jury.  Even a cursory review of the *Markman* ruling makes clear that most of Affymetrix's proposed constructions were adopted and most of Illumina's rejected.[1]  Affymetrix's experts have offered opinions based on the language of the constructions set forth by the Court.[2]

Affymetrix will, however, want to cross examine Illumina's witnesses if they are permitted to take positions at trial that have already been rejected by the Court.  The Court's *Markman* determination left Illumina largely without noninfringement positions for a number of asserted claims.  Rather than concede infringement, however, Illumina submitted reports from its infringement experts that offered opinions directly contrary to the Court's *Markman* findings.  For example, in construing the term "biological polymers immobilized on a surface" in the '365 patent, the Court noted:

> The dispute here is whether the construction should be limited to require that the polymers be chemically attached, and that they be ***attached to a***

---

[1]     Affymetrix reserves its right to appeal the Court's claim constructions to the extent the Court disagreed with Affymetrix's positions, but Affymetrix does not intend to reargue them in front of the jury.

[2]     ████████████████████████████████████████████████

*single surface*. The Court concludes that these limitations are not required.

D.I. 324, *Markman* Memorandum Opinion, at 15-16 (emphasis added).



Similarly, in construing the term "said beads being coded with an encoding system," in the '432 patent, the Court noted:

> Subsequent to hybridization and identification of which polymer was attached to which bead, *the beads would have to be encoded in some way*, either by labeling them directly or *by recording their positions within an array of immobilized beads*.

D.I. 324, *Markman* Memorandum Opinion at 4-5 (emphasis added).



---
3

Illumina should not be allowed to put forward positions that the Court has already rejected.[5]  To the extent, however, that Illumina is permitted to do so, Affymetrix would be severely prejudiced if it could not cross examine Illumina's witnesses fully.

Moreover, despite Illumina's claim, there is no law to support Illumina's request to the have *Markman* Memorandum Opinion excluded "in its entirety" from the infringement trial. (Illumina Mot. *In Lim.* #1 at 3.).  In the case Illumina cites, *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1329 (Fed. Cir. 2005), v*acated on other grounds, eBay v. MercExchange, LLC.*, 126 S. Ct. 1837 (2006), the Federal Circuit simply stated:

> We also agree with the district court that it was ***not necessary*** for the court ***to include excerpts from its* Markman *order in the jury instructions*.   A district court's *Markman* order is an explanation to the parties of the

---

[4]

[5]  *See* Affymetrix's Motion *in Limine* No. 7, §§ A and C to preclude certain opinions from Illumina's expert, Dr. Lusis.

3

reasoning behind its claim construction.   The court's analysis ***need not be part of the jury instructions.***

*Id.* at 1329 (emphasis added).  The Court did not ***preclude*** the jury from ever hearing (or hearing a reference to) a court's *Markman* analysis as Illumina seeks to do here.

Similarly, in *Cytologix Corp., v. Ventana Medical Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005), the Federal Circuit recognized that it was "improper" to allow experts to opine on claim construction before the jury in the absence of a *Markman* ruling prior to trial.  That situation is far removed from this case, where the Court has construed the claims well in advance of trial and the experts have submitted expert reports with the benefit of the Court's claim construction.[6]

The Court's *Markman* Memorandum Opinion – and particularly the Court's explicit recognition that ***recording [the beads'] positions within an array of immobilized beads*** is an encoding system – is relevant and probative.  Accordingly, Affymetrix respectfully requests that Illumina's Motion *in Limine* #1 be denied.

---

[6]    Notably, Illumina's trial counsel in this case, when representing plaintiff OGT against Affymetrix in a patent infringement trial before this Court in 2000, used the Court's *Markman* analysis in that case in direct examination of OGT's principal technical expert witness.  See, e.g., Exh. F, Oxford Gene Techs., Ltd. v. Affymetrix, Inc., No.1:99-cv-00348-JJF, Trial Transcript, November 7, 2000 at pp. 357-58, 393 ("The correct construction had some elaboration I believe from the opinion. . . ."); 406-407 ("The Court has construed this portion of Claim 4. I'll just read that quote 'The Court construes this [quotation omitted].'  And that's from the memorandum opinion.")

4

A

REDACTED

B

REDACTED

C

REDACTED

D

REDACTED

E

REDACTED

F

00304

1       IN THE UNITED STATES DISTRICT COURT

2       IN AND FOR THE DISTRICT OF DELAWARE

3

4  OXFORD GENE TECHNOLOGY, LTD.,   ) VOLUME 2an English limited liability   )

5  company,                )                )

6         Plaintiff,      )                ) Civil Action

7  v.                ) No. 99-348 (JJF)                )

8  AFFYMETRIX, INC.,          )a Delaware corporation,        )

9                )         Defendant.      )

10

11

12          Wilmington, Delaware

13          Tuesday, November 7, 2000          9:33 a.m.

14

15 BEFORE: HONORABLE JOSEPH J. FARNAN, JR.,

16      United States District Court Judge

17

18 APPEARANCES:

19    RICHARD K. HERRMANN, ESQ.     Blank Rome Comisky & McCauley, LLP

20       - and -     ROBERT G. KRUPKA, ESQ. (Los Angeles, CA),

21    MARK A. PALS, ESQ.     BRYAN S. HALES, ESQ., and

22    KENNETH H. BRIDGES, ESQ.     Kirkland & Ellis

23    (Chicago, Illinois)

24          Counsel for Plaintiff

**OGT-Del Trial 11-07-2000**          **Page 304**

00357

1 test of the reasons for it, so I'm going to permit

2 him to testify if that's of choice of counsel, in

3 the first instance as to the opinion, and then I

4 assume you'll develop it or on cross-examination

5 you can challenge it.

6        MR. PALS:  Yes, Your Honor.

7        THE COURT:  So you can go ahead.

8 BY MR. PALS:

9   Q.  What is your opinion as to whether

10 Affymetrix infringes the claims of the '637 patent

11 by its making of DNA array chips?

12   A.  I have concluded that Affymetrix does

13 infringe.

14   Q.  What is your opinion with respect to

15 whether the way in which Affymetrix's DNA array

16 chips are made infringes the '637 patent?

17   A.  I conclude that that infringes the

18 patent.

19   Q.  Have you, in fact, Dr. Dahlberg, reviewed

20 the Court's opinion with respect to the

21 construction of certain terms, of certain of the

22 claims of the '637 patent?

23   A.  Yes, I have.

24   Q.  And have you considered those, the

**OGT-Del Trial 11-07-2000**        **Page 357**

00358

1 Court's construction of those terms, in connection

2 with forming your opinions of infringement?

3    A.  Yes, I have considered those rulings in

4 my conclusions.

5    Q.  Have you reviewed any materials showing

6 how Affymetrix makes DNA arrays?

7    A.  Yes, I considered quite a bit of

8 material.

9    Q.  Would you please generally describe the

10 materials you considered?

11    A.  Well, there are materials that are

12 internal documents that Affymetrix has, directing

13 how the manufacturing process should occur.  From

14 all different levels of detail, most detail there

15 are something called the departmental operating

16 procedures which really tell the manufacture --

17 the person on the floor just how to put things

18 together and what to do.

19            I reviewed a number of those

20 documents.  I've also reviewed more general type

21 of documents, still internal Affymetrix documents

22 that describe the process.  Then I've also

23 reviewed documents that Affymetrix sends to its

24 customers and tells them how they have made the

**OGT-Del Trial 11-07-2000**                    **Page 358**

00393

1 already discussed support material and discrete

2 cell locations.

3          The Court has also construed the

4 term segregating as "identifying or distinguishing

5 regions or locations on the support material where

6 the oligonucleotides of the array will be

7 synthesized."

8          I'm sorry, let me correct that.  The

9 correct construction that had some elaboration I

10 believe from the opinion, but the correct

11 construction for segregating is, "identifying or

12 distinguishing regions or locations on the support

13 material."

14          Dr. Dahlberg, does Affymetrix use

15 step A of the '637 patent, Claim 1 of the '637

16 patent, in its method for making DNA array

17 products?

18     A.  In my opinion, they do.

19     Q.  How does Affymetrix perform this step?

20     A.  Well, as I said before, they have to know

21 what oligonucleotide they want to make and then

22 they design a chip so that they know where that

23 oligonucleotide is to be made on the chip, so that

24 later on they can come back and, or the

00406

1    Q.  Is it your opinion that all DNA array

2  products that Affymetrix makes and sells are made

3  according to the method of Claim 3 of the '637

4  patent?

5    A.  Yes, it is.

6    Q.  Turning your attention, Dr. Dahlberg, to

7  Claim 4 of the '637 patent, this claim includes

8  the language, the use of means for coupling said

9  nucleotide precursors to a particular set of

10  discrete cell locations to the exclusion of other

11  discrete cell locations.

12         The Court has construed this portion

13  of Claim 4. I'll just read that quote.  "The

14  Court construes this means plus function claim to

15  permit the function to be performed by a mask, a

16  laser typesetter, an I think jet printer, computer

17  controlled printing device, or their

18  equivalents."  And that's from the memorandum

19  opinion.

20         Dr. Dahlberg, do you have an opinion

21  as to whether Affymetrix infringes Claim 4 of the

22  '637 patent?

23    A.  Yes, I do.

24    Q.  What is that opinion?

00407

1   A.  My opinion is that they do infringe that

2  claim.

3   Q.  Why do you believe that Affymetrix

4  infringes Claim 4 of the '637 patent?

5   A.  Because they make their products by the

6  process described in Claim 1, and they use in that

7  process a means for as it says, for coupling the

8  precursors at particular sets of discrete cell

9  locations to the exclusion of other discrete cell

10  locations.

11   Q.  What means does Affymetrix use to do

12  that?

13   A.  Well, they use a mask.

14   Q.  Have you selected any documents to

15  illustrate the basis for your opinion?

16   A.  Yes.

17   Q.  What have you selected?

18   A.  Well, for one thing, we can look at PTX

19  523, which is an article they've published

20  recently.  That is an article that was in the

21  Journal of Nature Genetics, and it was published

22  by Affymetrix, Inc. You can see at the bottom

23  under the authors, that's their affiliation, it

24  says Affymetrix Inc., and these, as far as I

Tab 2

**AFFYMETRIX'S RESPONSE TO ILLUMINA'S MOTION *IN LIMINE* #2**

Because the parties reached agreement on this motion before it was filed, it should

be denied as moot.



As required by Delaware Local Rule 7.1.1, Affymetrix and Illumina met and

conferred about the parties' motions in limine before they were filed to see if agreement

on any of them could be reached. 

A

REDACTED

Tab 3

### AFFYMETRIX'S RESPONSE TO ILLUMINA'S MOTION *IN LIMINE* #3

Illumina's Motion *in Limine* #3 seeks "an order precluding Affymetrix from offering any testimony or evidence that Affymetrix hopes will persuade the jury that Illumina allegedly copied or willfully infringed the patents-in-suit." Illumina Mot. *in Lim.* #3 at 1, D.I. 373.    Specifically, Illumina seeks to exclude all evidence that Mark Chee, an inventor on one of the Affymetrix patents-in-suit, left Affymetrix to found Illumina.    For the reasons set out below, Illumina's motion should be denied.

Affymetrix agrees that evidence relating solely to willful infringement is a matter for Phase 2 and not Phase 1.    *See* Affymetrix Motion *in Limine* No. 1, D.I. 372.[1] Illumina's present motion, however, goes too far and sweeps too broadly.[2]    For example, Illumina seeks to exclude



Dr. Chee is a co-inventor of the '716 patent-in-suit



---

[1]

[2]    In addition, Illumina's Motion is vague as to what exactly it seeks to exclude or what Illumina means by "other such inflammatory evidence."

[3]    Illumina still has not consented to stipulate to ownership of the '716 patent in this first phase, despite the Court's previous ruling on this issue.

These issues alone show that evidence and testimony relating to Dr. Chee is relevant to the first phase and that Illumina's request should be denied.

Illumina's motion to preclude, however, goes farther. It also seeks to preclude



Indeed, under Illumina's all-sweeping proposed exclusion order,



Evidence and testimony about Dr .Chee and other former Affymetrix employees and their work at Affymetrix and Illumina

████████████████████████████████████████████

████████████████████████████████████ Affymetrix submits that such

evidence is relevant to issues in Phase 1 and also that Illumina has failed to meet its

burden of showing that evidence relating to Dr. Chee (and other former Affymetrix

employees that joined Illumina) is substantially more prejudicial than probative as

required by Rule 403.

Accordingly, Affymetrix respectfully submits that Illumina's Motion *in Limine* #3

should be denied.

3

A



illumina™

making sense out of life

about illumina
products & services
technology & applications
jobs at illumina
contact us
investor information
site map

home > about illumina > history

**about illumina**

overview
alliances
conferences
& events
management team
news releases
privacy policy
FAQ
history

## history

Illumina was founded in April 1998 by John Stuelpnagel, D.V.
M and Mark Chee, Ph.D. Mark had previously been a
genomics "guru" at Affymetrix, while John had been with a
venture capital firm called CW Group. While with CW Group,
John had uncovered the core technology at Tufts University
and negotiated an exclusive license to that technology. The
first substantial funding, about $8.6 million, came in
November 1998. Illumina then proceeded to build its staff,
secure a facility, and work on development of its core
technology and intellectual property portfolio.

Jay Flatley joined the company in October 1999 as President
and CEO. Illumina completed a $28 million Series C
financing in December 1999 and we completed our IPO at
the end of July 2000, raising just over $100 million.

Illumina's mission is to develop next-generation tools for the
large-scale analysis of genetic variation and function. The
understanding of variation and function will be critical to
achieving the goal of enabling personalized medicine. The
tools that we plan to provide convert the data that's been
generated from the human genome sequencing efforts into
medically relevant information. That information will correlate
genetic variation and function with disease states, improving
the ability to discover drugs and allowing diseases to be
detected earlier and more specifically.



Our Sentrix™ Array Matrix
accommodates manual or robotic
operation.

**NEWS & HIGHLIGHTS**

News about Illumina

We're always looking for
qualified people

Learn more about our
technology platform

about illumina | products & services | technology & applications | jobs at illumina | contact us | investor information | site map

EXHIBIT
298106
412
Chee
PTSAD 500-531-4989

Plaintiff's
Trial Exhibit
PTX 86
C.A. No. 04-901 JJF

AVI_141861

B

REDACTED

# Tab 4

**AFFYMETRIX'S RESPONSE TO ILLUMINA'S MOTION *IN LIMINE* #4**

In its Motion *in Limine* #4, Illumina's seeks to preclude Affymetrix from relying

on three licenses on the purported ground that "Affymetrix did not produce all related

licensing materials, as required under the parties' discovery agreement."   Illumina Mot.

*in Lim.* #4 at 11.  The Court should deny Illumina's motion for two fundamental reasons.



**I.**

In its Motion *in Limine* #4, Illumina acknowledges that Affymetrix's

counsel

Under the amended Scheduling

Order, opening expert reports were due on September 15, 2006.  *See* D.I. 333 at 1-2



(signed by the Court on September 6, 2006).  On August 11, 2006 – more than a month

before expert reports were exchanged – Affymetrix produced

A.    **Affymetrix Produced**

Illumina asserts that Affymetrix did not produce









## II.    <u>ILLUMINA CANNOT SHOW ANY UNFAIR PREJUDICE</u>

Illumina contends that it is





For all the foregoing reasons, the Court should deny Illumina's motion *in limine* #4.

A

REDACTED

B

REDACTED

C

REDACTED

D

REDACTED

E

REDACTED

F

REDACTED

G

REDACTED

# Tab 5

**AFFYMETRIX'S RESPONSE TO ILLUMINA'S MOTION *IN LIMINE* # 5**

In its Motion *in Limine* #5, Illumina seeks to preclude Affymetrix's damages expert from ███████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ The Court should deny Illumina's

motion because Affymetrix ████████████████████████████████

████████████████████████████████████████████████

In forming his opinion as to a reasonable royalty, Affymetrix's damages expert,

Dr. Matthew Lynde, ████████████████████████████████████████







Federal Rule of Evidence 703 governs. "Rule 703 broadens the acceptable bases for expert testimony by allowing an expert to base an opinion on hearsay and other evidence not admissible in court." *Ambrosini v. Labarraque, M.D.*, 966 F.2d 1464, 1466 (D.C. Cir. 1992) (*citing* Fed. R. Evid. 703 advisory committee's note; Jack B Weinstein & Margaret A. Berger, *Weinstein's*

*Evidence* ¶ 703[01], at 6-7 (1991)).  Under Rule 703, an expert is allowed to base his

opinion on facts or data that are "of a type reasonably relied upon by experts in the

particular field," even if the facts or data are not themselves admissible.  Fed. R. Evid.

703.



For the foregoing reasons, the Court should deny Illumina's Motion *in Limine* #5.

---

1

A

REDACTED

B

REDACTED

C



Global Equity Research

Americas

Biotechnology

Sector Comment

## UBS Investment Research
### Q-Series®: The DNA Microarray Market



## Mega Markets for Microarrays?

- **What is the DNA microarray market opportunity?**

DNA microarray technology revolutionized whole genome analysis. Most microarrays are used for gene expression studies, but this market is mature. As new applications in genotyping and molecular diagnostics emerge, key questions for life sciences investors are whether these new markets are real and how fast they can grow.

- **UBS market model used to forecast microarray demand**

To address these questions, we built a proprietary model for the microarray market and project demand through 2010. We used interviews with experts and industry participants to define the existing market, and forecast growth based on customer surveys and a review of R&D trends.

- **The market is real, but could be smaller than expected**

In our view, the microarray opportunity is real, albeit smaller than some earlier forecasts. We estimate the total microarray market will grow from ~$875 million in 2005 to ~$1.6 billion by 2010 (13% CAGR). We see gene expression stabilizing at ~7% growth, while we believe genotyping could be a ~$500 million market. However, we are cautious on molecular diagnostics.

- **Investment implications**

Affymetrix (Neutral 2) is the market leader, but execution problems have hurt performance; we present three scenarios and a valuation model for AFFX shares. We also expect Illumina, Agilent, Applied Biosystems, and GE Healthcare to benefit from the DNA microarray market opportunity.

23 January 2006

www.ubs.com/investmentresearch

Derik De Bruin, Ph.D.
Analyst
derik.debruin@ubs.com
+1-212-713 3964

Peter McDonald
Associate Analyst
peter.mcdonald@ubs.com
+1-212-713 2457

Alice Cui, CFA
Associate Analyst
alice.cui@ubs.com
+1-212-713 3241

This report has been prepared by UBS Securities LLC

ANALYST CERTIFICATION AND REQUIRED DISCLOSURES BEGIN ON PAGE 58

UBS does and seeks to do business with companies covered in its research reports. As a result, investors should be aware that the firm may have a conflict of interest that could affect the objectivity of this report. Investors should consider this report as only a single factor in making their investment decision. Customers of UBS in the United States can receive independent, third-party research on the company or companies covered in this report, at no cost to them, where such research is available. Customers can access this independent research at www.ubs.com/independentresearch or may call +1 877-208-5700 to request a copy of this research.

Plaintiff's
Trial Exhibit
PTX 351
C.A. No. 04-901 JJF

AVI_210588

# Introduction

## Microarrays Are a Transforming Technology

A transforming technology enables researchers to conduct experiments on a scale that was heretofore unfeasible. For example, polymerase chain reaction (PCR) was the transforming technology in the 1980s. PCR is a method used to amplify and detect minute amounts of nucleic acid sequences (i.e., DNA and RNA) that otherwise could not be detected. PCR is a fundamental molecular tool that has enabled the advancement of molecular biology and genomics research severalfold. With PCR, an unskilled technician, using a few dollars worth of reagents and an instrument called a thermal cycler, can accomplish several weeks' worth of technically sophisticated work in an afternoon. In addition, PCR-based detection methods have become the gold standard in the rapidly growing ~$2 billion molecular diagnostics industry.

*PCR was the transforming technology of the 1980s*

In the 1990s, automated DNA sequencing instruments, in particular the Applied Biosystems 3700, were the key transforming technology. With increases in throughput of 1,000-fold or more, automated DNA sequencers freed up resources and accelerated the completion of the first human genome sequencing project years ahead of schedule. Many scientists who saw the power of DNA sequencing subsequently founded genomics and biotechnology companies featuring DNA sequencers as the centerpiece of internal research programs. Despite the fact that there is more DNA being sequenced today than during the prime of the initial human genome project—there are 3 billion base pairs of DNA in the human genome, and the five U.S. human genome centers are currently producing 150 billion base pairs of high-quality sequences per year—sequencing technology has dramatically improved and prices have fallen precipitously. As a result, today the ~$600 million DNA sequencing market is essentially flat, and Applied Biosystems' growth has suffered. Thus, possession of a transforming technology is no guarantee of robust long-term organic growth.

*DNA sequencing was the transforming technology of the 1990s*

For this decade, we believe that the key transforming technology is the DNA microarray. With the sequencing of the human genome came the need to develop large-scale methods of molecular analysis. DNA microarrays were among the first technologies to enable whole genome studies. The first application of microarray technology was in the large-scale analysis of gene expression (i.e., determining when, where, and at what level a specific gene is active in a biological sample) for drug target discovery and validation. Previously, researchers used tedious techniques to examine the activities of individual genes in series (i.e., one at a time). In contrast, DNA microarrays can be used to determine the activities of tens of thousands of genes in parallel, in effect testing the whole genome in a single experiment.

*Microarrays represent the transforming technology of the 2000s*

AVI_210596

D

REDACTED

# Tab 6

**AFFYMETRIX'S RESPONSE TO ILLUMINA'S MOTION *IN LIMINE* #6**

In its Motion *in Limine* #6, Illumina seeks to preclude Affymetrix's damages

expert 

This motion *in limine* is now moot. 

Because Affymetrix agrees to Illumina's proposed resolution, Illumina's Motion

*in Limine* #6 should be denied as moot.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Derek J. Fahnestock (#4705)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200
dfahnestock@mnat.com
  Attorneys for Plaintiff Affymetrix, Inc.

OF COUNSEL:

Michael J. Malecek
Daniel R. Reed
Andrea L. Gross
Stephen C. Holmes
AFFYMETRIX, INC.
6550 Vallejo Street, Suite 100
Emeryville, CA  94608
(510) 428-8500

Original Filing Date:   February 22, 2007

Redacted Filing Date:  March 1, 2007

A

# REDACTED

CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2007, I electronically filed the foregoing document using CM/ECF which will send notification of such filing(s) to the following:

Richard K. Herrmann
Morris James LLP

I also certify that copies were caused to be served on March 1, 2007 upon the following in the manner indicated:

**BY HAND AND EMAIL**

Richard K. Herrmann
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19801-1494

**BY EMAIL AND FEDERAL EXPRESS**

Marcus E. Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

*/s/ Derek J. Fahnestock*
Derek J. Fahnestock (#4705)
dfahnestock@mnat.com