IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AFFYMETRIX, INC., | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. 04-901-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| ILLUMINA, INC., | ) | |
| | ) | |
| Defendant | ) | |

## **JOINT PROPOSED FINAL JURY INSTRUCTIONS**

Pursuant to D. Del. L.R. 51.1(a), Affymetrix, Inc. and Illumina submit the attached Joint

Proposed Final Jury Instructions, in triplicate, for Phase 1 of the trial. The parties have reached

agreement with respect to the instructions set forth in this document. These instructions are also

being submitted on disk in WordPerfect format.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP      MORRIS JAMES LLP


/s/ Derek J. Fahnestock (#4705)          /s/ Richard K. Herrmann (#405)
Jack B. Blumenfeld (#1014)               Richard K. Herrmann (#405)
Maryellen Noreika (#3208)                500 Delaware Avenue, Suite 1500
Derek J. Fahnestock (#4705)              P.O. Box 2306
1201 N. Market Street                    Wilmington, DE  19899-2306
P.O. Box 1347                            (302) 888-6800
Wilmington, DE  19899                    rherrmann@morrisjames.com
(302) 658-9200                           *Attorneys for Defendant Illumina, Inc.*
*Attorneys for Plaintiff Affymetrix, Inc.*

TABLE OF CONTENTS[1]

Page

GENERAL INSTRUCTIONS .................................................................. 1
    INTRODUCTION ....................................................... 1
    JURORS' DUTIES ....................................................... 2
    EVIDENCE DEFINED ..................................................... 3
    CONSIDERATION OF EVIDENCE ......................... 4
    DIRECTION AND CIRCUMSTANTIAL EVIDENCE ................... 6
    CREDIBILITY OF WITNESSES ........................... 7
    NUMBER OF WITNESSES ............................. 8
    DEPOSITION TESTIMONY ............................... 9
    DEMONSTRATIVE EXHIBITS ........................... 10

THE PATENT CLAIMS ............................................... 11
    PATENT CLAIMS GENERALLY ........................... 11
    INDEPENDENT AND DEPENDENT CLAIMS ........................... 13
    DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO
        INFRINGE IS IMMATERIAL ........................... 14
    LITERAL INFRINGEMENT ........................... 15
    CONTRIBUTORY INFRINGEMENT ........................... 16
    OBVIOUSNESS ........................... 17
    DIFFERENCES OVER THE PRIOR ART ........................... 18
    LEVEL OF ORDINARY SKILL ........................... 19
    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS ........................... 20
    FACTORS FOR DETERMINING REASONABLE ROYALTY ........................... 22
    INTEREST ........................... 24
    CLOSING STATEMENT – DAMAGES ........................... 25
    CURATIVE INSTRUCTION ........................... 26

DELIBERATION AND VERDICT ........................... 27
    INTRODUCTION ........................... 27
    UNANIMOUS VERDICT ........................... 28
    DUTY TO DELIBERATE ........................... 29
    COURT HAS NO OPINION ........................... 30

---

[1]    The parties have not agreed on the order of instructions or as to whether certain instructions should be included.  Thus, the parties' proposed instructions diverge in numbering and no numbering has been included in this Table of Contents.

# 1.    GENERAL INSTRUCTIONS

## 1.1    INTRODUCTION[2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will also have a verdict form, which will list the questions that you must decide in this case.

---

[2]    Source:  Final Jury Instructions *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, C.A. No. 04-1371-JJF (Oct. 6, 2006) (hereinafter "*Power Integrations* Final Instructions"); Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (March 1993) (hereinafter "Delaware Uniform Instructions").

## 1.2    JURORS' DUTIES[3]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts and decide under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[3]    Source:  *Power Integrations* Final Instructions; Delaware Uniform Instructions.

### 1.4    EVIDENCE DEFINED[4]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rules are not evidence. Any of my comments or questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not in evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

---

4      Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

**1.5    CONSIDERATION OF EVIDENCE**[5]

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

_____

[5]      Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

### 1.5.1   USE OF NOTES[6]

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[6]      Source:  *Power Integrations* Final Instructions.

### 1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE[7]

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[7]     Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

6

## 1.7    CREDIBILITY OF WITNESSES[8]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something or failed to say or do something that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[8]    Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

### 1.8    NUMBER OF WITNESSES[9]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[9]    Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

## 1.10   DEPOSITION TESTIMONY[10]

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

---

10      Source:  *Power Integrations* Final Instructions; Delaware Uniform Instructions.

9

**1.11    DEMONSTRATIVE EXHIBITS**[11]

During the course of this trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

---

11    Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

10

## 2. THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

The plaintiff in this case is Affymetrix, Inc.  The defendant is Illumina, Inc.  I will refer to the plaintiff as "Affymetrix".  I will refer to the defendant as Illumina".

## 2.4    SUMMARY OF ISSUES

In this case, you must decide the issues according to the instructions I give you.  In general these issues are:

1.    Whether Affymetrix has proven by a preponderance of the evidence that Illumina has infringed any of the asserted claims of the patents-in-suit.

2.    If you find that any of the asserted claims of the patents-in-suit are infringed, the amount of damages that Affymetrix has proven by a preponderance of the evidence is due to it

12

3.    **THE PATENT CLAIMS**

### 3.1    PATENT CLAIMS GENERALLY[12]

Deciding whether a claim has been directly infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law.  In the second step, you must compare each claim as I have interpreted it to each of the accused products to determine whether every element of the claim can be found in that accused product.  This element-by-element comparison is your responsibility as the jury for this case.

Before you can decide whether or not Illumina has infringed any of Affymetrix's patents, you will have to understand the patent "claims."  Patent claims are the numbered paragraphs at the end of a patent.  The patent claims involved here are:

> claims 1 and 2 of the '531 patent,
>
> claims 1, 5, and 9 of the '716 patent,
>
> claims 2 and 9 of the '432 patent,
>
> claims 36 and 41 of the '365 patent, and,
>
> claims 14, 15 and 35 of the '243 patent.

The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

---

12    Source:  *Power Integrations* Final Instructions; Delaware Uniform Instructions.

Claims may be directed to products or they may be directed to methods for making or using a product.

Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the table top. The table top, legs and glue are each a separate element of the claim.

When making your decision regarding infringement, you should not compare Illumina's products with any specific example set out in the patents-in-suit, or with any product manufactured by Affymetrix. Rather, you must only compare Illumina's products with the asserted claims of the patents-in-suit.

Each of the claims must be considered individually, and to show infringement of a given patent by a given product, Affymetrix need only establish that one claim of that patent has been infringed by that product.

14

**3.2     INDEPENDENT AND DEPENDENT CLAIMS**[13]

There are two different types of claims in a patent. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to and depends upon at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 14 of the '243 patent is an independent claim. You know this because it mentions no other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 15 of the '243 patent is a dependent claim. It refers to independent claim 14. For an Illumina product to infringe dependent claim 15 of the '243 patent, the Illumina product must have all the elements of both claim 14 and claim 15. Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that claim are not infringed.

Some claims of the patents-in-suit are broader than other claims. You are not to read limitations or words of a narrower or dependent claim into a broader or independent claim if the broader claim does not explicitly contain the same limitations.

---

13      Source: Delaware Uniform Instructions; *Power Integrations* Final Instructions (modified).

### 3.4    CONSTRUCTION OF CLAIMS

It is the Court's duty under the law to define what patent claims mean. I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is infringed. You must ignore any different interpretations given to these terms by the witnesses or the attorneys. If I have not provided a specific definition for a given term or phrase, you are to use the ordinary English language meaning of that term.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here. The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied in the following patents-in-suit:

#### '243 Patent

The term "**substrate,**" as used in the claims of U.S. Patent No. 6,646,243, means "a material having a rigid or semi-rigid surface."

The term "**target nucleic acids,**" as used in the claims of U.S. Patent No. 6,646,243, means "nucleic acids that are deliberately exposed to the nucleic acids attached to the substrate."

16

## ☐365 Patent

The phrase "**biological polymers immobilized on a surface**," as used in the claims of U.S. Patent No. 6,399,365, means "two or more surface-immobilized biological polymers that are recognized by a particular target."

The term "**housing**," as used in the claims of U.S. Patent No. 6,399,365, means "a structure that covers, protects, and supports the probe array."

## '432 Patent

The phrase "**said beads being coded with an encoding system**," as used in the claims of U.S. Patent No. 6,355,432, means "said beads having a property associated with each bead (separate from the binding polymer) that can be used to distinguish one bead from another."

The term "**target specific sequence**," as used in the claims of U.S. Patent No. 6,355,432, means "a known polymer sequence that has affinity for another sequence."

## ☐531 Patent

The term "**probe array**," as used in the claims of U.S. Patent No. 5,545,531, means "a collection of probes, at least two of which are different, arranged in a spacially defined and physically addressable manner."

The phrase "**arranged in a spacially defined and physically addressable manner**," as used in the claims of U.S. Patent No. 5,545,531, means "located in a particular location and capable of being addressed."

### '716 Patent

The term **"probe,"** as used in the claims of U.S. Patent No. 5,795,716, means "a nucleic acid of known sequence that is capable of hybridizing to its complementary sequence."

The term **"probe intensity,"** as used in the claims of U.S. Patent No. 5,795,716, means "intensity from a labeled sample nucleic acid hybridized to a probe location."

The phrase **"indicating an extent of hybridization,"** as used in the claims of U.S. Patent No. 5,795,716, means "indicating the relative strength of binding."

The phrase **"comparison of said plurality of probe intensities to each other,"** as used in the claims of U.S. Patent No. 5,795,716, means "an examination of the probe intensities of two or more probes in relation to each other."

The phrase **"generates a base call identifying said unknown base,"** as used in the claims of U.S. Patent No. 5,795,716, means "determines which nucleotide is most likely to be present at a particular position in a nucleic acid sequence."

**4.2     DIRECT INFRINGEMENT – KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL[14]**

Illumina would be liable for directly infringing Affymetrix's patents if you find that Affymetrix has proven by a preponderance of the evidence that Illumina has made, used or sold the invention defined in at least one claim of Affymetrix's patent.   Illumina may directly infringe a patent without knowledge that what it is doing is an infringement of the patent. Illumina may also infringe even though in good faith it believes that what it is doing is not an infringement of any patent.

---

14     Source:  Delaware Uniform Instructions.

## 4.3    LITERAL INFRINGEMENT[15]

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For one of Illumina's products to literally infringe any one of Affymetrix's patent claims, the subject matter of that patent claim must be found in Illumina's product or the use of its product.  In other words, one of Affymetrix's patent claims is literally infringed if one of Illumina's products or the use of its products includes each and every element in that claim.  If Illumina's products or the use of its products omits any single component recited in a claim of Affymetrix's patents, Illumina does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

---

15    Source:  *Power Integrations* Final Instructions; Delaware Uniform Instructions.

## 4.7     CONTRIBUTORY INFRINGEMENT[16]

### (AFFYMETRIX'S INSTRUCTION NO. 4.7 ILLUMINA'S INSTRUCTION NO. 4.9)[17]

A second form of indirect infringement is contributory infringement. Contributory infringement can occur when someone supplies a part that is used to infringe one of the patent claims. The necessary proof to show contributory infringement is focused on the intent of the person supplying the part and the nature of that part. Specifically, to prove contributory infringement by Illumina, Affymetrix must prove by a preponderance of the evidence the following three things:

1.     The part supplied by Illumina is not simply a common part used for significant non-infringing uses, but rather, the part is especially made or adapted for a use that infringes the claimed invention.

2.     Illumina knew of the patent and sold the accused part knowing that the part was especially made for use in an infringement of the patent.

3.     Someone then bought the part and actually used it in a way that infringes each limitation of an asserted claim of the patent.

All three of these things must be proven by direct or circumstantial evidence before you may find that Illumina contributed to the patent infringement.

---

16     Source: *Power Integrations* Final Instructions; 2003 draft Delaware Uniform Instructions (modified).

17     The parties have not agreed on the order of instructions or as to whether certain instructions should be included. Thus, the parties proposed instructions diverge in numbering and where necessary the Affymetrix instruction number and the Illumina instruction number are given. The parties will continue to attempt to come to agreement on instructions and the numbering of instructions after it is clear which issues will be tried together.

## 5.7   FACTORS FOR DETERMINING REASONABLE ROYALTY[18]
## (AFFYMETRIX'S INSTRUCTION NO. 5.7, ILLUMINA'S INSTRUCTION NO. 7.12)

In determining such a reasonable royalty, some of the factors that may be considered are:

1.      the royalties received by Affymetrix for licensing others under the patents-in-suit;

2.      the rates paid by Affymetrix, Illumina, or others for the use of other patents comparable to the patent in suit;

3.      the nature and scope of the license, as exclusive or nonexclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      Affymetrix's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      the commercial relationship between Affymetrix and Illumina, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promotors;

6.      the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.      the duration of the patents and the terms of the licenses;

8.      the established profitability of the products made under the patents, their

---

[18]     2003 Draft Delaware Uniform Instructions.

commercial success, and their current popularity;

9.     the utility and advantages of Affymetrix's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.     the nature of the patented invention, the character of the commercial embodiments of it as owned and produced by Affymetrix, and the benefits to those who have used the invention;

11.     the extent to which Illumina has made use of the invention, and any evidence that shows the value of that use;

12.     the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Illumina;

14.     the opinion testimony of qualified experts; and

15.     any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## 5.8 INTEREST[19]
### (AFFYMETRIX'S INSTRUCTION NO. 5.8, ILLUMINA'S INSTRUCTION NO. 7.13)

Neither of the parties' calculations include interest. Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award or deny interest.

---

[19]    Source: *Power Integrations* Final Instructions; 2003 Draft Delaware Uniform Instructions.

### 5.9  CLOSING STATEMENT — DAMAGES[20]
### (AFFYMETRIX'S INSTRUCTION NO. 5.9, ILLUMINA'S INSTRUCTION NO. 7.14)

In determining the issue of a damages award, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Affymetrix has suffered as a result of the alleged infringement.  If you find Affymetrix is entitled to damages, you may not include and/or add to the award any sum for purposes of punishing Illumina or to set an example.

---

[20]     Source:  *Power Integrations* Final Instructions; 2003 Draft Delaware Uniform Instructions.

## 5.10  CURATIVE INSTRUCTION[21]
### (AFFYMETRIX'S INSTRUCTION NO. 5.10, ILLUMINA'S INSTRUCTION NO. 7.15)

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Affymetrix.

---

[21]     Source: *Power Integrations* Final Instructions; 2003 Draft Delaware Uniform Instructions.

## 9.    DELIBERATION AND VERDICT

### 9.1    INTRODUCTION[22]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. I.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

---

22    Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

## 9.2    UNANIMOUS VERDICT[23]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if you become convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

---

[23]    Source: *Power Integrations* Final Instructions; Delaware Uniform Instructions.

## 9.3    DUTY TO DELIBERATE[24]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that — your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[24]    Source: Power Integrations Final Instructions; Delaware Uniform Instructions.

## 9.4    COURT HAS NO OPINION[25]

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

25     Source:  *Power Integrations* Final Instructions; Delaware Uniform Instructions.

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2007, I electronically filed the foregoing document using CM/ECF which will send notification of such filing(s) to the following:

> Richard K. Herrmann
> Morris James LLP

I also certify that copies were caused to be served on March 9, 2007 upon the following in the manner indicated:

### BY E-MAIL AND HAND DELIVERY

Richard K. Herrmann
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19801-1494

### BY E-MAIL

Marcus E. Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

*/s/ Derek Fahnestock (#4705)*

Derek Fahnestock (#4705)
dfahnestock@mnat.com